**CONSOVOY MCCARTHY PLLC**
Bryan Weir (Cal. Bar No. 310964)
1600 Wilson Blvd., Ste. 700
Arlington, VA, 22209
T: (703) 243-9423
F: (703) 243-8696
bryan@consovoymccarthy.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PLAINTIFF A.B., PLAINTIFF C.D., and PLAINTIFF E.F., individually and on behalf of all others similarly situated, | Case No.: 3:25-cv-3276 |
| Plaintiffs, | **COMPLAINT** |
| vs. | **CLASS ACTION** |
| GENESYS CLOUD SERVICES, INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

Class Plaintiffs A.B., C.D., and E.F. file this class action complaint individually and on behalf of all others similarly situated against Defendant Genesys Cloud Services, Inc. ("Genesys") and allege as follows:

## **INTRODUCTION**

1.      When someone calls a crisis hotline, texts their physician about a medical condition, or messages a business about a product or service, they rightly expect those communications will be conveyed only to their intended recipient—not eavesdropping third parties.

2.      This class action is about Genesys's far-reaching violation of that basic privacy expectation. Genesys is technology company that provides recording and monitoring services for businesses' client-facing communications. Genesys's services are used by many organizations to manage voice and text-based interactions with clients.

3.      Genesys's powerful suite of products record and analyze customer interactions using artificial intelligence ("AI") in real time. As a result, businesses can outsource routine tasks like call-routing and customer intake to Genesys' AI-bot. Genesys boasts that is able to overhear, record, and analyze "100% of interactions" between companies and their customers.

4.      Genesys's powerful technologies come at a steep cost to individual privacy. When customers use an organization's chat or call features powered by Genesys, there's no indication that they are not only interacting with the organization, but also an undisclosed third party—Genesys. Genesys also fails to alert customers that during these interactions, it is recording their calls, texts, and chats, and analyzing and using their information for its own purposes. As a result, Genesys regularly intercepts, records, and uses communications without consent.

5.      One of the many companies that Genesys provides communications services to is the National Domestic Violence Hotline (the "Hotline"). That organization offers support to those affected by domestic violence via chat, phone, and text. As with the other companies it works with, Genesys overhears and collects private details from callers, including their name, age, gender, location, race, and reason for calling the Hotline—all without announcing its presence or asking for consent.

6.    Genesys's nonconsensual recording and analysis of communications directed to the Hotline and other companies violates federal law. The Federal Wiretap Act, as amended by the Electronic Communications Privacy Act, prohibits the intentional interception, use, or disclosure of any wire, oral, or electronic communication without consent.

7.    Genesys's nonconsensual recording and analysis of communications directed to the Hotline and other companies also violates California law. The California Invasion of Privacy Act ("CIPA") prohibits intentionally tapping, reading, or recording a wire communication without the consent of all parties to the communication. Cal. Penal Code §§ 631–632. Although CIPA is modeled after the Federal Wiretap Act, 18 U.S.C. §§ 2510, *et seq.*, it provides even greater protection than that available under federal law. *Compare* 18 U.S.C. § 2520(c) *with* Cal. Penal Code § 637.2(a). And CIPA provides a private right of action against anyone—here, Genesys—that engages in such unlawful interception. Cal. Penal Code § 637.2.

8.    Genesys is thus liable to Plaintiffs and those similarly situated under CIPA for illegally intercepting and reading their communications without consent. Accordingly, Plaintiffs bring this action and seek all civil remedies, including compensatory, statutory, and punitive damages, injunctive relief, and attorneys' fees and costs.

## **PARTIES**

9.    Plaintiff A.B. is an adult citizen and resident of Los Angeles County and a citizen of California, whose communications were tapped and recorded by Genesys without Plaintiff's knowledge or consent.

10.    Plaintiff C.D. is an adult citizen and resident of Humboldt County and a citizen of California, whose communications were tapped and recorded by Genesys without Plaintiff's knowledge or consent.

11.    Plaintiff E.F. is an adult citizen and resident of Orange County and a citizen of California, whose communications were tapped and recorded by Genesys without Plaintiff's knowledge or consent.

CLASS ACTION COMPLAINT

12.    Defendant GENESYS CLOUD SERVICES, INC. ("Genesys") is a corporation headquartered at 1302 El Camino Real, Suite 300, Menlo Park, CA, 94025. Genesys and its affiliates provide a suite of AI-powered communications services to over 8,000 organizations in over 100 countries. In 2024, Genesys reported 45% growth in revenue year-over year, resulting in a record $1.4 billion in annual revenue.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction under 28 U.S.C. §1332(d) (the Class Action Fairness Act) because the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and a member of the Class is a citizen of a different state than Adobe Inc. This Court also has subject matter jurisdiction under 28 U.S.C. §1331 because this action arises under 18 U.S.C. §2510, *et seq.* (the Electronic Communications Privacy Act).

14.    This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. §1367 because the state law claims form part of the same case or controversy under Article III of the United States Constitution.

15.    This Court has personal jurisdiction over Defendant because its principal place of business is located in this District.

16.    Venue is proper in this District because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Moreover, Defendant's principal place of business is in this District, and the conduct alleged in this Complaint occurred in this District.

