TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
CAMILLE FRAMROZE (CA SBN 332075)
CFramroze@mofo.com
EMILY TSURUE YAMASHIRO MCKENNA (CA SBN 357101)
EMcKenna@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105, USA
Telephone: 415.268.7000
Facsimile: 415.268.7522

ELISABETH HUTCHINSON [*Pro Hac Vice*]
EHutchinson@mofo.com
MORRISON & FOERSTER LLP
4200 Republic Plaza, 370 Seventeenth Street
Denver, Colorado 80202-5638
Telephone: 303.592.1500
Facsimile: 303.592.1510

Attorneys for Defendant
GENESYS CLOUD SERVICES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PLAINTIFF A.B., PLAINTIFF C.D., AND PLAINTIFF E.F., INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiffs,

v.

GENESYS CLOUD SERVICES, INC.,

Defendant.

Case No. 3:25-cv-03276-EMC

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

CLASS ACTION

Judge: Hon. Edward M. Chen
Date: August 14, 2025
Time: 1:30 p.m.
Courtroom: 5, 17th Floor

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on August 14, 2025, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Edward M. Chen, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 5, 17th Floor, Defendant Genesys Cloud Services, Inc. ("Genesys") will, and hereby does, move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Class Action Complaint (the "Complaint") filed on April 11, 2025. This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, Defendant's Request for Consideration of Documents Incorporated into Complaint and for Judicial Notice, the Declaration of Tiffany Cheung ("Cheung Decl.") and exhibits attached thereto ("Exs. A-L"), and such other argument and materials as may be presented before this Motion is taken under submission.

## STATEMENT OF ISSUES TO BE DECIDED

1. **Electronic Communications Privacy Act of 1986 ("ECPA"), 18 U.S.C. §§ 2510, *et seq.* (First Cause of Action)**. Whether Plaintiffs' ECPA claim should be dismissed because: (i) the National Domestic Violence Hotline ("Hotline") consented to any purported interception; (ii) Genesys, as an extension of the Hotline, is exempt from liability as a party to the communication; and (iii) Plaintiffs fail to allege their purported communications were intercepted while "in transit."

2. **California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 631(a) (Second Cause of Action)**. Whether Plaintiffs' CIPA § 631 claim should be dismissed because: (i) Genesys, as an extension of the Hotline, is exempt from liability as a party to the communication; (ii) Plaintiffs fail to allege their purported communications were intercepted while "in transit"; and (iii) Section 631 does not apply to alleged conduct that occurs outside California.

3. **CIPA, Cal. Pen. Code § 632 (Third Cause of Action)**. Whether Plaintiffs' CIPA § 632 claim should be dismissed because: (i) Section 632 does not protect communications transmitted via Internet-based software; (ii) Genesys, as an extension of the Hotline, is not a third-party eavesdropper; (iii) text and web messages are not "confidential" communications within the meaning of § 632; (iv) Section 632 protects only communications made via landline telephone, not cellular phone; and (v) Section 632 does not apply to alleged conduct that occurs outside California.

4. **CIPA, Cal. Pen. Code § 632.7 (Fourth Cause of Action)**. Whether Plaintiffs' CIPA § 632.7 claim should be dismissed because: (i) Plaintiffs fail to allege that telephones were used on both sides of their communications; and (ii) Section 632.7 does not apply to alleged conduct that occurs outside California.

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 3

- A. Genesys is a Software-as-a-Service Provider ..... 3
- B. The Hotline ..... 4
- C. Plaintiffs' Alleged Interactions with the Hotline ..... 7
- D. Plaintiffs' Litigation ..... 7

III. LEGAL STANDARD ..... 8

IV. ARGUMENT ..... 9

- A. Plaintiff A.B.'s Claims are Barred by the Statute of Limitations. ..... 9
- B. The Hotline's Affirmative Choice to Utilize Genesys' Software Defeats Plaintiffs' ECPA Claim ..... 10
- C. Plaintiffs Were on Notice that the Hotline Utilizes Third-Party Software ..... 11
- D. Plaintiffs' ECPA and CIPA §§ 631 and 632 Claims Fail Because Genesys' Software is Merely a Tool Used by the Hotline ..... 11
  - 1. ECPA and CIPA § 631 ..... 12
  - 2. CIPA § 632 ..... 13
  - 3. Plaintiffs Distort Statements on Genesys' Website to Wrongfully Allege that Genesys Uses the Hotline's Data for its Own Purposes ..... 14
- E. Plaintiffs' ECPA and CIPA § 631 Claims Independently Fail Because the Alleged Communications Were Not Intercepted "In Transit" ..... 16
- F. Plaintiffs Fail to State a Claim Under CIPA § 632 ..... 19
  - 1. CIPA § 632 Applies Only to Communications Conducted via Phone, Not Internet ..... 19
  - 2. Plaintiffs' Communications are not Covered Under CIPA § 632 ..... 19
  - 3. CIPA § 632 Does Not Protect Communications Made Via Cordless Telephone ..... 22
- G. Plaintiffs' § 632.7 Claim Fails Because They do not Allege that Genesys Intercepted and Recorded Communications between Two Phones ..... 23
- H. Plaintiffs' CIPA Claims do not Apply to Extraterritorial Conduct ..... 24

V. CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Community.com Inc.*,
2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ........ 16, 17, 18, 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 8, 19

*Augustine v. Lenovo (United States), Inc.*,
2023 WL 4938050 (S.D. Cal. Aug. 2, 2023) ........ 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 8

*Boulton v. Community.com Inc.*,
2025 WL 314813 (9th Cir. Jan. 28, 2025) ........ 16, 17, 20, 23, 24

*Brackett v. Am. Airlines Grp. Inc.*,
2022 WL 282529 (N.D. Cal. Jan. 31, 2022) ........ 24, 25

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) ........ 13

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ........ 20

*Crowley v. CyberSource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001) ........ 17, 18

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ........ 11

*Doe v. Call-On Doc, Inc.*,
2025 WL 1677632 (S.D. Cal. June 13, 2025) ........ 15

*Erickson v. Neb. Mach. Co.*,
2015 WL 4089849 (N.D. Cal. July 6, 2015) ........ 1

*Ewing v. Empire Cap. Funding Grp., Inc.*,
2019 WL 157660 (S.D. Cal. Jan. 10, 2019) ........ 23

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 12

*Fetsch v. City of Roseburg*,
2012 WL 6742665 (D. Or. Dec. 31, 2012) ........ 20

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .......... 21-22

*Garcia v. Build.com*,
2023 WL 4535531 (S.D. Cal. July 13, 2023) .......... *passim*

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) .......... 9

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 12, 13

*Hammerling v. Google LLC*,
2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) .......... 25

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 9

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024) .......... 24

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) .......... 16, 23

*Katz-Lacabe v. Oracle Am., Inc.*,
2024 WL 1471299 (N.D. Cal. Apr. 3, 2024) .......... 11

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 1

*Knievel, v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) .......... 8

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 16, 17

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) .......... 9

*Licea v. Vitacost.com, Inc.*,
683 F. Supp. 3d 1118 (S.D. Cal. 2023) .......... 15

*McEwan v. OSP Grp., L.P.*,
2015 WL 13374016 (S.D. Cal. July 2, 2015) .......... 22, 23

*Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
2016 WL 4886933 (S.D. Cal. Sept. 15, 2016) .......... 11

*NovelPoster v. Javitch Canfield Grp.*,
140 F. Supp. 3d 938 (N.D. Cal. 2014) .......... 16

*People v. Nakai*,
183 Cal. App. 4th 499 (2010) .... 20, 21

*Pepper v. Charitable Res. Found., Inc.*,
2014 WL 12961327 (C.D. Cal. Oct. 14, 2014) .... 22