## FACTUAL ALLEGATIONS

**I.    Genesys records communications without consent for its own benefit.**

17.    Genesys offers a suite of communications services, collectively known as "Cloud CX," that allow businesses and organizations to manage phone calls, text messages, and online chat interactions with their customers.

18.    But Genesys is no ordinary communications service. Unlike traditional customer contact solutions, Genesys has said it uses virtual customer service agents, powered by artificial

intelligence, to "collect and validate customer information — and *continuously learn* with automatically labeled live customer data — to build a knowledge base and *grow smarter over time*."

19.     In other words, Genesys does not simply enable customer interactions with third-party website owners—it mines them for information that it uses to improve its own services. This process of incorporating individuals' information into its own systems, known as "machine-learning," gives Genesys a unique competitive edge, enabling it to gather business intelligence, improve its products, and provide enhanced services to its customers.

20.     Genesys has employed these tactics across different products, all of which can be seamlessly integrated into an organization's customer-facing website, phone system, and text platform.

21.     Genesys' main products include:

a.  **Chatbot:** This service uses virtual customer service agents powered by artificial intelligence to "[p]rovide human-like service" on customers' websites nonstop. Genesys has explained that these virtual agents "capture information, answer user questions and provide complex, human-like transactional support right up to the point where engaging a person is necessary," whether the interaction is by phone, text, or online chat.

b.  **Web Messaging:** Like Chatbot, Genesys' Web Messaging ("Messaging") service enables live conversations with artificial intelligence "bots" and human agents by phone, text, and online chat. According to Genesys, Messaging tracks visitors across conversations, meaning that "if a customer decides to … close the messenger window, the conversation persists." Messaging is also able to "trigger conversations at the right moment" based on customers' "web behavior … and customer profile," meaning it tracks how visitors are interacting on a webpage, analyzes their behavior, and causes a chat box to "pop-up" on the page with a specific prompt at a strategic moment. *Id.*

c.  **Workforce Engagement Management ("WEM")**: Genesys has explained that this feature automatically records and analyzes "100% of … customer-agent conversations" by phone,

1   text, or online chat in real time, using artificial intelligence to predict a visitors' tone and sentiment

2   (*e.g.*, positive, negative, neutral) and evaluate a human agent's response.

3       22.     By recording and analyzing conversations between customers and businesses,

4   Genesys can provide real-time insights on a business's customers. For example, when a customer

5   calls a business using Genesys' services, Genesys can record the customer's responses, distill them,

6   and pass them along to the human agent the customer is eventually transferred to.

7       23.     The problem with all of this is that Genesys' services are unannounced. So, when a

8   customer interacts with a business using Genesys' chat function, there's no indication that they are

9   not actually communicating with a representative of that business and are communicating with

10  Genesys instead, an undisclosed third party.

11      24.     Nor does Genesys disclose that it is recording, analyzing, and processing customers'

12  communications with third parties using machine learning technology. As a result, callers and website

13  visitors unwittingly hand over massive amounts of sensitive data to a third-party tech company.

14  **II.    Genesys intercepts communications directed to third party websites like the Hotline.**

15      25.     One of the organizations Genesys contracts with is the National Domestic Violence

16  Hotline. The Hotline purports to offer confidential support to individuals affected by domestic

17  violence, including via online chat, phone, and text messaging.

18      26.     Genesys never makes the survivors aware that when they contact Genesys through

19  these channels, Genesys is recording their conversations and collecting their information.

20      **A.    Example 1: the Hotline's chat service.**

21      27.     For example, Genesys intercepts and records conversations on the Hotline's chat

22  function. When a user interacts with the Hotline through the chat service, there is no indication

23  anywhere that it is controlled and monitored by Genesys.

24      28.     Once a user initiates a chat conversation using the chat service, their communications

25  are automatically transmitted to Genesys, including the topic of conversation.

26

27

28

29.    Genesys also records personal information provided by the individual, including the individual's conversation topic, age, gender, race/ethnicity, city, state, prior contact with the Hotline, and how they discovered the service.

30.    All of the content users communicate in the chat is transmitted while the conversation is ongoing—not stored and shared afterward—and is thus intercepted in transit.

31.    Users are then connected with a human agent, if available. But Genesys continues to transmit the contents of the ensuing conversation to its own servers.

32.    Genesys further analyzes users' responses, and its conversation with the Hotline representative, via the chat service to improve its machine learning processes and provide services to its customers, among other things.

33.    Genesys never announces that it is intercepting, recording, or otherwise viewing users' conversations through the chat service.

**B.    Example 2: the Hotline's phone line.**

34.    When a user clicks on the "Call" option on the Hotline's website, a phone call is initiated between the users' phone and the Hotline.

35.    Genesys operates the Hotline's automated phone answering tree. As with other companies, however, Genesys never informs of its involvement or presence on the call. Instead, the Hotline's automated system picks up and states that callers are interacting with "the National Domestic Violence Hotline."

36.    Before transferring callers to an agent, Genesys' automated system asks a series of questions, eliciting sensitive information from callers, such as "what type of support do you need?"; "how old are you?"; "what is your gender?"; and "what is your race or ethnicity?"

37.    Genesys' system records users' responses to these questions and transmits it to Genesys for analysis and use, including for machine learning and to provide services to its customers.

38.    Here again, Genesys never announces its presence on the call or that it is recording users' responses for its own purposes or otherwise. The same is true with other companies who use Genesys's technology.