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .... 21

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) .... 11, 21

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .... 18

*Rogers v. Ulrich*,
125 Cal. Rptr. 306 (Ct. App. 1975) .... 13

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021) .... 23

*Sullivan v. Oracle Corp.*,
51 Cal.4th 1191 (2011) .... 25

*Sunbelt Rentals, Inc. v. Victor*,
43 F. Supp. 3d 1026 (N.D. Cal. 2014) .... 20

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) .... 19, 21

*Thomas v. Papa John's Int'l, Inc.*,
2023 WL 6370641 (S.D. Cal. Aug. 14, 2023) .... 12, 13

*Thomas v. Papa John's Int'l, Inc.*,
2025 WL 1704437 (9th Cir. June 18, 2025) .... 13

*Thomasson v. GC Servs. Ltd. P'ship*,
321 F. App'x 557 (9th Cir. 2008) .... 13

*Turner v. Nuance Commc'ns*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) .... 13

*Valenzuela v. Keurig Green Mt., Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .... 19

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. Aug. 14, 2023) .... 23

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .... 18

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 13

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 10

**Statutes**

18 U.S.C.
§ 2510(4) .......... 16
§ 2511 .......... 2
§ 2511(1)(a) .......... 10
§ 2511(2)(d) .......... 10
§ 2520(e) .......... 9

Fed. R. Civ. P.
8(a)(2) .......... 8
12(b)(6) .......... 9

Cal. Civ. Proc. Code § 340(a) .......... 9

Cal. Pen. Code § 630 .......... 25

CIPA § 631 .......... *passim*

CIPA § 632 .......... *passim*

CIPA § 632.7 .......... 3, 23, 24

CIPA § 637.2 .......... 3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The National Domestic Violence Hotline (the "Hotline") offers high quality, confidential, and often life-saving services to survivors, victims, and those affected by domestic violence, intimate partner violence, and relationship abuse.[1] The Hotline has engaged Genesys Cloud Services, Inc. ("Genesys") as one of its software providers to run the communication infrastructure that enables the Hotline to provide its critical resources to individuals impacted by abuse. As a software provider to the Hotline, Genesys is, in essence, a direct extension of the Hotline. Without a service provider like Genesys, the Hotline's communication channels could not function, and abuse victims and survivors would have fewer means to connect with those who can provide them necessary resources and support. Importantly, Genesys provides these critical services while also safeguarding individuals' privacy interests. Genesys takes seriously its obligations under applicable privacy laws, and its Data Privacy Policy mandates that Genesys personnel comply with all such privacy laws to protect personal information.[2]

In this case, Plaintiffs rely on misstatements that are entirely devoid of factual support, and they misapply California "wiretapping" laws to allege that Genesys' provision of services to the Hotline violates the Electronic Communications Privacy Act ("ECPA") and the California Invasion of Privacy Act ("CIPA"). However, beyond their misstatements and misapplication of the law, Plaintiffs do not (and cannot) allege that Genesys engages in any activities that violate either the ECPA and CIPA. Importantly, as noted, Genesys operates an extension of the Hotline

[1] Declaration of Tiffany Cheung ("Cheung Decl.") Ex. L, National Domestic Violence Hotline, *Types of Abuse*, https://www.thehotline.org/resources/types-of-abuse/ (last visited July 3, 2025). As discussed in the accompanying Request for Judicial Notice, the Court should take judicial notice of the Hotline's website (www.thehotline.org) and Genesys' Privacy Policy and Cloud Privacy Policy posted on its website, including prior versions available via the Wayback Machine. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); *see also Erickson v. Neb. Mach. Co.*, No. 15-cv-01147-JD, 2015 WL 4089849, at *1 n.1 (N.D. Cal. July 6, 2015) ("Courts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned[.]") (collecting cases).

[2] Cheung Decl. Ex. E, Genesys, *Ethics and Compliance*, https://www.genesys.com/company/legal/ethics-and-compliance/ (last visited July 3, 2025).

and acts solely as the Hotline's service provider. As such, there is no "wiretapping" by Genesys as an extension of a party to any communications that may have taken place with the Plaintiffs. Equally as important, Genesys does not "wiretap" Plaintiffs' communications with the Hotline because Genesys does not access the Hotline's communications with end-users. The claims in this case should be dismissed in their entirety.

Instead of providing the Court with any support for their allegations, Plaintiffs misrepresent how Genesys' technology functions, and they cherry pick portions of statements on Genesys' website entirely out of context. Plaintiffs attempt to assert a baseless theory that Genesys is somehow an illicit, third-party eavesdropper by providing the necessary communication infrastructure to the Hotline. But, as noted, Plaintiffs are wrong. Plaintiffs do not—because they cannot—allege that Genesys "intercepts," "eavesdrops," or records, or otherwise has ***any*** access to the Hotline's communications within the meaning of the statutes they attempt to rely upon. As set forth below, none of Plaintiffs' claims are viable.

***First***, Plaintiffs fail to state a claim under the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511, because consent by any one party to the communication is a complete defense. Here, the Hotline contracted for Genesys' services and chose to install Genesys' software to enable direct communication with survivors via Internet-based channels. By doing so, the Hotline expressly consented to using Genesys' services, and the Hotline's consent alone defeats the ECPA claim.

***Second***, Plaintiffs' "eavesdropping" claims under ECPA and CIPA fail because Genesys is an extension of the Hotline; Genesys acts solely as the Hotline's service provider. Genesys' platform and services allow the Hotline to connect with survivors, ***but Genesys does not access that data***. As an extension of the Hotline, Genesys cannot be a third-party "eavesdropper."

***Third,*** Plaintiffs' ECPA and CIPA § 631 claims should independently be dismissed because they fail to allege their communications were intercepted "in transit," which is required under the statute. Indeed, Plaintiffs ***cannot*** allege their communications were intercepted in transit (or at all) because all of the communications at issue landed at their destination, and any purported access to Plaintiffs' communications could only hypothetically occur *after* any of their

communications arrived at their destinations in electronic storage.

***Fourth***, Plaintiffs' CIPA § 632 claim fails because the statute does not cover Internet-based communications. Plaintiffs concede the Hotline uses Internet-based software to communicate with survivors across all communications channels. But even if CIPA § 632 did apply, the statute expressly excludes "recorded" communications like written web and text messages and responses to automated prompts as part of a phone tree. Further, CIPA § 632's use of "telephone" encompasses only ***landline*** telephones, and Plaintiffs fail to allege any use of landlines in their interactions with the Hotline.

***Fifth***, Plaintiffs cannot allege that Genesys intercepted or recorded any communications between *two* telephones, as required for liability under CIPA § 632.7.[3] Rather, Plaintiffs concede their communications ran entirely through Genesys' *Internet-based software*.

***Sixth***, Plaintiffs improperly seek to apply CIPA extraterritorially as they do not allege that any purported CIPA violation occurred in California.

For all of these reasons, the Complaint should be dismissed in its entirety.