1    **C.    Example 3: the Hotline's text service.**

2    39.    Genesys also operates the Hotline's text messaging system. Users can initiate a text

3    message communication with the Hotline by clicking the "text" option on the Hotline's homepage.

4    40.    Here too, Genesys' system asks users a series of questions eliciting sensitive

5    information via text, including the reason they contacted the Hotline. These responses are sent to both

6    the Hotline and Genesys' own servers.

7    41.    Genesys then analyzes users' responses to improve its machine learning processes and

8    provide services to its customers, among other things.

9    42.    As with the chat service and the phone tree, Genesys never announces its presence on

10    the text chain or that it is recording and transmitting users' responses to its servers for its own use or

11    otherwise. The same is true with other companies who use Genesys's technology.

12    **D.    Genesys intercepts and records communications directed at other companies.**

13    43.    Genesys' Cloud CX software is also embedded in the communications services of

14    many other companies, including those that provide healthcare (e.g., AdaptHealth, American Heart

15    Association, Independent Health, Presbyterian Health), personal financial services (e.g., Quicken),

16    life insurance (eFinancial), and many others.

17    44.    Genesys also intercepts and records communications directed to these websites

18    without obtaining consent.

19    **E.    Genesys never obtained users' consent for its wiretapping.**

20    45.    Genesys never asks people who interact with the Hotline or other entities for their

21    consent to Genesys' viewing and recording of their conversations.

22    46.    Nor does Genesys ask consent from users who interact with its tools when

23    communicating with other companies that use its technology.

24    **F.    Genesys intercepts users' communications in transit.**

25    47.    Genesys' chat service is embedded into the Hotline's website through an "iFrame

26    code." This code enables a website to embed a webpage hosted on a different server into the webpage

27

28

the user interacts with. The practical upshot is that the iFrame code makes it appear as if the user is interacting solely with the Hotline or one of its representatives. But in reality, the user is also interacting with Genesys.

48. Moreover, Genesys' embedded chat service causes the exact contents of communications with the Hotline to be sent to Genesys' servers, where they are recorded and saved. This all takes place while the communications are in transmission—not after the fact.

49. Likewise, individuals who call or text the Hotline direct their communications to the Hotline. But Genesys intercepts these communications before they reach their destination, and only subsequently transmits them to the Hotline.

50. Genesys has explained that its interception and recording happens in real-time. As it states on its website, its tools enable "*real-time* monitoring" and the "recording," "captur[ing]," and "stor[ing]" of "exchanges between customers and agents."

51. On information and belief, Genesys continues to intercept all communications with the Hotline even after users are connected to a human agent. Genesys does this by routing the exact contents of the communication to its own servers while the interaction is happening. As Genesys boasts, its features "can provide transcription and analytics on 100% of interactions for deep insight into customer-agent conversations." Here again, this is how Genesys technology operates for other companies that use it.

**G.    Genesys pairs user information with granular identifying data.**

52. Genesys' systems are designed to collect information identifying particular users. For example, Genesys collects and stores the incoming phone numbers of callers and individuals who text the Hotline and is capable of utilizing that information to track individuals across interactions.

53. Likewise, Genesys collects data, including IP (internet-protocol) addresses, which allows it to identify individuals who message the Hotline across interactions.

54. Genesys is also capable of collecting detailed geolocation information from individuals who connect with its services via the website.

**H.    Genesys records user information for its own purposes.**

55.    Genesys admits that when recording is enabled, it "will collect and store interaction recordings" between users and third parties.

56.    Genesys further admits that it is capable of using the information collected via its Cloud CX services for its own purposes. In its "Cloud Privacy Policy" Genesys states that it can "aggregate data and information [collected via its services] related to the performance, operation, and use of the Cloud Services to create statistical analyses, to perform benchmarking, to perform research and development, and to perform other similar activities ("Service Improvements")."

57.    Genesys' capability of using this data for additional purposes is further confirmed by a prior version of the Privacy Policy on its own website, which uses Genesys' Cloud CX products. On its own site, Genesys states that it can use collected information to "perform market research," "enhance our marketing and to improve our Site, services, and products."

58.    Genesys' self-admitted ability to use data collected from individuals to improve its *own* products, designs, and services distinguishes it from a run-of-the-mill phone service provider. Put simply, Genesys is not merely facilitating interactions between users and the Hotline—it is also capable of mining data from these interactions for its own purposes to maintain its competitive edge.

**III.    Plaintiff A.B.'s experience with Genesys' services on the Hotline.**

59.    In May 2021, Plaintiff A.B. visited the Hotline's site, seeking support and help.

60.    Plaintiff initiated an interaction with what she thought was the Hotline by texting the number provided on its website. Unbeknownst to her, Plaintiff was actually placed in communication with Genesys and its AI-empowered Chatbot.

61.    In the ensuing conversation, in response to prompts generated by Genesys' chatbot, Plaintiff shared that she was ▮ years old, that her gender was female, that her race/ethnicity was white, and that she was located in ▮▮▮▮, California. She also stated that she was reaching out to the site for guidance and support.

62.    After waiting for some time, the chatbot eventually connected her with a human agent with the Hotline.

63.    Plaintiff continued to text the advocate, relaying sensitive details regarding the exact nature of the domestic abuse she was experiencing, specific incidents which had occurred, and her questions regarding how to address it.