## II. FACTUAL BACKGROUND

### A. Genesys is a Software-as-a-Service Provider

Genesys is a software-as-a-service provider offering customer relationship management tools through which Genesys' customers can directly interact with their end-users. (*See*, *e.g.*, ECF No. 1 ("Compl.") ¶¶ 17, 25.) Genesys' suite of services includes several Internet-based communication channels that customers may choose from to support their end-users, such as call, text, and online chat boxes with live agents. (*Id.* ¶ 21.) Genesys offers its Internet-based infrastructure to allow customers to "outsource routine tasks like call-routing" and, instead of reinventing the back-end technology, focus on their end-users. (*Id.* ¶ 3.) When an end-user (*e.g.*, a website visitor) uses a Genesys-powered communication channel to connect with a Genesys customer, including the Hotline, the communication software runs exclusively on a cloud-based

[3] In the Complaint, Plaintiffs cite CIPA § 637.2 for their Fourth Cause of Action. (Compl. at 24.) Section 637.2 is not a separate cause of action; it is the section of CIPA that provides statutory damages. The allegations under the Fourth Cause of Action, however, appear to relate to CIPA § 632.7, so Genesys addresses § 632.7 in this motion.

environment. (*See, e.g.*, *id.* ¶ 48.) Via the cloud, the data is populated in each customer's unique, password-protected dashboard, and it is only through this customer-specific dashboard that the customer's support agent communicates with the end-user. (*See, e.g.*, *id.*)

Because Genesys itself does not communicate with end-users, each Genesys customer, including the Hotline, is responsible for and controls its own communications with its own end-users. Consistent with Genesys' role as a software-as-a-service provider, each customer—not Genesys—chooses which Internet-based channels to offer on their websites, how to customize the experience that their end-users have with those channels, and whether to record any communications.[4] If a Genesys customer chooses to record their touch points with end-users, those recordings are encrypted using "encryption keys that are unique for each organization," which "protect[s] recordings from unauthorized access."[5]

**B. The Hotline**

The Hotline is "the only national 24 hour domestic violence hotline providing compassionate support, life-saving resources and personalized safety planning" for individuals impacted by relationship abuse.[6] The Hotline utilizes Genesys' software to enable its direct, Internet-based communications with those affected by relationship abuse. (Compl. ¶ 5.) This is not a secret—the Hotline's relationship with Genesys has been publicly disclosed since at least May 2022, and was announced again in May 2023.[7] Not only has the partnership been publicly

---

[4] *See, e.g.*, Cheung Decl. Ex. F, Genesys Cloud Resource Center, *About call recording*, https://help.mypurecloud.com/articles/about-call-recording/ (last visited July 3, 2025) (Genesys customers control their settings, including whether and "which ACD calls to record and how long to retain the recordings" because Genesys customers alone may "choose to record [their] calls and listen to them whenever [they] need").

[5] *Id*. Ex. G, Genesys Cloud Resource Center, *Recording encryption key overview*, https://help.mypurecloud.com/articles/encryption-keys-page/ (last visited July 3, 2025).

[6] *Id*. Ex. H, Genesys, *Shifting power back to survivors*, www.genesys.com/customer-stories/national-domestic-violence-hotline (last visited July 3, 2025).

[7] *Id.* Ex. I, Genesys, *Shifting power back to survivors*, May 24, 2022, https://web.archive.org/web/20220524093736/https://www.genesys.com/customer-stories/national-domestic-violence-hotline (dating back to 2022); *see also id*. Ex. J, Genesys, *National Domestic Violence Hotline Reaches More Survivors by Partnering with Genesys*, May 31, 2023, https://www.genesys.com/company/newsroom/announcements/122897 (announcing partnership).

and repeatedly disclosed by the Hotline, but Forbes also publicized the collaboration in September 2023, highlighting how Genesys' technology allowed the Hotline to increase its capacity and capabilities.[8]

As explained for years in these public articles, the Hotline receives outreach from survivors via multiple channels, and "Genesys helps [the Hotline] to meet these growing needs and expand the flexibility in how [the Hotline] engage[s]" with survivors.[9] The Hotline has publicly shared that "Genesys Cloud offer[s] the best interface" to allow the Hotline to "make [its] capacity stretch even further," ensuring that the Hotline is "able to help more survivors." *Id.* It is only because of Genesys' software that survivors are able to contact the Hotline 24/7/365 by Internet-based calls, texts, and web messaging. (Compl. ¶ 25.)

Upon visiting the Hotline's website, www.thehotline.org, visitors are presented with these various communication channels, enabling each individual to choose the method that feels safest and most effective for them:




Cheung Decl. Ex. A, National Domestic Violence Hotline, www.thehotline.org (last visited July 3, 2025).

For example, if a person is in a circumstance where they cannot call, survivors can connect with the Hotline via the chat box on the Hotline's website, which expressly discloses that

[8] *See id.* Ex. K, K. Vitasek, *National Domestic Violence Hotline Turns to Technology Collaboration to Modernize*, Forbes, Sept. 4, 2023, https://www.forbes.com/sites/katevitasek/2023/09/04/national-domestic-violence-hotline-turns-to-technology-collaboration-to-modernize/.

[9] *Id.* Ex. H.

threshold routing questions are powered by a "Chat bot":




*Id.*

The Hotline also offers survivors the option to connect via AI chat with a chatbot named "Ruth." (*See, e.g.*, Compl. ¶ 60.) Upon clicking the AI chat option, the Hotline's website visitors are expressly notified that the chatbot is not powered by Genesys, but instead by "The Parasol Cooperative":




Cheung Decl. Ex. A, National Domestic Violence Hotline, www.thehotline.org.

Ultimately, the Hotline controls its website, the communication channels offered, and the

end-user experience, including any disclosures provided about its service providers. And, as described above, the Hotline has publicly disclosed that it partners with Genesys to provide the software to connect the Hotline's agents with survivors. (*Contra* Compl. ¶¶ 4, 23 (alleging Genesys is "an undisclosed third party").)

**C. Plaintiffs' Alleged Interactions with the Hotline**

Plaintiffs allege they contacted the Hotline across various channels between 2021 and 2024. (*Id.* ¶¶ 59-60, 67-68, 74-76.)

Plaintiff A.B. alleges she contacted the Hotline in May 2021 by texting the number provided on the Hotline's website. (*Id.* ¶ 60.) After allegedly going through recorded, automated prompts collecting background information to help connect her to the right resources, she alleges that she exchanged written text messages with a Hotline agent. (*See id.* ¶¶ 61, 63.)

Plaintiff C.D. alleges she called the Hotline's phone number posted on its website several times between July 2023 and June 2024 using her cellular phone. (*Id.* ¶¶ 67-68.) She does not provide details on her other calls but alleges that in one instance, after a series of "automated prompts" through which she claims to have provided certain basic identifying information, she waited to be connected with a Hotline agent. (*Id.* ¶¶ 69-70.) Her call was allegedly dropped after approximately 45 minutes, before she connected with an agent. (*Id.* ¶ 70.) Plaintiff C.D. does not allege that she was in California at the time. (*See id.* ¶¶ 67-71.)

Plaintiff E.F. alleges that she contacted the Hotline 10 to 15 separate times, beginning in the spring of 2024, through its phone, text, and web messaging channels. (*Id.* ¶ 74.) She does not identify the type of device through which she allegedly connected with the Hotline (*i.e.*, her computer, tablet, cell phone, or landline telephone). (*See id.*) Most recently, in December 2024, she alleges that she connected with the Hotline via the chat box on its website, but does not allege that she communicated with a Hotline agent or specify if she interacted with the live agent chat or the AI chatbot offered on the Hotline's website. (*Id.* ¶ 76.) Plaintiff E.F. also does not allege that she was in California when she connected with the Hotline. (*See id.* ¶¶ 74-79.)