64.    Plaintiff had no idea that during this conversation, Genesys was continuing to intercept and record the contents of her communications with the Hotline as they were happening.

65.    Plaintiff never consented, expressly or otherwise, to Genesys' interception or recording of her communications with the Hotline or the highly personal information they contained.

66.    Genesys recorded and stored Plaintiff's information and used it for its own purposes, including to evaluate its own products, design and research new products, and improve its services to other customers.

**IV.    Plaintiff C.D.'s experience with Genesys' services on the Hotline.**

67.    Plaintiff C.D. first contacted the Hotline via a phone call using her cellular phone sometime in July 2023 after she was ████████████████████████████████████████ ████████████████. She continued to call seeking help for the next several months.

68.    Most recently, in June 2024, Plaintiff called the Hotline for advice and support. Unbeknownst to her, she was not only interacting with the Hotline, but with Genesys' automated phone system.

69.    Following the automated prompts, Plaintiff relayed the details of her income, address, race, and gender, and the reason why she had called.

70.    She then waited for roughly 45 minutes to be connected to an agent only to have the call unexpectedly dropped.

71.    Genesys never announced its presence on the call or that the call was being recorded or monitored. Plaintiff had no idea that her interactions were being intercepted and stored by a third party.

72.     Plaintiff never consented, expressly or otherwise, to Genesys' interception or recording of her communications with the Hotline or the highly personal information they contained.

73.     Genesys recorded Plaintiff's communications and used them for its own purposes, including to evaluate its own products, design and research new products, and improve its services to other customers.

**V.     Plaintiff E.F.'s experience with Genesys' services on the Hotline.**

74.     Plaintiff E.F. began visiting the Hotline's website and contacting the Hotline through all three of its available communication channels (by cell phone, text, and web chat) in the Spring of 2024. She subsequently contacted the Hotline between 10 and 15 occasions through these channels.

75.     During each of these interactions, Plaintiff communicated her age, racial demographics, city and state, and the reason for her contacting the Hotline. Unbeknownst to her, this information was intercepted and recorded by Genesys, even though Plaintiff intended to communicate the information only to the Hotline.

76.     Her most recent use of the Hotline's services occurred in December 2024. During this interaction, she communicated with the chat service on the Hotline's website.

77.     Genesys never announced its presence on the chat service or that it was recording Plaintiff's responses.

78.     Plaintiff never consented, expressly or otherwise, to Genesys' interception or recording of her communications with the Hotline or the highly personal information they contained.

79.     Genesys recorded Plaintiff's communications and used them for its own purposes, including to evaluate its own products, design and research new products, and improve its services to other customers.

**VI.     Plaintiffs' Claims Mirror those of the Class Members.**

80.     Like Plaintiffs, each Class member contacted a third-party using Genesys' services and had their communications and information intercepted and recorded by Genesys without their consent. The information Genesys intercepted included confidential communications about Class

Members' experiences and identities—content that is manifestly subject to an expectation of privacy. Genesys recorded this information and used it for its own purposes. Genesys is thus liable to Plaintiffs and Class Members for violating their rights under federal and California law.

## TOLLING

81.     Any applicable statute of limitations has been tolled by the "delayed discovery" rule. Plaintiffs did not know (and had no way of knowing) that their communications were intercepted, recorded, and used by Genesys.

## CLASS ACTION ALLEGATIONS

82.     Plaintiffs incorporate all prior allegations.

83.     Plaintiffs bring this action individually and on behalf of all other persons similarly situated ("the Classes") pursuant to Rule 23 of the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California.

84.     Plaintiffs propose the following Class definitions and seek certification of each such Classes, subject to amendment based on information obtained through discovery:

> **Nationwide Class:** United States Citizens who, during the class period, communicated with a third party through Genesys' Cloud CX services.
>
> **California Class:** All California residents who, during the class period, communicated with a third party through Genesys' Cloud CX services.
>
> **Hotline Class:** All California residents who, during the class period, communicated with the Hotline through Genesys' Cloud CX services.

85.     Specifically excluded from the Classes are Genesys' officers, directors, employees, and agents; any entity in which Genesys has a controlling interest; and affiliates, legal representatives, attorneys, successors, heirs, or assigns of Genesys. Also excluded from these Classes are any judicial officers to whom this case is assigned, their families, and members of their staff.

86.     Plaintiffs may amend the definition of these Classes or add a class or subclass if further information and discovery indicate that the definition of the Classes should be narrowed, expanded, or otherwise modified.

87.     **Numerosity/Ascertainability**: The members of the Classes are so numerous that joinder of all members of the Class is impracticable. On information and belief, the proposed Classes contain hundreds of thousands of individuals whose communications were intercepted by Genesys on the Hotline's communications services. The identity of such membership is readily ascertainable from Defendant's records and non-party records.

88.     **Typicality**: Plaintiffs' claims are typical of the claims of the Class members, arising from the same conduct by Genesys and based on the same legal theories.

89.     **Adequacy**: Plaintiffs will fairly and adequately represent and protect the interests of the Class members. Plaintiffs' interests are coincident with, and not antagonistic to, those of the Class members. Plaintiffs' counsel are competent and experienced in litigating complex and mass actions.