**D. Plaintiffs' Litigation**

Plaintiffs now claim that they were not only communicating with the Hotline but also with

Genesys simply because Genesys provides the software powering the communication channels. (*See, e.g.*, *id.* ¶¶ 64, 71, 77.) Ignoring the Hotline's public disclosures that Genesys serves a necessary function as its service provider, Plaintiffs wrongly claim that Genesys "intercepted" their calls, text messages, and web chats without consent. (*Id.* ¶¶ 64-65, 71-72, 77-78.) Based on their flawed theory, Plaintiffs assert claims under ECPA and CIPA, seeking to represent three overbroad putative classes: (1) a "Nationwide Class" of U.S. citizens who communicated with *any* third party through Genesys' Cloud CX services; (2) a "California Class" of California residents who communicated with *any* third party through Genesys' Cloud CX services; and (3) a "Hotline Class" of California residents who communicated with the Hotline through Genesys' Cloud CX. (*Id.* ¶¶ 83-84, 92-145.) For the reasons described below, Plaintiffs' claims fail.

## III. LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint falling short of this standard should be dismissed for failure to state a claim upon which relief can be granted. *See id.* 12(b)(6). To survive, a complaint must do more than allege "threadbare recitals of a cause of action's elements, supported by mere conclusory statements[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 678 (2009). Rather, a complaint must allege sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Court must not assume the truth of legal conclusions merely because they are pleaded in the form of factual allegations; nor should it accept as true allegations contradicted by judicially noticeable facts. *Iqbal*, 556 U.S. at 677-79; *Twombly*, 550 U.S. at 555; *Knievel*, *v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (incorporation by reference doctrine "permits [the Court] to take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading'") (citation omitted). A court must decide whether, assuming the veracity of only well-pleaded factual allegations, the claims "plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 664.

Although, "[a]s a general rule, 'a district court may not consider any material beyond the

pleadings in ruling on a Rule 12(b)(6) motion,'" a court may consider extrinsic material when its "'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on [it]." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citations omitted); *see also Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (taking judicial notice of privacy policy where wiretapping claim depended on the application of defendant's policies).

## IV. ARGUMENT

Plaintiffs do not—and cannot—allege the fundamental elements necessary to state a claim. Plaintiffs' communications with the Hotline were not "intercepted," "eavesdropped upon," or "recorded" within the meaning of the statutes at issue, and their claims should be dismissed in their entirety.

### A. Plaintiff A.B.'s Claims are Barred by the Statute of Limitations.

As an initial matter, Plaintiff A.B.'s single alleged contact with the Hotline over four years ago, in 2021, is barred by the applicable statutes of limitations. (*See* Compl. ¶¶ 59-66). The statute of limitations is one year under CIPA (Cal. Civ. Proc. Code § 340(a)) and two years under ECPA (18 U.S.C. § 2520(e)). Plaintiff A.B.'s claims are therefore time-barred and should be dismissed.

Although Plaintiffs argue the "delayed discovery" rule tolls the applicable statutes of limitations (Compl. ¶ 81), they fail to make the requisite showing. "To invoke the delayed discovery doctrine, a plaintiff must plead facts to show '(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023) (citation omitted).

Here, Plaintiff A.B. fails to plead any facts showing the time and manner in which she discovered the purported interception or that she exercised reasonable diligence. (*See generally* Compl.) Indeed, as explained above, the Hotline's partnership with Genesys was widely publicized. Because Plaintiff A.B. alleges she contacted the Hotline only once in May 2021 (*id.* ¶ 59), her claim is time-barred under both CIPA and ECPA.

### B. The Hotline's Affirmative Choice to Utilize Genesys' Software Defeats Plaintiffs' ECPA Claim

To state a claim under the ECPA, Plaintiffs must adequately allege that Genesys "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). However, consent by either party to the communication to an alleged interception is a complete defense to an ECPA claim. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014) ("Since [ECPA] concerns the *unauthorized* interception of electronic communication, the consent of one party is a complete defense to a[n ECPA] claim."); 18 U.S.C. § 2511(2)(d). Because the Hotline chooses to use Genesys' software, it necessarily follows that by extension, Genesys is a consensual party to any communication and the Hotline consented to the purported "interception" at issue. Thus, the Hotline's consent alone defeats Plaintiffs' ECPA claim in its entirety.

Plaintiffs concede that the Hotline was the intended recipient of their allegedly intercepted communications and that the Hotline was necessarily a party to each communication. (*See*, *e.g.*, Compl. ¶¶ 60 ("Plaintiff [A.B.] initiated an interaction with what she thought was the Hotline by texting the number provided on its website."), 67 ("Plaintiff C.D. first contacted the Hotline via a phone call using her cellular phone[.]"), 74 ("Plaintiff E.F. began visiting the Hotline's website and contacting the Hotline through all three of its available communication channels[.]").) By "contract[ing]" for Genesys' communication services and "embedd[ing]" Genesys' products into the Hotline's website, the Hotline consented to any alleged interception of its communications. (Compl. ¶¶ 25 ("One of the organizations Genesys contracts with is the [Hotline][.]"), 47 ("Genesys' chat service is embedded into the Hotline's website[.]").)

As numerous other courts in this district have held under this exact fact pattern, the consent of one party to the communication (*i.e.*, the software provider's customer) is a complete defense to an ECPA claim. As the court explained in a similar case against Oracle, "Oracle's customers chose to deploy Oracle's tools on their websites, and it necessarily follows that 'one of the parties to the communication'—the websites themselves—gave 'prior consent to such

interception.'" *Katz-Lacabe v. Oracle Am., Inc.*, 2024 WL 1471299, at *4 (N.D. Cal. Apr. 3, 2024) (dismissing ECPA claim against Oracle as a software provider); *see also, e.g.*, *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 842 (N.D. Cal. 2024) (dismissing ECPA claim where providers "[chose] to install Google source code on their web properties," meaning "the providers consented to the operation of Google source code"); *Rodriguez v. Google LLC* ("*Rodriguez I*"), 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021) (dismissing ECPA claim because alleged interceptions occurred with the consent of app developers).

The same result should follow here: because the Hotline necessarily consented to the use of Genesys' software, Plaintiffs' ECPA claim must be dismissed.

### C. Plaintiffs Were on Notice that the Hotline Utilizes Third-Party Software

That the Hotline uses third-party software to facilitate its communication channels is obvious based on the nature of the channels themselves—it is unreasonable to assume that the Hotline, which is a nonprofit organization, develops its own phone, web messaging, or text-based software, let alone the chat bots that ask the initial routing questions. Taking into context the circumstances surrounding Plaintiffs' alleged communications, Plaintiffs were given adequate notice that the Hotline used Genesys' third-party software to facilitate its communications with the Hotline. Indeed, the Hotline not only clearly disclosed that interactions with the chat feature were powered by a "Chat bot" but also publicly and repeatedly discussed its partnership with Genesys. (*See supra* § II.) The Hotline's partnership with Genesys also received media coverage from well-read sources. (*See id.*) Such public and broad disclosure also justifies dismissal of their ECPA and CIPA § 631 claims. *See Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 2016 WL 4886933, at *3-4 (S.D. Cal. Sept. 15, 2016) (dismissing CIPA claim based on implied consent derived from the overall "surrounding circumstances" of the communication).

### D. Plaintiffs' ECPA and CIPA §§ 631 and 632 Claims Fail Because Genesys' Software is Merely a Tool Used by the Hotline

Plaintiffs' ECPA and CIPA §§ 631 and 632 "eavesdropping" claims fail because Genesys merely operates the Hotline's service provider. As an extension of the Hotline, Genesys cannot

be a third-party "eavesdropper."

**1. ECPA and CIPA § 631**

Both ECPA and CIPA § 631 recognize an "exemption from liability for a person who is a 'party' to the communication." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020). This means "a party to a communication can record" its own conversation under ECPA and CIPA § 631, including using third-party tools to do so, "and [it] is not eavesdropping when it does." *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021). Federal courts have repeatedly held that where, as here, a third-party software provider merely "provides a tool" allowing its customer to record ***its own*** communications, the provider is an extension of the customer and a party to the communication. *See id.* at 831-32 (a vendor that "provides a software service that captures its clients' data, hosts it on [its] servers, and allows the clients to analyze their data . . . is an extension of [the client] . . . [and] is not a third-party eavesdropper").