90.     **Predominancy**: There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class members. These common questions include:

    a.     Whether Plaintiffs and Class members had a reasonable expectation of privacy in the contents of their communications with the Hotline and other companies that use Genesys's technology;

    b.     Whether Genesys automatically intercepted Plaintiffs' and Class Members' communications with the Hotline and other companies that use Genesys's technology;

    c.     Whether Genesys intercepted and the contents of electronic communications between Class members and the Hotline other companies that use Genesys's technology as they were taking place;

    d.     Whether Genesys recorded Plaintiffs' and Class members' communications without consent;

CLASS ACTION COMPLAINT

e.      Whether Genesys' Cloud CX services are devices within meaning of the California Invasion of Privacy Act;

f.      Whether Genesys' Cloud CX services are devices within meaning of the Electronic Communications Privacy Act;

g.      Whether Genesys intruded upon Plaintiffs' and Class members' seclusion by intercepting and recording Plaintiffs' and Class members' communications without their consent;

h.      Whether Genesys violated Plaintiffs' and Class members' privacy rights;

i.      Whether Genesys violated the California Invasion of Privacy Act or the Electronic Communications Privacy Act,

j.      Whether Plaintiffs and Class members are entitled to injunctive and equitable relief;

k.      Whether Plaintiffs and Class members are entitled to actual, compensatory, statutory, or punitive damages, statutory penalties, or declaratory or injunctive relief, or restitution, as allowable by law.

91.     **Superiority**: A class action is a superior method for the fair and efficient adjudication of this case. This proposed class action presents fewer management difficulties than individual litigation and will permit an orderly and expeditious administration of the Class claims, fostering economies of time, effort, and expense. If the Class members are forced to bring individual suits, the transactional costs, including those incurred by Genesys, will significantly increase, and the courts will be clogged with a multiplicity of lawsuits involving identical subject matter, fact patterns, and legal issues. Moreover, separate actions would risk imposing incompatible standards of conduct on Genesys, if for example, different courts reach varying conclusions on whether its conduct violated California law. A class action is particularly appropriate where, as here, declaratory relief finding Genesys' actions were unlawful or injunctive relief preventing Genesys from engaging in such unlawful interception is appropriate with respect to the class as a whole.

## <u>CAUSES OF ACTION</u>

**FIRST CAUSE OF ACTION**
**Violation of the Electronic**
**Communications Privacy Act**
**18 U.S.C. §§2510, *et seq.***
**(On Behalf of Plaintiffs and the Nationwide Class)**

92.     Plaintiffs incorporate all prior allegations.

93.     The Federal Wiretap Act as amended by the Electronic Communications Privacy Act of 1986 ("ECPA"), prohibits the intentional interception, use, or disclosure of any wire, oral, or electronic communication.

94.     The ECPA protects both sending and receipt of communications.

95.     18 U.S.C. §2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119.

96.     Plaintiffs' communications via text, phone, and web chat with third parties via Genesys' services are electronic "communication[s]" under the ECPA's definition in 18 U.S.C. §2510(12).

97.     These communications convey information revealing the "substance, purport, or meaning of [the] communication[s]" and therefore include content. 18 U.S.C. §2510(8).

98.     Genesys acquired these contents "through the use of … [an] electronic, mechanical or other device"—namely, its Cloud CX services—and therefore intercepted them. 18 U.S.C. §2510(4).

99.     Genesys' Cloud CX services, including its web chat, phone call, and text message monitoring and recording services, are "devices" within the meaning of 18 U.S.C. §2510(5).

100.    Genesys' interception of these communications was intentional, since Genesy' services are specifically designed to collect, monitor, and record communications. 18 U.S.C. §2511(1)(a). Moreover, Genesys contracted with each third-party website utilizing its services and therefore intended that it would intercept these communications.

101.    Genesys intercepted communications that include, but are not limited to, communications to and from Plaintiffs and Class members regarding domestic violence, credit reports, immigration, banking, health insurance, healthcare, and many other topics. This confidential

1   information was used by Genesys both to provide its products and services to third parties and to

2   improve its own services, products, and metrics.

3        102.   Genesys used or attempted to use the contents of Plaintiffs' and Class members'

4   electronic communications while knowing the information was obtained through the interception of

5   an electronic communication, thus violating 18 U.S.C. §2511(d).

6        103.   Genesys intentionally intercepted Plaintiffs' and Class Members' electronic

7   communications for the purpose of committing a criminal or tortious act in violation of the

8   Constitution or laws of the United States or of any state, namely, invasion of privacy, intrusion upon

9   seclusion, CIPA, and other state wiretapping and data privacy laws, among others.

10        104.   The party exemption in in 18 U.S.C. § 2511(2)(d) does not permit a party that

11   intercepts or causes interception to escape liability if the communication is intercepted for the purpose

12   of committing any tortious or criminal act in violation of the Constitution or laws of the United States

13   or of any State. *See, e.g.*, *Brown v. Google, LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021); *see*

14   *also Marden v.LMND Medical Group, Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024); *R.C.*

15   *v. Walgreen Co.*, 733 F. Supp. 3d 876, 901-02 (C.D. Cal. 2024).

16        105.   Genesys did not act under color of law when it intercepted Plaintiffs' and Class

17   members' electronic communications.