The Court's dismissal of plaintiff's § 631 claim with prejudice in *Garcia v. Build.com, Inc.* is instructive. 2023 WL 4535531 (S.D. Cal. July 13, 2023). In *Garcia*, the plaintiff claimed that Build.com, an online home improvement retailer, "eavesdropped" on her online chat that occurred on Build.com's website. *Id*. at *1. The court dismissed plaintiff's § 631 claim with prejudice, "because there [was] no way for Plaintiff to plead around the key defect that Defendant cannot be liable for eavesdropping on its own conversation." *Id.* at *6. It did not matter that Build.com (like the Hotline here) used third-party embedded code to purportedly record her chats. *Id.* Plaintiff's allegations suggested Build.com *chose* to "employ[] a third-party software service as a tool to record its own data." *Id.* Therefore, the alleged conduct could not "be a basis for liability because a participant to a conversation cannot eavesdrop on their own conversation." *Id.* at *5.

Notably, the court in *Garcia* relied upon the same logic to dismiss wiretapping claims under CIPA against Papa John's based on the use of third-party session replay technology. *Thomas v. Papa John's Int'l, Inc.*, 2023 WL 6370641, at *6 (S.D. Cal. Aug. 14, 2023). The Ninth Circuit recently affirmed the district court's ruling, concluding that "a party to a conversation cannot be liable under section 631 for 'eavesdropping' on its own conversation."

*See Thomas v. Papa John's Int'l, Inc.*, 2025 WL 1704437, at *1 (9th Cir. June 18, 2025) (citing *Rogers v. Ulrich*, 125 Cal. Rptr. 306, 309 (Ct. App. 1975).

The same reasoning in *Garcia* and *Papa John's* applies here and militates in favor of dismissal of the claims in this case. *See Papa John's*, 2023 WL 6370641, at *6; *Garcia*, 2023 WL 4535531, at *6. The party-to-the-communication exception under ECPA and CIPA § 631 forecloses Plaintiffs' theory of liability. Because the Hotline chooses to "employ[] a third-party software service as a tool to record" its own conversations, *Garcia*, 2023 WL 4535531, at *5, Genesys is an extension of the Hotline. As such, even if Plaintiffs allege that Genesys' software captured their interactions with the Hotline, the software did so at the Hotline's behest and for the sole benefit of the Hotline. As numerous other courts have held under the same facts, Plaintiffs' claims should be dismissed. *See Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1068 (C.D. Cal. 2023) (dismissing complaint where third-party vendor allowed Defendant to "'record and analyze its own data in aid of [Defendant]'s business' . . . which makes the third-party an 'extension' of Defendant's website, not a 'third-party eavesdropper'") (quoting *Noom*, 533 F. Supp. 3d at 832-33); *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (granting motion to dismiss where defendant software company was not "an independent third party hired to eavesdrop on What If's communications," but rather provided "a tool that What If used to record its own communications with plaintiff").

**2. CIPA § 632**

Similarly, CIPA § 632 provides that a third party may not "eavesdrop upon . . . [a] confidential communication." Cal. Pen. Code § 632(a). But a party to the communication "cannot 'eavesdrop' on [its] own conversation." *Turner v. Nuance Commc'ns*, 735 F. Supp. 3d 1169, 1182-83 (N.D. Cal. 2024) (applying § 631 party-to-the-communication analysis to a § 632 claim concerning purported eavesdropping, holding that "[t]o make out their claims under . . . section 632, Plaintiffs must allege that Nuance was a third party intercepting Plaintiffs' conversations"). To state a viable claim under the "eavesdropping" theory of § 632, there must be a "third party secretly listening to a conversation between two other parties." *Thomasson v. GC Servs. Ltd. P'ship*, 321 F. App'x 557, 559 (9th Cir. 2008) (finding defendant was not liable

for monitoring the defendant's phone call with plaintiffs under "eavesdropping" prong of § 632). For the same reason their ECPA and CIPA § 631 claims fail, Plaintiffs' allegations as to the "eavesdropping" prong of § 632 fail and must be dismissed.

### 3. Plaintiffs Distort Statements on Genesys' Website to Wrongfully Allege that Genesys Uses the Hotline's Data for its Own Purposes

Plaintiffs' misleading allegations that Genesys is more than a service provider are conclusory and readily refuted. In their attempt to allege that Genesys uses the Hotline's data for its own purposes, Plaintiffs mischaracterize cherry-picked portions of Genesys' website.

For example, Plaintiffs allege that Genesys' Privacy Policy states that it "can use collected information to 'perform market research,' 'enhance [its] marketing and to improve [its] Site, services, and products.'" (Compl. ¶ 57.) The Policy cited, however, concerns the use of information collected from visitors to ***Genesys'*** website; it has nothing to do with how Genesys allegedly uses or collects data from the ***Hotline's*** (or any of its customers') website. *See* Cheung Decl. Ex. D, Genesys, *Genesys' Privacy Policy*, https://web.archive.org/web/20231210170030/https://www.genesys.com/company/legal/privacy-policy (last visited July 3, 2025) ("This Privacy Policy applies to your use of **this website** and all of its features and web pages.") (emphasis added).[10]

Similarly, Plaintiffs allege Genesys' Cloud Privacy Policy[11] states that its software may "aggregate data and information [collected via Genesys' services] related to the performance, operation, and use of the Cloud Services to create statistical analyses, to perform benchmarking, to perform research and development, and to perform other similar activities ('Service

[10] Plaintiffs quote a prior version of the current Privacy Policy, which was last revised in September 2024 (Cheung Decl. Ex. C, Genesys' Privacy Policy, https://www.genesys.com/company/legal/privacy-policy) (last visited July 3, 2025). (*See* Compl. ¶ 57 (quoting "a prior version of the Privacy Policy on [Genesys'] website").) Previous versions also made clear the Policy applied to user interactions with the Genesys website. *See, e.g.*, Cheung Decl. Ex. D, https://web.archive.org/web/20231210170030/https://www.genesys.com/company/legal/privacy-policy (Genesys' Privacy Policy dated Dec. 10, 2023).

[11] *Id*. Ex. B, Genesys' Cloud Privacy Policy (last updated Feb. 2025), https://help.mypurecloud.com/articles/genesys-cloud-privacy-policy (last visited July 3, 2025).

Improvements').” (Compl. ¶ 56.) That Genesys may have express consent from a customer to use certain data to make Service Improvements does not show that Genesys used ***the Hotline's*** data for any purpose. Plaintiffs do not allege otherwise. Moreover, nothing in the selected quote supports a theory of real-time interception or access as would be required to state a viable claim. This is especially so when Genesys' Cloud Privacy Policy that Plaintiffs cite makes clear that any data used for “Service Improvements” is not “in a form that could identify customers or their consumers, and Genesys will use industry standard techniques to anonymize [data] prior to performing Service Improvements.” (*Supra* n.11.)