18        106.   Plaintiffs and Class members never consented to Genesys' interception of their

19   communications for the purpose of invading their privacy and reasonably expected that Genesys

20   would not intercept their communications with third parties without knowledge or consent. Genesys

21   never indicates its presence when users are communicating with third parties through its services.

22        107.   Plaintiffs thus seek statutory damages of $10,000 or $100 per day for each violation

23   of 18 U.S.C. §§2510, *et seq.*

24

25                         **SECOND CAUSE OF ACTION**
                           **Violation of the California**

26        **Invasion of Privacy Act ("CIPA") – Wiretapping**
                               **Cal. Penal Code § 631(a)**

27       **(On Behalf of Plaintiffs and the California Class)**

28

108.    Plaintiffs incorporate all prior allegations.

109.    The California Invasion of Privacy Act ("CIPA") "prohibits any person from using electronic means to 'learn the contents or meaning' of any 'communication' 'without consent' or in an 'unauthorized manner.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) (quoting Cal. Penal Code § 631(a)) (hereinafter "*Facebook Tracking Litig.*").

110.    "California courts interpret Section 631(a) as containing three clauses that cover 'three distinct and mutually independent patterns of conduct.'" *Heiting v. Taro Pharms. USA, Inc.*, 2024 WL 3738055, at *2 (C.D. Cal. July 31, 2024) (citing *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192 (1978) and Cal. Penal Code § 631(a)). As relevant here, "[t]he second clause creates a violation where a person 'willfully and without consent of all parties to the communication, or in any unauthorized manner reads or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit.'" *Id.* And the "third clause creates a violation where a person 'uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained'" as outlined in the first two clauses." *Id.*

111.    Genesys has violated the second clause of §631(a) by intercepting and recording the contents of Plaintiffs' and Class members' communications with the Hotline and other companies that use Genesys's technology via text, online chat, and phone call.

112.    Liability under clause two "is not limited to communications passing over 'telegraph or telephone wire, line, cable, or instrument,' but also applies to internet communications." *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1198 (S.D. Cal. 2024). Accordingly, Genesys is liable for its unauthorized reading of all three methods of communication with the Hotline other companies that use Genesys's technology.

113.    By intercepting and recording conversations with the Hotline other companies that use Genesys's technology via text, phone, and web chat, Genesys "read … and learn[ed] the contents or meaning of" Plaintiffs' and Class Members' communications.

114.    Plaintiffs' and Class members' communications to the Hotline and other entities conveyed content. Genesys intercepts, analyzes and records the exact words users send and speak to

companies that use Genesys's technology via phone, text, and web chat. *See e.g.*, *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1124 (C.D. Cal. 2024) ("[I]nsofar as Plaintiff alleges Genesys 'collects and stores chat[] recordings[],' 'recorded transcripts,' and other 'sensitive data provided in its chat function,' Plaintiff has sufficiently pleaded that Genesys captures content that is protected by Section 631(a)."). *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) ("[T]ext messages qualify as contents under the Wiretap Act."); *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1186 (N.D. Cal. 2024) ("In the simplest terms, Plaintiffs allege that [defendant] … analyz[es] "[w]hat they say."). Accordingly, Genesys is privy to the exact "substance, purport, [and] meaning of [Plaintiffs' and Class members'] communication[s]." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014).

115.     Genesys' reading of Plaintiffs' and Class members' communications was intentional. "Recording a confidential communication is intentional where the recording entity has the 'purpose or desire' of recording the communication or the 'knowledge to a substantial certainty' the communication will be recorded." *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 6466195, at *4 (N.D. Cal. Oct. 3, 2023) (subsequent history omitted). Genesys contracted with the Hotline other companies that use Genesys's technology to provide communications services in full knowledge that it would intercept and record private communications. Indeed, Genesys' publicly touts its ability to "provide transcription and analytics on 100% of interactions for deep insight into customer-agent conversations." And Genesys has publicized its contract with the Hotline and the nature of the communications shared via Genesys' services on its website.

116.     Genesys tapped Plaintiffs' and Class members' communications with the Hotline and other companies that use Genesys's technology in California while they were in transit. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092 (N.D. Cal. 2022); *see also Licea v. Old Navy, LLC*, 669 F. Supp. 3d 941, 946 (C.D. Cal. 2023). Genesys' Cloud CX communications software intercepts phone calls, texts, and chat messages intended for the Hotline other companies that use Genesys's technology en route to their intended destination.

117.    Genesys' Cloud CX software is embedded in the "phone trees" on the Hotline's and other companies that use Genesys's technology. As a result, Genesys learns (and records) callers' communications and redirects them to its own servers. *See, e.g.*, *Heiting v. Taro Pharms. USA, Inc.*, 2024 WL 3738055, at *4 (C.D. Cal. July 31, 2024) (finding interception was pleaded where "the communication '[was] first transmitted to Genesys's servers' before the communications are sent to [their intended recipient]").

118.    Genesys continues to monitor and store text conversations between users and the agents of the Hotline other companies that use Genesys's technology (and other sites') after the user is connected to a human agent.

119.    On information and belief, Genesys learns (and records) users' text messages intended for the Hotline other companies that use Genesys's technology and redirects them to its own servers before sending them to the intended recipient or during transmission to the intended recipient. *See e.g.*, *Heiting v. Taro Pharms. USA, Inc.*, 2024 WL 3738055, at *4 (C.D. Cal. July 31, 2024) (finding interception was pleaded where "the communication '[was] first transmitted to Genesys's servers' before the communications are sent to [their intended recipient]").