Put simply, subjecting Genesys to liability under § 631(a) could lead to unreasonable results. Plaintiffs' theory of liability against Genesys could implicate aiding and abetting liability against the Hotline based on the Hotline's implementation of Genesys' software to expand its services for domestic violence survivors. *See* CIPA § 631(a); *Doe v. Call-On Doc, Inc.*, 2025 WL 1677632, at *13 (S.D. Cal. June 13, 2025) (“The fourth clause of section 631(a) imposes liability against anyone who aids another in violating any of the first three clauses.”). Such an expansive theory of liability could open the door to aiding-and-abetting liability against *every* company that engages a third-party software vendor to facilitate its Internet-based conversations. That is far beyond the scope of the mid-century wiretapping statutes on which Plaintiffs rely. The Hotline did not “aid and abet” Genesys in “eavesdropping” on the Hotline's conversations; it merely uses Genesys' software to connect with victims and survivors of abuse. *See Licea v. Vitacost.com, Inc.*, 683 F. Supp. 3d 1118, 1123 (S.D. Cal. 2023) (“[A] website owner that engages a vendor to record website-based communications for the website owner's own purposes is not thereby aiding and abetting eavesdropping by a third party in violation of Section 631(a).”) (collecting cases).

In sum, the chats, texts, and calls allegedly at issue belong to and were with the Hotline. Plaintiffs' cherry-picked quotes do not show that Genesys has access to or does anything with the Hotline's data. What is left are Plaintiffs' conclusory allegations that Genesys is more than a mere “extension” of the Hotline; such allegations cannot save Plaintiffs' complaint. Because Genesys is an extension of the Hotline, Plaintiffs' “eavesdropping” claims under ECPA and CIPA §§ 631(a) and 632 should be dismissed.

**E. Plaintiffs' ECPA and CIPA § 631 Claims Independently Fail Because the Alleged Communications Were Not Intercepted "In Transit"**

Plaintiffs' ECPA and CIPA § 631(a) claims also fail because Plaintiffs do not and cannot allege that Genesys "intercepts" the Hotline's calls, texts, or web messages under the statutes.

ECPA defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). To be "'intercepted' in violation of [ECPA], [the communication] must be acquired ***during*** transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (emphasis added). In other words, the communication must be "stop[ped], seize[d], or interrupt[ed] in progress or course before arrival." *Id.* (citations omitted). CIPA § 631(a) similarly requires that any purported interception occur while a communication is "in transit." *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1036 (S.D. Cal. 2024) (Because the "in transit" requirement derives from the federal ECPA, "[d]istrict courts in this Circuit have found it appropriate to apply an identical standard to interception claims in the CIPA context."); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 954 (N.D. Cal. 2014) ("The analysis for a violation of CIPA is the same as that under [ECPA].").

As one court explained in dismissing ECPA and CIPA § 631 claims based on text messages, purported access to a communication "upon the completion of its transmission to the proper number is not the sort of act contemplated by federal law" or its California state law equivalent. *See Adler v. Community.com Inc.*, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021) (dismissing ECPA and CIPA § 631(a) claims based on text messages), *aff'd sub nom. Boulton v. Community.com Inc.*, 2025 WL 314813, at *1 (9th Cir. Jan. 28, 2025).

In *Adler*, plaintiffs targeted Community.com Inc. ("Community"), an Internet-based text messaging platform facilitating communications with public figures. *Adler*, 2021 WL 4805435, at *1. One plaintiff allegedly texted a Community number Tom Brady posted on Twitter and received an automated response to sign up for the Community platform.[12] *Id.* Because the

[12] The original putative class action (*Adler*) was brought by a different named plaintiff than the subsequent action (*Boulton*). But the basic fact pattern remained the same across the two actions.

message went to Community rather than directly to Brady, Plaintiffs claimed that Community "intercepted" their text messages while they were "in transit." *Id.* at *3.

Dismissing without leave to amend, the court held that Plaintiffs could not plead an interception where "the device paired with [the Community] number 'received the information, effectively completing the communication.'" *Id.* at *4 (quoting *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001)). The Ninth Circuit affirmed, holding that "because Community could only have accessed Boulton's text while it was in electronic storage, Boulton has failed to state a claim" under ECPA or CIPA § 631. *Boulton*, 2025 WL 314813, at *1.

Like *Boulton*, Plaintiffs here allege that any text or web messages sent or calls made reached their destination: Genesys' cloud environment. (*E.g.*, Compl. ¶ 48 ("Genesys' embedded chat service causes the . . . communications with the Hotline to be sent to Genesys' servers").) Arrival at Genesys' platform "effectively complet[es] the communication," *Crowley*, 166 F. Supp. 3d at 1269, and any purported access by Genesys could have occurred only *after* Plaintiffs' calls, texts, or web messages had already been received at their intended destination at Genesys' platform. Plaintiffs therefore do not and cannot, by definition, allege that Genesys accessed Plaintiffs' communications while they were "in transit." *Boulton*, 2025 WL 314813, at *1. The same reasoning applies for each of the communication channels at issue.

**Calls.** Plaintiffs do not allege calls are "seize[d]" while they are traveling, as required to fall within the "narrow definition" of "intercept" under the statutes. *See Konop*, 302 F.3d at 878. Rather, Plaintiffs allege that calls are recorded, and those recordings are then purportedly transmitted to Genesys. (*See*, *e.g.*, Compl. ¶¶ 34 ("When a user clicks on the 'Call' option on the Hotline's website, a phone call is initiated between the users' phone and the Hotline."), 37 ("Genesys' system records users' responses … and transmits it [*sic*] to Genesys for analysis and use[.]").) That is not "interception" "in transit" as defined under the ECPA or CIPA § 631.

**Texts.** When Plaintiffs allegedly sent text messages to "the number provided on [the Hotline's] website" (Compl. ¶ 60), the Genesys platform associated with that number "received

---

Adler allegedly texted the Community number for Tom Brady, whereas Boulton allegedly texted LL Cool J. The Ninth Circuit affirmed both opinions in its order in *Boulton*.

the information, effectively completing the communication." *Crowley*, 166 F. Supp. 2d at 1269. Once a text is received, the communication is complete and the message is in electronic storage. *See Adler*, 2021 WL 4805435, at *4. Any purported access could have occurred only *after* the communication was completed and the message arrived on the Genesys platform. (*See id*. ¶ 63.) As the Ninth Circuit explained in *Boulton*, Genesys therefore could not intercept Plaintiffs' text messages while they were "in transit." 2025 WL 314813, at *1. Plaintiffs' claims fail.

**Web messages.** Like text messages, when a website visitor engages with the chat feature on the Hotline's website, the Hotline live agent on the other side is communicating with that visitor via the Genesys platform. (*E.g.*, Compl. ¶¶ 20-21, 47.) Plaintiffs allege that "the chat service is run from Genesys' servers." (*Id.* ¶ 121.) Plaintiffs thus clearly allege that the data packets sent by a website visitor's browser reached their final destination (*i.e.*, Genesys' cloud environment) and were not splintered off—Plaintiffs do not and cannot allege otherwise. Any communication via the Hotline's chat feature landed exactly where it was intended to land, namely, on Genesys' platform. There was no interception in transit to support an ECPA or CIPA claim.

Plaintiffs' "repeated assertions" that Genesys intercepted their communications "in transit" are "simply conclusory," and the Court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Boulton*, 2025 WL 314813, at *1 (citations omitted). Nor can the complaint survive a motion to dismiss simply by sprinkling the word "intercept" throughout the complaint or baldly alleging that an interception occurs in "real-time." *See Rodriguez v. Google LLC* ("*Rodriguez II*"), 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit."); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing complaint where plaintiffs failed to "articulate[] with sufficient clarity when [the defendant] supposedly intercepted their communications," relying only on "vague allegations about how [the] data collection occurs 'in real time'"). Plaintiffs' conclusory allegations that Genesys' embedded software intercepts the contents of their communications are nothing more

than "threadbare recitals" of the "in transit" pleading requirement. *Iqbal*, 556 U.S. at 663; *see, e.g.*, *Valenzuela v. Keurig Green Mt., Inc.*, 674 F. Supp. 3d 751, 754, 758 (N.D. Cal. 2023) (Plaintiff's allegations that embedded code secretly intercepted communications did "little more than restate the pleading requirement of real time interception"). Plaintiffs' ECPA and CIPA § 631 claims should be dismissed on this ground alone.