120.    Genesys continues to monitor text conversations between the users and agents of the Hotline other companies that use Genesys's technology after the user is connected to a human agent.

121.    Genesys' chat service is embedded into its clients' websites such that it appears that a user is communicating directly with the client website, not Genesys. In reality, the chat service is run from Genesys' servers and uses sophisticated coding to cause messages sent through the chat to be routed to Genesys' own servers for recording, analysis, and storage. *See e.g.*, *D'Angelo*, 726 F. Supp. 3d at 1198; *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014).

122.    Genesys continues to read, record, and analyze users' conversations even after they are connected to a live agent at the Hotline and other companies that use Genesys's technology.

123.    While Genesys provides services to the Hotline other companies that use Genesys's technology, it is no mere extension of these entities. Rather, Genesys is an "unannounced second auditor" to conversations with its client websites. *See Ribas v. Clark*, 696 P.2d 637, 640 (Cal. 1985)

("a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device."); *see also Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1182 (N.D. Cal. 2024) (collecting cases). Accordingly, Genesys' surreptitious interception and recording is not justified by the party exception. *See id.* at 1184 (collecting cases).

124.    Moreover, Genesys uses the captured communications for its own purposes—not just to assist the Hotline or other companies that use Genesys's technology. Genesys has confirmed that it "may aggregate data and information [collected via its services] related to the performance, operation, and use of the Cloud Services to create statistical analyses, to perform benchmarking, to perform research and development, and to perform other similar activities ("Service Improvements")." In other words, Genesys is able to use the information it collects to "improve its own products and services." *See Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1185 (N.D. Cal. 2024) ("Nuance can use consumers' voice prints to improve its own products and services—for example, to improve the accuracy of its authentication software for uses beyond benefiting Chase.").

125.    Genesys' recording also violates §631(a)'s third clause, which "prohibits the use of intercepted communications 'in any manner, or for any purpose.'" *Turner*, 735 F. Supp. 3d at 1186 (quoting Cal. Penal Code §631(a)). This clause "does not require a use independent of the client" and includes "data harvesting." *Id.* at 1187; *see also Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 979 (C.D. Cal. 2023) ("[Defendant's] business model is to harvest data 'for the benefit of its clients.'").

126.    Genesys never obtained consent for any of these activities. CIPA requires the "express prior consent" of "all parties to the communication" to avoid liability for reading or using an individual's communications. *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022); *Ribas v. Clark*, 696 P.2d 637, 641 (Cal. 1985) ("[Section 631] has been read to require the assent of all parties to a communication before another may listen."). In other words, there is no "direct party" exception to liability under CIPA—all parties must know that their

communications are being intercepted and recorded by a third party. *Facebook Tracking Litig.*, 956 F.3d at 608.

127.    Consent to surreptitious interception and recording must be "actual," "'explicitly notify[ing]' users of the practice at issue." *Id.* (quoting *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021)); *accord In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 949 (N.D. Cal. 2022) ("In order for consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue."). "The test is whether a reasonable user who viewed [the website's] disclosures would have understood that [the defendant] was collecting the information at issue." *Meta Pixel Litig.*, 647 F. Supp. 3d at 793.

128.    Plaintiffs and Class members did not consent to Genesys' interception of the contents of their communications with the Hotline or other companies that use Genesys's technology because Genesys never announces its presence when users call, text, or chat. Nor does Genesys ask for affirmative consent to intercept, record, and use their communications.

129.    Accordingly, Plaintiffs, on behalf of themselves and the Class, seek declaratory, injunctive, and equitable relief; restitution; actual, consequential, statutory, and punitive damages; and reasonable attorneys' fees, costs, and other litigation expenses.

**THIRD CAUSE OF ACTION**
**Violation of the California**
**Invasion of Privacy Act ("CIPA") – Recording**
**Cal. Penal Code § 632;**
**(On Behalf of Plaintiffs and the Hotline Class)**

130.    Plaintiffs incorporate all prior allegations.

131.    CIPA section 632 prohibits "us[ing] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication" "without the consent of all parties" to the communication. Cal. Penal Code §632(a). "[T]he crux of section 632 is the right to prevent a simultaneous dissemination to an unannounced listener." *Kight v. CashCall, Inc.*, 133 Cal. Rptr. 3d 450, 457 (Cal. App. 2011). Accordingly, "Section 632 prohibits unconsented-to recording or monitoring regardless of the content of the conversation or the purpose of the monitoring." *Kight v. CashCall, Inc.*, 133 Cal. Rptr. 3d 450, 456 (Cal. App. 2011).

132.    Genesys' Cloud CX software programs are "recording device[s]" that are used to "eavesdrop upon or record … communication[s]." Cal. Penal Code §632(a). Genesys expressly states as much, describing its software as capable of "provid[ing] transcription and analytics on 100% of interactions for deep insight into customer-agent conversations."