### F. Plaintiffs Fail to State a Claim Under CIPA § 632

To state a CIPA § 632(a) claim, Plaintiffs must plead that Genesys used an "electronic amplifying or recording device to eavesdrop upon or record [] confidential communication[s]." Cal. Pen. Code § 632(a).[13] The statute goes on to specify that the statute covers only oral, ***phone-to-phone*** communications, stating that for § 632 to apply, the communication must be "carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio." *Id.* Plaintiffs' allegations do not fit within the contours of the statute.

#### 1. CIPA § 632 Applies Only to Communications Conducted via Phone, Not Internet

Section 632 "only applies to communications transmitted by telephone, not internet." *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 747 (N.D. Cal. 2023) (dismissing CIPA § 632 claim concerning online chat box). This principle defeats every aspect of Plaintiffs' § 632 claim. Plaintiffs concede that Genesys facilitates incoming calls to the Hotline through an "automated system" on its "Cloud CX software." (Compl. ¶¶ 35, 43, 116, 117.) They also allege that the text and web messaging channels are carried out on the same cloud-based software. (*See id.* ¶ 17.) Plaintiffs thus allege that the Hotline conducts *all* of the communications at issue through Genesys' Internet-based software. Plaintiffs' Internet-based communications are therefore not covered by CIPA § 632.

#### 2. Plaintiffs' Communications are not Covered Under CIPA § 632

Section 632 also provides a specific statutory definition of "confidential communication."

[13] Although Plaintiffs do not clarify whether they are relying upon the "recording" or "eavesdropping" prong of this statute, for the reasons set forth in this section, Plaintiffs do not—and cannot—allege that their communications fit under either prong.

Cal. Pen. Code § 632(a), (c). Specifically, § 632(c) expressly "excludes" any communication where "the parties to the communication may **reasonably** expect that the communication may be overheard or **recorded**." *Id.* § 632(c) (emphasis added). By their very nature, the communications at issue (web chats, text messages, and responses to automated prompts in a phone tree) are inherently recorded upon receipt of the communication—to assume otherwise is unreasonable. *See, e.g.*, *People v. Nakai*, 183 Cal. App. 4th 499, 515 (2010) (explaining, in the evidence context, that "no person with knowledge or awareness of the technology as it pertains to [the] use of email and text messaging . . . could have any possible expectation of privacy"). Again, this reasoning applies to all channels at issue.

**Text messages.** Plaintiffs' text messages are not "confidential communications" within the meaning of § 632 because text messages are, by definition, "a recorded medium." *Boulton*, 2025 WL 314813, at *2 ("[B]ecause texts are a recorded medium, and because Boulton admitted . . . her text . . . would by nature be recorded, her text was not a 'confidential communication' protected by § 632"). The sender of a text message cannot reasonably assume the text is not recorded; that is precisely how text messages work. *See Nakai*, 183 Cal. App. 4th at 515. Like email, text messages are recorded by telecommunications carriers and anyone in the chain of communication, and they can be forwarded or distributed by a recipient. *Cf. Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1035 n.3 (N.D. Cal. 2014) (explaining in the context of the Fourth Amendment, "a plaintiff has no reasonable expectation of privacy in [text] messages sent to third parties"); *Fetsch v. City of Roseburg*, 2012 WL 6742665, at *10 (D. Or. Dec. 31, 2012) (sender of text voluntarily runs the risk that once delivered, his message would be viewed by anyone with access to the recipient's phone). Text messages fall outside the definition of "confidential communications" under CIPA § 632.

**Online chats.** Plaintiffs' online chat messages fail for the same reason: again, they are always recorded by the device that receives the *written* electronic message. Numerous California courts have held that there is no reasonable expectation of "confidentiality" of online chats because Internet-based communications can be quickly and easily disseminated. *See Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) ("California appeals courts have

generally found that Internet-based communications are not 'confidential' within the meaning of section 632, because such communications can easily be shared by, for instance, the recipient(s) of the communications."); *Adler*, 2021 WL 4805435, at *5 (reaching same conclusion). In fact, "California courts 'have developed a **presumption** that Internet communications do not reasonably give rise to [an] expectation'" of privacy under § 632. *Rodriguez I*, 2021 WL 2026726, at *7 (quoting *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019)) (emphasis added). This logic is even stronger here, where the chat function on the Hotline's website explicitly discloses that the end user is communicating with a "Chat bot." (*See supra* Section II (screenshot of chat box).) As one court explained, a plaintiff's allegation that "consumers 'cannot be expected to know' that chat conversations with customer service agents are generally recorded is objectively unreasonable." *Swarts*, 689 F. Supp. 3d at 747.

Moreover, Plaintiffs' claims related to Genesys' AI chat function also must be dismissed on this basis. Plaintiff A.B. alleges that when she responded to automated prompts "generated by Genesys' chatbot," her responses to these prompts were recorded without her knowledge. (Compl. ¶¶ 61, 64.). Plaintiff A.B.'s allegations are implausible because written electronic messages are *always* recorded when they are received. This claim also fails because the Hotline's website explicitly discloses that "Ruth," the Hotline's AI chatbot, is powered by The Parasol Cooperative, not Genesys. (*See supra* Section II (screenshot of "Ruth" chat box).)

In any event, even if Plaintiff A.B. were to allege she communicated with the Hotline through a Genesys-provided chat, any reasonable person would expect that such written messages would be recorded. Section 632 was designed to protect against the recording of real-time, *oral, phone-to-phone* conversations. *Nakai*, 183 Cal. App. 4th at 515 ("[T]he private communication protected by section 632 was likely intended to be the type of communication that occurs over a telephone."). Plaintiffs' written chat messages are not covered under CIPA § 632.

**Automated prompts.** Section 632 also does not reach the automated prompts at issue in Plaintiffs' alleged calls with the Hotline. For § 632 to apply, the circumstances must "reasonably give rise to the expectation that ***nobody*** . . . would record the communications." *Rodriguez I*, 2021 WL 2026726, at *7; *see also Flanagan v. Flanagan*, 27 Cal. 4th 766, 776 (2002) ("[T]he

Legislature's ongoing concern is with eavesdropping or recording of conversations, not later dissemination."). But that is exactly why any automated prompts would be in place: to capture the information and properly route the caller to the necessary support. The phone tree could not function unless any responses were recorded. (*See, e.g.*, Compl. ¶¶ 67, 117.) It is not reasonable to assume otherwise. Plaintiffs' CIPA § 632 claim thus fails.

#### 3. CIPA § 632 Does Not Protect Communications Made Via Cordless Telephone

Section 632 covers in-person, oral communications and those carried out over a "telephone." Federal courts have held that the use of a "telephone" in CIPA § 632(a) does not reach communications via cellular phone based on the statute's legislative history. *See McEwan v. OSP Grp., L.P.*, 2015 WL 13374016, at *4 (S.D. Cal. July 2, 2015) ("[T]he Court finds that 'telephone,' as it is found in section 632(a) means a landline telephone."). The same result should follow here.

When the Legislature enacted section 632, only one type of "telephone" existed: a landline telephone. *Id.* at *3. To keep up with developing technology, the Legislature enacted CIPA §§ 632.5 and 632.6 to explicitly cover conversations conducted via mobile phones. *Id.* At the same time, the Legislature amended § 632.7 to add definitions for "cellular radio telephone" and "cordless telephone." *Id.* at *3-4. The Legislature, however, chose *not* to amend § 632. *Id.* at *4. "As such, the addition of the mobile phone definitions in later sections indicates that the Legislature did not intend for section 632 to encompass those types of phones." *Id.* at *3-4 ("The Legislature has shown that it knows how to include cordless phones when it so intends."). This reasoning is consistent with the Legislative Counsel's express statement that "Section 632 provides a right of privacy to confidential communications carried ***over landline telephones***, [but] it does not provide a right of privacy to communications carried ***over radio telephones***." *Id.* at *3 (citation omitted) (emphasis added). California courts have thus held that § 632 does not apply to calls made by cellular phones. *See Pepper v. Charitable Res. Found., Inc.*, 2014 WL 12961327, at *3 (C.D. Cal. Oct. 14, 2014) ("The California [Supreme] Court's careful distinction between cellular and landline telephone calls suggests that it would hold that § 632 is limited to calls

involving only landline telephones.”).

Plaintiffs C.D. and E.F. allege that they contacted the Hotline by calling the number posted on the Hotline’s website. (*See* Compl. ¶¶ 67-71, 74.) But Plaintiff C.D. alleges she called the Hotline via a *cellular* phone, not landline telephone. (*Id.* ¶ 67.) And E.F. does not specify which device she used at all. (*See id.* ¶ 74.) Any calls made by Plaintiffs using their cell phones do not fall within the orbit of § 632(a), and their claims must be dismissed. *See McEwan*, 2015 WL 13374016, at *4 (dismissing CIPA § 632 claim because “section 632 does not protect conversations had over cordless telephones”); *see also Ewing v. Empire Cap. Funding Grp., Inc.*, 2019 WL 157660, at *2 (S.D. Cal. Jan. 10, 2019) (“[B]ecause Ewing’s complaint is predicated on calls made to his cell phone, he cannot state a cognizable CIPA claim.”).

### G. Plaintiffs’ § 632.7 Claim Fails Because They do not Allege that Genesys Intercepted and Recorded Communications between Two Phones

Section 632.7 applies only to communications “transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone.” Cal. Pen. Code § 632.7(a). The express language of § 632.7 thus requires that telephones are used on *both sides* of the communication. *See Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 983 (C.D. Cal. Aug. 14, 2023) (“Every type of communication listed in the statute is between two phones. To the extent the meaning was unclear, the California Supreme Court recently clarified that Section 632.7 prohibits intrusions upon ‘a communication transmitted between a cellular or cordless telephone *and another telephone*.’”) (quoting *Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 187 (2021)). Federal courts have therefore repeatedly held that CIPA § 632.7 does not apply to communications transmitted over the Internet. *See Garcia*, 2023 WL 4535531, at *6 (dismissing CIPA § 632.7 claim because § 632 “only applies to communications transmitted by telephone, not internet”); *Tonal Sys.*, 751 F. Supp. 3d at 1040 (collecting cases). That fundamental requirement is not met here.

Here too, the Ninth Circuit’s ruling in *Boulton* is illustrative. *See* 2025 WL 314813, at *2. In affirming dismissal of the plaintiffs’ § 632.7 claim, the court was clear that the statute only

applies to "a transmission between two telephones as plainly required by the statute and as so interpreted by California courts." *Id.* But the plaintiffs did not so allege—they conceded that Community is a "social media platform," meaning a channel that runs on software. *Id.* The Ninth Circuit thus held that the plaintiff failed to state a claim under § 632.7 because she "did not and [could not] allege that her text was received by a phone." *Id.*

The same result should follow here. Plaintiffs limit their § 632.7 claim to the call feature offered through the Hotline's website. (*See* Compl. ¶ 143.) But nowhere in the Complaint do Plaintiffs allege that two phones are involved in any call made to the number on the Hotline's website. (*See generally* Compl.) Rather, Plaintiffs concede that their calls are received by a cloud-based platform—in other words, *software*, not a phone. (*See, e.g.*, *id*. ¶ 117 ("Genesys'[s] Cloud CX software is embedded in the 'phone trees' on the Hotline's and other companies that use Genesys' technology."); *see also id.* ¶¶ 35, 43, 116.) Plaintiffs thus concede the Hotline communicated with them over *Internet software* and they cannot allege that their purportedly intercepted messages were received by a phone as required to state a viable claim. It is irrelevant if Plaintiffs may have subjectively *believed* the Hotline received their calls by phone; any "[t]ransmission by internet through a device called 'phone' is not sufficient" to state a § 632.7 claim. *Augustine v. Lenovo (United States), Inc.*, 2023 WL 4938050, at *4 (S.D. Cal. Aug. 2, 2023) (quoting *Garcia*, 2023 WL 4535531, at *6).

Thus, as numerous courts have held, Plaintiffs' admission that the Hotline receives calls through Genesys' "embedded . . . technology," (Compl. ¶¶ 35, 117), defeats their CIPA § 632.7 claim and it should be dismissed with prejudice. *Boulton*, 2025 WL 314813, at *2 (dismissing with prejudice § 632.7 claim where plaintiff "did not and cannot allege" that her communication "was received by a phone"); *Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 949 (S.D. Cal. 2024) (same); *Garcia*, 2023 WL 4535531, at *6 (same).

**H. Plaintiffs' CIPA Claims do not Apply to Extraterritorial Conduct**

Plaintiffs C.D. and E.F.'s CIPA claims, as well as those brought on behalf of the putative California and Hotline classes, independently fail because nothing in CIPA displaces the "strong presumption against the extra-territorial application of California law." *Brackett v. Am. Airlines*

*Grp. Inc.*, 2022 WL 282529, at *2 (N.D. Cal. Jan. 31, 2022) (citing *Sullivan v. Oracle Corp.*, 51 Cal.4th 1191 (2011)). It is axiomatic that courts applying California law must "presume the Legislature did not intend a statute to be operative, with respect to occurrences outside the state, . . . unless such intention is ***clearly expressed*** or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." *Sullivan*, 51 Cal.4th at 1207 (citations omitted) (emphasis added). CIPA "protect[s] the right of privacy of *the people of this state*." Cal. Pen. Code § 630 (emphasis added). Had the Legislature intended to provide for CIPA's extraterritorial application, it would have done so expressly. But it did not, and § 630's plain language must be given effect.

Here, Plaintiffs do not limit their CIPA claims to alleged communications in the state: Plaintiffs E.F. and C.D. do not allege where they were when they communicated with the Hotline, and the proposed California and Hotline classes are likewise not limited to residents' communications occurring in the State. (Comp. ¶¶ 67-68, 74-76, 84.) Merely alleging California residency of Plaintiffs and Genesys as a corporate entity does not expand the reach of Plaintiffs' CIPA claims outside California. *See, e.g.*, *Hammerling v. Google LLC*, 2022 WL 17365255, at *11 (N.D. Cal. Dec. 1, 2022) (dismissing § 631 claim against defendant with headquarters in California because plaintiffs "fail[ed] to allege that the data in question was intercepted in California, as is required under the CIPA"). Plaintiffs must allege that the purported interception occurred in California, and they fail to do so.

## V. CONCLUSION

Genesys provides critical infrastructure to the Hotline to carry out its life-saving work. It is not "wiretapping" or "eavesdropping" by merely providing software and related communication services to the Hotline. Plaintiffs' claims fail, and the Complaint should be dismissed with prejudice.

Dated: July 3, 2025

MORRISON & FOERSTER LLP

By: /s/ Tiffany Cheung
Tiffany Cheung
Elisabeth Hutchinson
Camille Framroze
Emily Tsurue Yamashiro McKenna

*Attorneys for Defendant*
GENESYS CLOUD SERVICES, INC.