133.    Communications directed to the Hotline other companies that use Genesys's technology are inherently sensitive and confidential. A "confidential communication" is "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto." Cal. Penal Code §632; *see also Flanagan v. Flanagan*, 41 P.3d 575, 576 (Cal. 2002) ("[A] conversation is confidential if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded."); *Mendell v. Am. Med. Response, Inc., No*. 19-CV-01227-BAS-KSC, 2021 WL 1102423, at *4 (S.D. Cal. Mar. 23, 2021).

134.    Genesys recording of Plaintiffs' and Class members' communications was intentional. The intent requirement is met where a party uses recording equipment "with the knowledge to a substantial certainty that [it] will result in the record[ing] of a confidential conversation.'" *Rojas v. HSBC Card Servs. Inc.* (2023) 93 Cal. App. 5th 860, 876. Genesys contracted with the Hotline other companies that use Genesys's technology to provide communications services in full knowledge that it would intercept and record communications. Indeed, Genesys' touts its ability to "provide transcription and analytics on 100% of interactions for deep insight into customer-agent conversations." Genesys therefore had knowledge to a substantial certainty that it would be recording confidential conversations.

135.    Genesys recorded Plaintiffs' and Class members' confidential communications with the Hotline other companies that use Genesys's technology in real-time. As Genesys states on its website, its tools enable "*real-time* monitoring" and the "recording," "captur[ing]," and "stor[ing]" of "exchanges between customers and agents." Likewise, Genesys boasts its ability to retain chat communications from one interaction to the next, necessitating that the communications are recorded and stored.

136.    On information and belief, Genesys accessed and used the communications it recorded to enhance "the performance, operation, and use of [its] Cloud Services" and "to create statistical analyses, to perform benchmarking, to perform research and development, and to perform other similar activities."  Genesys also used the recorded information to package and supply its services to the Hotline and other companies that use Genesys's technology, such as by summarizing a caller's communications with the chat bot and supplying that information to the Hotline's live agent.

137.    Plaintiffs never consented, expressly or otherwise, to Genesys' recording of their phone calls, texts or chats. Genesys never informs callers to the Hotline or other companies that use Genesys's technology that their phone calls, texts, or chats are being monitored or recorded. *See Kearney v. Salomon Smith Barney*, 137 P.3d 914, 930 n.10 (Cal. 2006) ("California consumers are accustomed to being informed at the outset of a telephone call whenever a business entity intends to record the call[;] [and] in the absence of such an advisement, a California consumer reasonably would anticipate that such a telephone call is not being recorded.").

138.    Accordingly, Plaintiffs, on behalf of themselves and the Class, seek declaratory, injunctive, and equitable relief; restitution; actual, consequential, statutory, and punitive damages; and reasonable attorneys' fees, costs, and other litigation expenses.

### FOURTH CAUSE OF ACTION
**Violation of the California Invasion of
Privacy Act, Cal. Penal Code § 637.2
(On Behalf of Plaintiffs and the California Class)**

139.    Plaintiffs incorporate all prior allegations.

140.    CIPA §632.7 penalizes a party who "intercepts or receives and intentionally records … a communication transmitted between a cellular or cordless telephone and another telephone. *Smith v. LoanMe, Inc.*, 483 P.3d 869, 870 (Cal. 2021).

141.    The statute prohibits "both parties and nonparties from intentionally recording a covered communication without the consent of all parties to the communication." *LoanMe, Inc.*, 483 P.3d at 872.

142.    A communication need not be confidential to be covered under 632.7. *See id.* (noting the distinction between §632's coverage (confidential communications) and §632.7's coverage (no confidentiality requirement)).

143.    Here, Genesys intentionally intercepted and recorded Plaintiffs' and Class members' calls via cellular phone to the Hotline and other companies that use Genesys's technology.

144.    Plaintiffs and Class members never consented to Genesys' interception and recording of their phone communications with these third parties.

145.    Accordingly, Plaintiffs, on behalf of themselves and the Class, seek declaratory, injunctive, and equitable relief; restitution; actual, consequential, statutory, and punitive damages; and reasonable attorneys' fees, costs, and other litigation expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class, respectfully request that the Court enter an order:

A.  Certifying the Class and appointing Plaintiffs as the Class representatives;

B.  Appointing the law firm of Consovoy McCarthy PLLC as class counsel;

C.  Finding that Defendant's conduct was unlawful, as alleged herein;

D.  Awarding declaratory relief against Defendant;

E.  Awarding injunctive and any other equitable relief the Court deems appropriate;

F.  Awarding Plaintiffs and Class members statutory, actual, compensatory, consequential, punitive, and nominal damages, as well as restitution and disgorgement of profits unlawfully obtained;

G.  Awarding Plaintiffs and Class members pre- and post-judgment interest;

H.  Awarding Plaintiffs and Class members reasonable attorneys' fees, costs, and expenses; and

I.   Granting such other relief as the Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiffs, on behalf of themselves and the Class, demands a trial by jury of all issues so triable of right.

1

2

3    DATED: April 11, 2025                    Respectfully submitted,

4                                             /s/ *Bryan Weir*
                                             Bryan Weir (Bar No. 310964)
5                                             CONSOVOY MCCARTHY PLLC
                                             1600 Wilson Boulevard, Ste. 700
6    –                                        Arlington, VA 22209
                                             T: (703) 243-9423
7                                             F: (703) 243-8696
                                             bryan@consovoymccarthy.com
8
                                             *Counsel for Plaintiffs*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT