**CONSOVOY MCCARTHY PLLC**
Bryan Weir (Cal. Bar No. 310964)
Brandon Haase (*pro hac vice*)
1600 Wilson Blvd., Ste. 700
Arlington, VA, 22209
T: (703) 243-9423
F: (703) 243-8696
bryan@consovoymccarthy.com
brandon@consovoymccarthy.com

**BENBROOK LAW GROUP, PC**
Bradley Benbrook (Cal. Bar No. 177786)
Steve Duvernay (Cal. Bar No. 250957)
701 University Avenue, Ste. 106
Sacramento, CA 95825
T: (916) 447-4900
F: (916) 447-4904
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PLAINTIFF A.B., PLAINTIFF C.D., and PLAINTIFF E.F., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GENESYS CLOUD SERVICES, INC.,<br><br>Defendant. | Case No.: 3:25-cv-03276-EMC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>**CLASS ACTION**<br><br>Judge: Hon. Edward M. Chen<br>Date: October 16, 2025<br>Time: 1:30 p.m.<br>Courtroom: 5, 17th Floor |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii
STATEMENT OF ISSUES TO BE DECIDED ........ vi
INTRODUCTION ........ 1
FACTUAL BACKGROUND ........ 2
A. Genesys intercepts, records, and uses sensitive communications without consent. ........ 2
B. Genesys intercepted Plaintiffs' sensitive calls, chats, and text messages to the Hotline. ........ 3
C. Plaintiffs sue Genesys for its unlawful collection and use of their information. ........ 3
LEGAL STANDARD ........ 4
ARGUMENT ........ 4
I. Plaintiffs allege a violation of the Federal Wiretap Act. ........ 4
A. The consent defense does not apply because Genesys violated state law. ........ 5
B. Plaintiffs never consented to Genesys' collection of their communications. ........ 6
C. Plaintiffs allege interception in transit. ........ 7
II. Plaintiffs allege violations of the CIPA. ........ 10
A. Plaintiffs allege violations of Section 631(a). ........ 10
1. Plaintiffs allege a violation of the second clause of Section 631(a). ........ 11
2. Plaintiffs allege a violation of the third clause of Section 631(a). ........ 15
B. Plaintiffs allege a violation of section 632. ........ 15
C. Plaintiffs plead a violation of Section 632.7. ........ 19
D. Plaintiffs allege their communications were intercepted in California. ........ 21
CONCLUSION ........ 22

## TABLE OF AUTHORITIES

**CASES**

*Augustine v. Lenovo*,
2023 WL 4938050 (S.D. Cal. Aug. 2, 2023) .......... 20

*Boulton v. Community.com, Inc.*,
2025 WL 314813 (9th Cir. Jan. 28, 2025) .......... 10, 20

*Brinkley v. Monterey Fin. Servs., LLC*,
340 F. Supp. 3d 1036 (S.D. Cal. 2018) .......... 19, 20

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 5, 16, 17

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) .......... 12, 15, 20, 21

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 6

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) .......... 6, 7

*Crowley v. CyberSource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001) .......... 8

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .......... 12, 21

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 5, 16, 21

*Doe v. Tenet Healthcare Corp.*,
2025 WL 1635956 (E.D. Cal. June 9, 2025) .......... 9

*Flanagan v. Flanagan*,
41 P.3d 575 (Cal. 2002) .......... 10, 17, 19

*Garcia v. Build.com, Inc.*,
2023 WL 4535531 (S.D. Cal. July 13, 2023) .......... 12, 20

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 11, 12

*Hammerling v. Google LLC*,
2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) .......... 21

*Hammerling v. Google LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) .......... 21

*Hazel v. Prudential Fin., Inc.*,
2023 WL 3933073 (N.D. Cal. June 9, 2023) .......... 7

*Heerde v. Learfield Commc'ns, LLC*,
741 F.Supp.3d 849 (C.D. Cal. July 19, 2024) .......... 10, 11

*Heiting v. Taro Pharms. USA, Inc.*,
2024 WL 3738055 (C.D. Cal. July 31, 2024) .......... 8, 9

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... 12

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 4, 8, 11

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023) .......... 5

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 4, 5, 6, 10

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 12, 14

*Jones v. Peloton Interactive, Inc.*,
720 F. Supp. 3d 940 (S.D. Cal. 2024) .......... 20

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) .......... 20

*Kahn v. Outrigger Enters., Inc.*,
2013 WL 12136379 (C.D. Cal. Oct. 29, 2013) .......... 19

*Kearney v. Salomon Smith Barney, Inc.*,
137 P.3d 914 (Cal. 2006) .......... 18, 21

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......... 1

*Licea v. Old Navy, LLC*,
669 F. Supp. 3d 941 (C.D. Cal. 2023) .......... 9

*M.G. v. Therapymatch, Inc.*,
2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) .......... 17

*Marden v. LMND Med. Grp., Inc.*,
2024 WL 4448684 (N.D. Cal. July 3, 2024) .......... 5

*McCabe v. Six Continents Hotels, Inc.*,
2014 WL 465750 (N.D. Cal. Feb. 3, 2014) .......... 21

*McEwan v. OSP Grp., L.P.*,
2015 WL 13374016 (S.D. Cal. July 2, 2015) .......... 19

*Nader v. Cap. One Bank (USA), N.A.*,
2013 WL 11070244 (C.D. Cal. June 11, 2013) .......... 19

*Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 2016 WL 4886933 (S.D. Cal. Sept. 15, 2016) ..... 7

*Papa John's International, Inc.*, 2025 WL 1704437 (9th Cir. June 18, 2025) ..... 15

*Pepper v. Charitable Res. Found., Inc.*, 2014 WL 12961327 (C.D. Cal. Oct. 14, 2014) ..... 19

*R.C. v. Sussex Publishers, LLC*, 2025 WL 1735994 (N.D. Cal. June 23, 2025) ..... 9

*R.C. v. Sussex Publishers, LLC*, 2025 WL 948060 (N.D. Cal. Mar. 28, 2025) ..... 16, 17, 18

*R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876 (C.D. Cal. 2024) ..... 5

*Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ..... 12

*Ribas v. Clark*, 696 P.2d 637 (Cal. 1985) ..... 14, 15

*Roberts v. Wyndham Int'l, Inc.*, 2012 WL 6001459 (N.D. Cal. Nov. 30, 2012) ..... 21

*Rodriguez v. Ford Motor Co.*, 2024 WL 4957566 (S.D. Cal. Dec. 3, 2024) ..... 12

*Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503 (C.D. Cal. 2021) ..... 12

*Smith v. LoanMe, Inc.*, 483 P.3d 869 (Cal. 2021) ..... 20, 22

*St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ..... 7, 9

*Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732 (N.D. Cal. 2023) ..... 16

*Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949 (E.D. Cal. 2025) ..... 12

*Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169 (N.D. Cal. 2024) ..... 12, 18

*Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir. 1987) ..... 14

*Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969 (C.D. Cal. 2023) ..... 20

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) ........ 11, 12, 13, 18

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024). ........ 16, 17

**STATUTES**

Cal. Penal Code §631 ........ 10, 21

Cal. Penal Code §632 ........ passim

Cal. Penal Code §632.5 ........ 16

Cal. Penal Code §632.7 ........ 19, 20, 21

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether Plaintiffs plead a violation of the Federal Wiretap Act. Specifically, whether Plaintiffs sufficiently allege: (i) Genesys intercepted Plaintiffs' communications for the purpose of violating California law; (ii) Genesys failed to obtain consent because it never notified Plaintiffs it was listening to their conversations with the Hotline; and (iii) Genesys intercepted their communications in transit by accessing them before they reached the Hotline and continuing to monitor them in real-time.

2. Whether Plaintiffs plead violations of the second and third clauses of § 631(a) of the California Invasion of Privacy Act ("CIPA"). Specifically, whether Plaintiffs sufficiently allege: (i) Genesys failed to obtain consent from *all* parties to the communication, not just the Hotline; (ii) Genesys is a third-party, not an extension of the Hotline, because it is capable of using the information it collects for its own purposes; and (iii) Genesys used the information it collected from Plaintiffs to provide its services to the Hotline and other businesses.

3. Whether Plaintiffs plead a violation of CIPA § 632. Specifically, whether Plaintiffs sufficiently allege: (i) phone calls, texts, and online communications covered by Section 632; (ii) Genesys is a third party eavesdropper because it is capable of using Plaintiffs' communications for its own purposes; (iii) Plaintiffs' calls, texts, and web messages were confidential because Plaintiffs sent them to a confidential domestic violence Hotline and they relayed highly sensitive subject matter; and (iv) that their cellular phones are "telephones" covered by Section 632.

4. Whether Plaintiffs plead a violation of CIPA § 632.7. Specifically, whether Plaintiffs' allegations that they made phone calls to Genesys' phone system plead a communication between two telephones.

## INTRODUCTION

When someone calls a crisis hotline, texts their physician about a medical condition, or messages a business about a product or service, they rightly expect those communications will be conveyed only to their intended recipient—not eavesdropping third parties. This case is about is about Genesys's far-reaching violation of that basic privacy expectation. Genesys is a technology company that provides recording and monitoring services for businesses' client-facing communications. Genesys's services are used by many organizations to manage voice and text-based interactions with clients. Genesys boasts that through its suite of communications products, it is able to overhear, record, and analyze "100% of interactions" between companies and their customers.

But Genesys's powerful technologies come at a steep cost to individual privacy. One of the many companies that Genesys provides communications services to is the National Domestic Violence Hotline (the "Hotline"). That organization offers support to those affected by domestic violence via chat, phone, and text. As with the other companies it works with, Genesys overhears and collects private details from callers, including their name, age, gender, location, race, and reason for calling the Hotline—all without announcing its presence or asking for consent. And Genesys further fails to alert customers that during these interactions, it is recording their calls, texts, and chats, and analyzing and using their information for its own purposes. Genesys is thus liable to Plaintiffs and those similarly situated under federal and state law for illegally wiretapping, recording, and using their communications without consent.

As part of its strategy to defeat the Complaint at the pleading stage, Genesys seeks to "present [its] own version of the facts at the pleading stage" by asking this Court to take notice of a tranche of documents containing disputed facts. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); *see* Genesys' Req. for Judicial Notice ("RJN") (Dkt. No. 24). The Court should reject Genesys' attempt to "short-circuit the resolution of [Plaintiffs'] well-pleaded claim" for the reasons outlined in their accompanying opposition to Genesys' request. *Khoja*, 899 F.3d at 999. But even if the Court notices these facts, the Complaint plausibly states a claim for relief.

## FACTUAL BACKGROUND

**A. Genesys intercepts, records, and uses sensitive communications without consent.**

Genesys offers a suite of communications services, collectively known as "Cloud CX," that allow businesses and organizations to manage phone calls, text messages, and online chat interactions with their customers. Compl. ¶17. But Genesys is no ordinary communications service. Unlike traditional customer contact solutions, Genesys has said it uses virtual customer service agents, powered by artificial intelligence, to "collect and validate customer information — and *continuously learn* with automatically labeled live customer data — to build a knowledge base and *grow smarter over time*." *Id.* ¶18. In other words, Genesys does not simply enable customer interactions with third-party website owners—it mines them for information that it uses to improve its own services. *Id.* ¶19. This process of incorporating individuals' information into its own systems, known as "machine-learning," gives Genesys a unique competitive edge, enabling it to gather business intelligence, improve its products, and provide enhanced services to its customers. *Id.* Genesys has employed these tactics across different products, all of which can be seamlessly integrated into an organization's customer-facing website, phone system, and text platform. *Id.* ¶20; *see also id.* ¶¶21-23

The problem with all of this is that Genesys's services are unannounced. *Id.* ¶23. So, when a customer interacts with a business using Genesys's chat function, there's no indication that they are communicating with Genesys, an undisclosed third party. *Id.* As a result, callers and website visitors unwittingly hand over massive amounts of sensitive data to a third-party tech company. *Id.* ¶24.

Nor does Genesys disclose that it is recording, analyzing, and processing customers' communications with third parties using machine learning technology. *Id.* Genesys' self-admitted ability to use data collected from individuals to improve its own products, designs, and services distinguishes it from a run-of-the-mill phone service provider. *Id.* ¶58. Genesys is not merely facilitating interactions between users and the Hotline—it is also capable of mining data from these interactions for its own purposes to maintain its competitive edge. *Id*.

**B. Genesys intercepted Plaintiffs' sensitive calls, chats, and text messages to the Hotline.**

Plaintiff A.B. is one of the victims of Genesys' wiretapping. In May 2024, she contacted the Hotline via text message. *Id.* ¶¶59-60.[1] Unbeknownst to her, she was actually placed in connection with not just the Hotline, but also with Genesys. *Id.* ¶60. In the ensuing conversation, she shared a number of personal details, including her age, gender, race, location, and the reason she had contacted the Hotline. *Id.* ¶61. After being connected with an agent at the Hotline, she relayed even more sensitive details describing the precise nature of her situation. *Id.* ¶¶62-63.

Plaintiff C.D. is another victim of Genesys' wiretapping. *Id.* ¶67. In the Summer of 2023, she called the Hotline's phone number on several occasions seeking help for a domestic violence incident she had experienced. *Id.* ¶¶67-69. While waiting to be connected to a human agent, she relayed the details of her income, address, race, gender, and the reason she had called. *Id.* ¶69. Likewise, Plaintiff E.F. contacted the Hotline through chat, text, and phone on several occasions during the Spring of 2024. *Id.* ¶¶74-79. During each of these interactions, she communicated her age, racial demographics, city and state, and the reason she contacted the Hotline. *Id.* ¶75.

Plaintiffs had no idea that during their interactions with the Hotline, Genesys was intercepting, recording, and using the contents of their communications. *Id.* ¶¶64, 71, 77-79. Genesys never announced its presence on during any of these interactions, described its use of Plaintiffs' information, or obtained consent. *Id.* ¶¶65, 71, 77. Rather, it surreptitiously collected and used Plaintiff's information for its own purposes, including to evaluate its own products, design and research new products, and improve its services to other customers. *Id.* ¶¶55-58, 64, 66, 71, 73, 77, 79.

**C. Plaintiffs sue Genesys for its unlawful collection and use of their information.**

Plaintiffs filed this lawsuit challenging Genesys' interception and use of their communications. They assert four claims. Plaintiffs allege one claim under the Electronic

---

[1]The Complaint incorrectly alleges that Plaintiff A.B. contacted the Hotline in May 2021, which is outside the statute of limitations period. *Id.* ¶59. A.B. actually contacted the Hotline in May 2024. As a result, Plaintiff A.B.'s claim falls within all applicable statutes of limitations. *See* Genesys' Motion to Dismiss at 9 (arguing that A.B.'s claim should be dismissed on statute of limitations grounds). Plaintiffs respectfully request leave to amend the Complaint to correct paragraph 59 to allege that A.B. contacted the Hotline in May 2024.

Communications Privacy Act, which prohibits the intentional interception, use, or disclosure of any wire, oral, or electronic communication. *Id.* ¶¶92-107. Plaintiffs also allege three claims under the California Invasion of Privacy Act ("CIPA"), which prohibits wiretapping, recording, and using communications without consent. *Id.* ¶¶108-45.

**LEGAL STANDARD**

"In reviewing a motion to dismiss, the Court takes all allegations of material fact as true and construes them in favor of the plaintiffs to determine whether a plausible legal claim has been stated." *Ramos v. Nielsen*, 321 F. Supp. 3d 1083, 1101 (N.D. Cal. 2018). "A claim 'has facial plausibility if the plaintiffs plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (cleaned up).

**ARGUMENT**

**I. Plaintiffs allege a violation of the Federal Wiretap Act.**

"The Wiretap Act prohibits the unauthorized 'interception' of an 'electronic communication.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606-07 (9th Cir. 2020) (subsequent history omitted) (quoting 18 U.S.C. § 2511(1)(a)–(e)) ("*Facebook Tracking Litig.*"). The "paramount objective of the Electronic Communications Privacy Act, which amended the Wiretap Act, is to protect effectively the privacy of communications*." Id*. at 608 (cleaned up) (citations omitted). "Congress's intent [was] to prevent the acquisition of the contents of a message by an unauthorized third-party or 'an unseen auditor.'" *Id.* To prevail, a plaintiff must show the defendant "(1) intentionally (2) intercepted (3) the contents of (4) plaintiffs' electronic communications (5) using a device." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 794-95 (N.D. Cal. 2022) ("*Meta Healthcare Litig.*").

Genesys does not dispute that Plaintiffs alleged intent, Compl. ¶¶5, 25, 100, that their communications conveyed contents, *id.* ¶¶61, 63, 69, 75, 96-96, 114, or that Genesys' various communications products are devices, *id.* ¶¶98-99. Genesys argues only that (A) the Hotline's consent to allow interception of Plaintiffs' communications defeats their claims; (B) that Plaintiffs were on

notice that Genesys was intercepting their communications; and (C) that the complaint fails to allege interception. Each argument fails.

**A. The consent defense does not apply because Genesys violated state law.**

Genesys points out (at 10) that consent by either party to the communication is typically a defense to an ECPA claim. *Meta Healthcare Litig.*, 647 F. Supp. 3d at 796. And because the Hotline consented to Genesys' interception, Plaintiffs cannot state an ECPA claim. But "consent is not a defense where the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the … laws … *of any State*." *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (emphasis added). "The Ninth Circuit has explained that the crime-tort exception to the Wiretap Act's consent defense focuses on whether 'the purpose for the interception—its intended use—was criminal or tortious.'" *Meta Healthcare Litig.*, 647 F. Supp. 3d at 796-97. "The existence of a lawful purpose does not sanitize an interception that was also made for an illegitimate purpose." *Id.*

Here, Plaintiffs allege Genesys intercepted their communications in violation of the California Invasion of Privacy Act. *See infra* II.A-C. And that Genesys did so for its *own* benefit, not just the Hotline's. *See infra* II.A.1; *see also Marden v. LMND Med. Grp., Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024) ("Plaintiffs allege that Google and Facebook benefited from this interception by using the information …."). Because Plaintiffs plausibly allege Genesys' interception violated state law, Genesys cannot invoke the ECPA's consent defense. *See, e.g.*, *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024) ("But even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims.") (collecting cases); *Brown*, 525 F. Supp. 3d at 1067; *Marden*, 2024 WL 4448684, at *3; *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 720 (D. Minn. 2023). Genesys has not carried its "burden of proof to show th[e] [consent] exemption applies." *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1077-78 (N.D. Cal. 2023) (subsequent history omitted).

**B. Plaintiffs never consented to Genesys' collection of their communications.**

Genesys also argues (at 11) that Plaintiffs implicitly consented to its interception and recording of their conversations. According to Genesys, Plaintiffs were "on notice" that "the Hotline uses third-party software" because it is "obvious" that the "Hotline … [did not] develop[] its own phone, web messaging, or text-based software." Motion to Dismiss ("MTD") at 11. For support, Genesys says that the Hotline "publicly and repeatedly discussed its partnership with Genesys" and that "partnership with Genesys also received media coverage from well-read sources." But the Complaint alleges none of that. It all comes from documents that Genesys is trying to get into the case at the motion-to-dismiss stage. *See generally* RJN. For example, Genesys relies on posts from its own website and an article from Forbes for fact that Plaintiffs should have known Genesys was intercepting their calls. *See* MTD at 4-5 n.6-8. And it tries to insert purported screenshots of the chat function from the Hotline's website. *Id.* at 6. But it is bedrock civil procedure that a defendant cannot rebut allegations at the motion-to-dismiss stage by putting in its own evidence. Yet that is exactly what Genesys is trying to do. The Complaint alleges that Genesys never told them that it was listening to their communications, let alone recording and using them, and that Plaintiffs never consented to that interception. *See, e.g., id.* ¶¶64, 71, 78. Genesys must accept those well-pleaded allegations at this stage. And the Court should reject Genesys' effort to supplant the complaint's allegations. *See also* Opp'n to RJN at 4-5.

At any rate, the outcome is the same even if the Court did consider Genesys' proffered exhibits. A public source somewhere on the internet about how one company wiretaps another company's communications cannot establish consent. While "[c]onsent 'can be explicit or implied, … any consent must be *actual*.'" *Meta Healthcare Litig.*, 647 F. Supp. 3d 778, 793 (N.D. Cal. 2022) (emphasis added). And "[i]n order for consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue." *Id.* (quoting *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 620 (N.D. Cal. 2021), *aff'd*, 113 F.4th 1141, 1147 (9th Cir. 2024)). And such "consent is only effective if the person alleging harm consented 'to the particular conduct, or to substantially the same conduct' and if the [defendant] did not exceed the scope of that consent." *Calhoun*, 113 F.4th at 1147 (cleaned up);

*see also St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *8 (N.D. Cal. Oct. 1, 2024) ("The governing standard is what a 'reasonable user' of a service would understand they were consenting to, not what a technical expert would.") (citing *Calhoun*, 113 F.4th at 1149).

Genesys's lone case citation on this issue (at 11) is no help to it. *See Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 2016 WL 4886933, at *3 (S.D. Cal. Sept. 15, 2016). In *Nei*, the court explained that the defendant's phone system notified callers it was recording through a "beep tone generator," *id.* at *2, warnings by the defendant's employees, *id.*, and voiceovers stating the "call may be monitored for quality assurance," *id.* at *3. Those were the "surrounding circumstances" that led the court to conclude the plaintiff was on notice regarding the defendant's recording, *see id.* at *4; not, as Genesys infers, unspecified media articles or Plaintiffs' supposed assumptions about the technologies at issue. *See* MTD at 11. Allowing defendants to invoke consent on such a slim basis would effectively neuter the privacy laws at issue here.

**C. Plaintiffs allege interception in transit.**

"Under the Wiretap Act … for data to be 'intercepted,' 'it must be acquired during transmission, not while it is in electronic storage.'" *Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *2 (N.D. Cal. June 9, 2023) (citations omitted). Plaintiffs allege interception at length in the Complaint. They allege that Genesys' chat software is "embedded into the Hotline's website through an 'iFrame code'" which "enables a website to embed a webpage hosted on a different server into the webpage the user interacts with," such that while it "it appear[s] as if the user is interacting solely with the Hotline or one of its representatives, … the user is also interacting with Genesys. Compl. ¶47. The allege this software "causes the exact contents of communications with the Hotline to be sent to Genesys' servers," which continues even after a visitor is connected to a human agent. *Id.* ¶¶31, 48. Plaintiffs further highlight Genesys' own claims that its tools enable "'*real-time* monitoring'" and the "'captur[ing]'" of "'exchanges between customers and agents.'" *Id.* ¶¶49-50. And that Genesys boasts it "'can provide transcription and analytics on 100% of interactions for deep insight into customer-agent conversations.'" *Id.* ¶51. In short, Plaintiffs both described the interception at issue and pointed to Genesys' own statements confirming that communications by

phone, text, or chat are captured in "real-time." *Id.* ¶21; *see also id.* ¶21 ("All of the content users communicate in the chat is transmitted while the conversation is ongoing—not stored and shared afterward—and is thus intercepted in transit."); *id.* ¶¶3, 30, 47-51.

Genesys first argues (at 17) that Plaintiffs did not plead interception because Genesys itself—and not the Hotline—was the intended recipient of Plaintiffs' communications, and therefore any communications were intercepted only *after* they were transmitted. *See* MTD at 17 ("Plaintiffs' calls, texts, or web messages had already been received at their *intended destination* at Genesys' platform.") (emphasis added). On this theory, Genesys would only access the communications after they had been placed in "electronic storage," not "in transit." *Id.*

This argument ignores the Complaint altogether. Genesys was *not* the intended recipient of Plaintiffs' communications—the Hotline was. *See, e.g.*, Compl. ¶¶49, 60, 68, 75, 116. Genesys may have successfully posed as the Hotline—albeit by failing to announce its presence—but it is not the Hotline. And since the Hotline, and not Genesys, was the "intended recipient" of the message, Genesys' interception of those messages before they reached the Hotline necessarily occurred "in transit." *See Heiting v. Taro Pharms. USA, Inc.*, 2024 WL 3738055, at *3 (C.D. Cal. July 31, 2024). Moreover, on Genesys' logic, a party could avoid liability for wiretapping simply by posing as someone else. This would render the Wiretap Act a dead letter, given that its entire purpose is "to prevent the acquisition of the contents of a message by an *unauthorized* third-party or 'an *unseen* auditor.'" *Facebook Tracking Litig.*, 956 F.3d at 608 (emphasis added).

Next, Genesys flatly asserts (at 17-18) that it accessed Plaintiffs' communications only after they were "effectively complet[ed]." But this language isn't from the Complaint—it's from a 2001 wiretapping case where the plaintiff alleged they sent an email to the defendant—the intended recipient—who *subsequently* forwarded their information to an undisclosed third party. *See Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001) ("[Plaintiff] sent certain information to [the intended non-party recipient], which *then* conveyed it to [defendant]") (emphasis added). Here, Plaintiffs allege they were attempting to communicate with the Hotline, and that Genesys accessed and intercepted their communications to its own servers while the communication

was ongoing. *See* Compl. ¶¶47-51, 75, 116. And that Genesys itself has described its tools as enabling "'*real-time* monitoring'" and "'recording,'" "'captur[ing],' and "'stor[ing]'" of "'exchanges between customers and agents.'" *Id.* ¶50.

*Heiting* is directly on point. 2024 WL 3738055. There, the plaintiff challenged the defendant website owner's use of Genesys' chat function, alleging—as Plaintiffs do here—that the company embedded Genesys' software on its website through an "iFrame code" that caused her to mistakenly believe "she was sending a message directly to Defendant," when in fact it was being intercepted and stored by Genesys. *Id.* at *1. The website owner argued that Genesys did not intercept messages in transit because, "by necessity," the messages first arrived at the defendant's website—*i.e.*, their intended destination—before being re-routed to Genesys, and therefore Genesys only accessed the message as a "stored communication," not "in transit." *Id.* at *3. The court rejected that argument, holding that plaintiff sufficiently alleged interception in transit by pleading that "'at the same time Plaintiff sends a communication to Defendant,' [it] is 'first transmitted to Genesys's servers' before [it is] sent to Defendant." *Id.* at *4 (cleaned up). The same logic applies here.

Genesys otherwise ignores Plaintiffs' allegations and argues (at 18) that the Complaint's allegations about interception "'in transit' are 'simply conclusory.'" Again, not so. And courts have repeatedly declined defendants' invitations to engage disputes about the timing of the interception at the pleadings stage. *See, e.g.*, *Heiting*, 2024 WL 3738055, at *4 n.6 ("Defendant is pointing to a technical, factual contention that would require the Court to disavow the facts in the SAC—which the Court cannot do at this stage of the proceedings."); *Licea v. Old Navy, LLC*, 669 F. Supp. 3d 941, 946 (C.D. Cal. 2023) ("[F]actual disputes regarding whether third parties access the messages before they are stored are not proper for resolution at the motion to dismiss stage."); *R.C. v. Sussex Publishers, LLC*, 2025 WL 1735994, at *3 (N.D. Cal. June 23, 2025) (similar). They have also rejected a pleading standard that would require plaintiffs to "engage in a one-sided guessing game" regarding when and how communications are intercepted "because the relevant information about data capture typically resides uniquely in the custody and control of the … defendant." *St. Aubin*, 2024 WL 4369675, at *6; *Doe v. Tenet Healthcare Corp.*, 2025 WL 1635956, at *14 (E.D. Cal. June 9, 2025) (same).

Finally, Genesys' appeal to *Boulton v. Community.com, Inc.*—a non-precedential memorandum disposition—is no help to it. 2025 WL 314813, at *1 (9th Cir. Jan. 28, 2025). In *Boulton*, the plaintiff alleged she "texted a … number and the text was received at that number" *before* it was accessed by the defendant third party. *Id.* The court thus held, "[b]ased on the facts alleged in the complaint," that the third party could only have accessed her message *after* "it was in electronic storage." *Id.* But here, Plaintiffs allege Genesys engaged in "real-time monitoring" of Plaintiffs' messages, texts, and calls, Compl. ¶¶48, 50-51, and that their texts and calls are collected by Genesys "*before* they reach their destination," *id.* ¶49 (emphasis added). So, the Court must ignore these allegations to apply *Boulton*'s reasoning here. And even setting that aside, *Boulton* involved only one form of technology—text messaging—and its reasoning would not apply to Plaintiffs' calls and web chats. *See* 2025 WL 314813, at *1.

***

In sum, Plaintiffs allege every component of an ECPA violation, and Genesys has not carried its burden to establish consent. Genesys' Motion to Dismiss should be denied as to Plaintiffs' ECPA claim.

**II. Plaintiffs allege violations of the CIPA.**

"The California Invasion of Privacy Act ("CIPA") mirrors the federal Wiretap Act, but with a few important exceptions," *Meta Healthcare Litig.*, 647 F. Supp. 3d at 797, including that it requires the consent of *all* parties to the communication. *See* Cal. Penal Code §631(a). "The purpose of the [CIPA] was to protect the right of privacy by, among other things, requiring that all parties consent to a recording of their conversation." *Meta Healthcare Litig.*, 647 F. Supp. 3d at 797 (quoting *Flanagan v. Flanagan*, 41 P.3d 575, 577 (Cal. 2002)). Plaintiffs allege violations of CIPA sections 631(a), 632, and 632.7.

**A. Plaintiffs allege violations of Section 631(a).**

Section 631(a) contains four separate clauses that comprise distinct avenues of relief. *Heerde v. Learfield Commc'ns, LLC*, 741 F.Supp.3d 849, 858 (C.D. Cal. July 19, 2024). Plaintiffs allege claims under the second and third clauses of the statute. Compl. ¶¶108-129.

**1. Plaintiffs allege a violation of the second clause of Section 631(a).**

Clause two of Section 631(a) prohibits a person from "willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit." *Heerde,* 741 F. Supp. 3d at 858. For reasons already outlined for the ECPA, the Complaint alleges that Plaintiffs did not consent to the interception of their information and that the interceptions occurred "in transit." *See supra* I.C. And Genesys doesn't dispute that Plaintiffs allege Genesys read or learned their communications, or that Plaintiffs alleged "content." Rather, Genesys contends (at 12) that it "merely 'provides a tool' allowing [the Hotline] to record *its own* communications," and, as a result, Genesys is "an extension of the customer and a party to the communication." And that Section 631 authorizes liability only for third parties to a conversation. *See Facebook Tracking Litig*., 956 F.3d at 607. In other words, Genesys stands in the Hotline's shoes and Plaintiffs knew they were talking to the Hotline. Genesys is not a "third-party eavesdropper"; it is a "third-party extension of Defendant's website." *See* MTD at 13.

To start with, this "extension" theory misreads clause two of Section 631(a). Some courts have concluded that "software providers" can be merely "extensions that provide a tool allowing a company to record and analyze its own data in aid of its business." *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 972 (N.D. Cal. 2023) (quoting *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021)). They have done so because, in their view, the "software … did not constitute wiretapping because there 'were no facts … to suggest that [the software] intercepted and used the data itself.'" *Yockey*, 688 F. Supp. 3d at 972. But those courts' readings "interpret the second prong of the statute … based on the intentions and *usage* of the prospective third party,' but the third prong of the statute already penalizes 'use.'" *Id.* (emphasis added). "As a result, reading a use requirement into the second prong would add requirements that are not present (and swallow the third prong in the process)." *Id.*

The case that spawned the "extension" theory "and its progeny are based on a misinterpretation of Section 631." *Id.*[2] The correct rule for clause two is "that the third party's intentions with respect to the use of the collective information are irrelevant." *Id.* And that "inquiry turns on the more granular question of whether the third party 'has the *capability* to use its record of the interaction for any other purpose.'" *Id.* (quoting *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023)).[3] Under that standard, Plaintiffs need only allege Genesys' eavesdropping exceeded "the ordinary function of a tape recorder." *Javier*, 649 F. Supp. 3d at 900. In other words, "[t]he key is whether the hiring of a third party to collect information—even if for the benefit of the contracting party—poses a materially enhanced risk to the individual's privacy." *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *17 (N.D. Cal. Apr. 11, 2024) (Chen, J.) (discussing *Javier*). That turns on "the extent the third parties were subject to [the defendant's] control and ability to limit the use of dissemination of the medical data." *Id.* at *18.

Applying the correct test, Plaintiffs allege Genesys is capable of using the information it collects for its own purposes, not simply to serve the Hotline. *See* Compl. ¶¶55-58. Plaintiffs allege, citing Genesys' own statements, that Genesys' software "is capable of using the information collected via its Cloud CX services for its own purposes." Compl. ¶56. "In its 'Cloud Privacy Policy' Genesys

[2] *See Graham*, 533 F. Supp. 3d at 832 (faulting plaintiffs for failing to bring allegations … that [the third-party] intercepted and used the data itself"); *Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *5 (S.D. Cal. July 13, 2023) ("Here, Plaintiff does not allege that the third party intercepted and used the data itself."); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1068 (C.D. Cal. 2023) (similar).

[3] There are legion cases applying this correct standard. *See, e.g.*, *Rodriguez v. Ford Motor Co.*, 2024 WL 4957566, at *9 (S.D. Cal. Dec. 3, 2024); *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1183 (N.D. Cal. 2024); *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1016 (C.D. Cal. 2023) ("[A] plaintiff must have plausibly alleged that the third-party software provider had the capability to use the communications for another purpose."); *Tate v. VITAS Healthcare Corp.*, 762 F. Supp. 3d 949, 955 (E.D. Cal. 2025) ("Obtaining that data while reserving the capability to utilize it makes a third party distinct from one of the parties to the call and may trigger a violation of section 631(a)."); *cf. Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 521 (C.D. Cal. 2021) ("FullStory did not become a "party" to the communication simply because it was providing recording and transmission services for Nike"); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019).

states that it can 'aggregate data and information [collected via its services] related to the performance, operation, and use of the Cloud Services to create statistical analyses, to perform benchmarking, to perform research and development, and to perform other similar activities." *Id.* Plaintiffs have alleged that Genesys has the capability to use the data it intercepts for purposes beyond its services to the Hotline and thus not subject to the Hotline's control.

But the outcome is the same even if the Court applies the "extension" theory. To avoid being an "extension" of the website under that theory, the complaint must allege "facts … to suggest that [the software] intercepted and used the data itself.'" *Yockey*, 688 F. Supp. 3d at 972. The Complaint so alleges. It explains that "Genesys has said it uses virtual customer service agents, powered by artificial intelligence, to 'collect and validate customer information — and *continuously learn* with automatically labeled live customer data — to build a knowledge base and grow *smarter over time*." Comp. ¶18. The Complaint further alleges that "Genesys does not simply enable customer interactions with third-party website owners—it mines them for information that it uses to improve its own services." *Id.* ¶19. This process … known as 'machine learning' gives Genesys a unique competitive edge, enabling it to gather business intelligence, improve its products, and provide enhanced services to customers." *Id.* In addition, the Complaint alleges that Genesys uses recorded interactions "to predict a visitor's tone and sentiment … and evaluate a human agent's response," and to "answer user questions and provide complex, human-like transactional support." *Id.* ¶¶21-22. These allegations, which are largely drawn from Genesys' own statements about its products, give rise to a reasonable inference that Genesys uses the information it collects from communications with the Hotline to provide its services. *see also id.* ¶¶32, 37, 41. And the Complaint alleges that Genesys used Plaintiffs' information after intercepting it. *Id.* ¶¶66, 73, 79. So under any standard, the "extension" theory is not a basis for dismissing the Complaint.

Genesys argues (at 14) that some of these alleged statements "ha[ve] nothing to do with how Genesys allegedly uses or collects data from the Hotline's (or any of its customers') website." But Plaintiffs allege otherwise, arguing these statements support a reasonable inference that Genesys is capable of using the information it collects for its own purposes in ways that exceed "the ordinary

function of a tape recorder." *Javier*, 649 F. Supp. 3d at 900. That reasonable inference is entitled to deference at this stage. *See, e.g.*, *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987) ("[T]he court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party.").

Genesys' attempts to avoid its own Privacy Policy also fail. Unlike most of Genesys's other proposed exhibits, Plaintiffs do not oppose consideration of the Privacy Policy at this stage. *See* Opp'n to RJN at 3 n.1. Even so, Genesys acknowledges (at 14) that document expressly states Genesys may use "data and information [collected via Genesys' services] related to the performance, operation, and use of the Cloud Services to create statistical analyses, to perform benchmarking, to perform research and development, and to perform other similar activities for research and development and to make 'Service Improvements' to its own products." MTD at 14 (quoting Compl. ¶56). Genesys contends (at 15) this statement doesn't show it "used the Hotline's data." But the document plainly shows that Genesys is *capable* of using the information it collects from the Hotline (and its callers) for these purposes; uses that go well beyond Genesys' provision of services to the Hotline. Nothing more is required to demonstrate a violation of §631's second clause. And under the "extension" theory, the Privacy Policy supports the inference that Genesys *did* use the Hotline's data for its own purposes. The Complaint's other allegations on that point should dispel any concern that it states a claim even under the "extension" theory. *See* Compl. ¶¶ 18, 19, 32, 37, 41, 66, 73, 79.

Nor would simply applying section 631(a) as written "lead to unreasonable results," as Genesys asserts (at 15). The statute does not prohibit the Hotline (or anyone else) from using third-party technologies and services to facilitate communications or prevent Genesys from offering such services. But it does prohibit doing so "without the consent of all parties to the communication." *Ribas v. Clark*, 696 P.2d 637, 639 (Cal. 1985) (quoting Cal. Penal Code §631(a)(2)). Genesys never obtained that consent here, and thus "denie[d] [Plaintiffs] an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of [their]

statements." *Id.* at 640-41.[4] Genesys proffers this same argument for Plaintiffs' ECPA claims. *See* MTD at 11, 14-15. It fails for those claims for the same reasons.

**2. Plaintiffs allege a violation of the third clause of Section 631(a).**

The third clause of Section 631(a) makes it unlawful when "a person 'uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information … obtained'" in violation of the second clause. *Heerde*, 741 F. Supp. 3d at 858. In words, it outlaws the "use[]" of data intercepted unlawfully in violation of the second clause. Genesys doesn't make any specific arguments that Plaintiffs failed to plead it "used" their data. Nor could it. Courts have adopted "[a] broad reading of 'use,'" finding plaintiffs sufficiently alleged use where a defendant "harvested data as part of its business model, even if such data was only harvested for the client's benefit" *Id.* at 1186 (collecting cases). For reasons already outlined above, *supra* II.A.1, the Complaint alleges that and far more on usage. Otherwise, Genesys' only arguments that cover the third clause of Section 631(a) are ones already addressed: that Plaintiffs consented to Genesys's interception; that the information was not intercepted "in transit"; and that Genesys was merely an "extension" of the Hotline. Those arguments all fail for the reasons already stated. *Supra* I.A-I.C.

**B. Plaintiffs allege a violation of section 632.**

"To state a claim under § 632, Plaintiff must show there was (1) an electronic recording of (2) a confidential communication and (3) all parties did not consent." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 943 (N.D. Cal. 2024). The statute applies to recordings made with "any electronic amplifying or recording device." *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D.

---

[4] In addition, Genesys also cites the Ninth Circuit's recent unpublished decision in *Thomas v. Papa John's International*, *Inc*., for the idea that "a party to a conversation cannot be liable … for 'eavesdropping' on its own conversation." 2025 WL 1704437, at *1 (9th Cir. June 18, 2025). But *Papa John's* is irrelevant here. Again, Plaintiffs are not alleging Genesys eavesdropped on its *own* conversations, but on their conversations with *another* entity: the Hotline. Compl. ¶¶60, 72, 78. Moreover, the *Papa John's* court never reached the question of third-party liability under 631(a) because the plaintiff "did not allege that Papa John's violated section 631 by aiding another party in eavesdropping." *Id.* "It is axiomatic that cases are not authority for propositions not considered." *Byars*, 656 F. Supp. 3d at 1070 (citation omitted).

Cal. Oct. 23, 2019). Genesys does not contest that it made electronic recordings of Plaintiffs' communications using a "recording device."

Genesys makes three arguments against section 632 liability. *First*, Genesys asserts (at 19) that the statute "only applies to communications transmitted by telephone, not internet." This argument, of course, doesn't apply to Plaintiffs' phone calls. Compl. ¶¶34-38, 67, 74. And Genesys is otherwise incorrect that the statute applies only to telephones. It specifically applies to several types of non-telephonic communications, including those "carried on among the parties in the presence of one another or by means of a telegraph, telephone, *or other device*, except a radio …." Cal. Penal Code §632 (emphasis added).

For support of its contrary view, Genesys points to *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732 (N.D. Cal. 2023). But *Swarts* mistakenly pointed to section 632.5—not section 632—for the proposition that "[a] plain reading of the text itself makes clear that the statute only applies to communications transmitted by telephone, not internet." *Id.* at 747 (relying on the statutory language of §632.5 instead of §632). Others have recognized that error. *See R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *8 (N.D. Cal. Mar. 28, 2025) ("[T]he [*Swarts*] court quotes language from section 632.5, not section 632, to support its holding."). And *Swarts*'s author has otherwise found that a plaintiff states a claim under §632 when the communication occurred via a communications software service provider. *See Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 953-54 (N.D. Cal. 2024). *Swarts*'s mistake was critical to its conclusion because, while section 632.5 is expressly limited to communications "between cellular radio telephones or between any cellular radio telephone and a landline telephone," section 632 contains no similar limitation. *Compare* Cal. Penal Code §632.5 *with* §632. In fact, "[t]he only form of communication explicitly excluded by [section 632] is 'radio.'" *R.C.*, 2025 WL 948060, at *8. For this reason, courts have frequently analyzed section 632 claims involving internet communications. *See, e.g.*, *id.* (collecting cases); *see also Brown*, 525 F. Supp. 3d at 1073 (web history tracking); *Yockey*, 745 F. Supp. 3d at 955 (online chat); *Doe*, 690 F. Supp. 3d at 1080 (web history tracking). Plaintiffs' online communications thus fall within section 632.

*Second*, Genesys argues (at 19-20) Plaintiffs failed to plead confidential communications were intercepted. "A communication is confidential under § 632 if a party 'has an objectively reasonable expectation that the conversation is not being overheard or recorded.'" *Yockey*, 745 F. Supp. 3d at 973 (quoting *Flanagan*, 41 P.3d at 576). Genesys contends (at 20) Plaintiffs' communications were not confidential because "the communications at issue (web chats, text messages, and responses to automated prompts in a phone tree) are inherently recorded upon receipt." But whether the intended recipient of the communication—here, the Hotline—can record the communication is not the relevant question. The question of whether the communication is "confidential" is if it were "carried on in circumstances as may reasonably indicate that any party to the communication desired it to be *confined to the parties thereto*." Cal. Penal Code §632(c) (emphasis added); *see also R.C.*, 2025 WL 948060, at *8 ("A plaintiff 'need only show a reasonable expectation that the conversation was not being simultaneously disseminated to an unannounced second observer.'") (quoting *Brown*, 525 F. Supp. 3d at 1073) (cleaned up). So, even assuming Plaintiffs suspected the Hotline was recording their chats, texts, and voice responses, they had no reason to think Genesys—an unannounced third party—was intercepting them and recording them too.[5]

Further, while there is a general "presumption that internet communications do not give rise to a [confidentiality] expectation, courts recognize claims based on internet conversations where "Plaintiffs sufficiently "plead unique, definite circumstances rebutting [that] presumption." *R.C.*, 2025 WL 948060, at *9 (N.D. Cal. Mar. 28, 2025); *see also M.G. v. Therapymatch, Inc.*, 2024 WL 4219992, at *5 (N.D. Cal. Sept. 16, 2024) (explaining "in recent years, courts in [the Northern District of California] have started to recognize that individuals may have a reasonable expectation of privacy for certain internet communications" such as in incognito browsing, personal medical information,

[5] Genesys also claims (at 21) that the Hotline's website "explicitly discloses that 'Ruth,' the Hotline's AI chatbot, is powered by the Parasol Cooperative, not Genesys." But Plaintiffs did not plead Genesys was intercepting conversations with a chatbot called "Ruth." Genesys tries to alter the Complaint's allegations by adding an exhibit of a purported chat box and asking the Court to take judicial notice of it. *See* MTD at 6 & Ex. A; *see* Opp'n to RJN at 1-3. That is improper at the pleading stage and the exhibit also contradicts how the Hotline's chat box appeared when Plaintiffs filed their complaint. That evidentiary conflict can be hashed out in discovery.

and health-related communications) (collecting cases). For example, in *R.C.*, the court held plaintiffs alleged an expectation of privacy where their interactions with a therapy website "included personally identifying information, such as their IP addresses, zip codes … [and] the specific forms of therapy sought." 2025 WL 948060, at *8. Likewise, in *Turner*, the court found a reasonable expectation of confidentiality where plaintiffs conversed with a "banking entity, 'which naturally involves the discussion of confidential information.'" 735 F. Supp. 3d at 1175; *see also Yockey*, 688 F. Supp. 3d at 973 (recognizing confidentiality where online chats relayed details of plaintiff's "prescription history, medical conditions, and insurance information to customer service agents in a healthcare context").

Plaintiffs alleged communications mirror those recognized as confidential by courts in this district. Indeed, it's hard to imagine a more sensitive context than a hotline purporting to offer "*confidential* support to individuals affected by domestic violence." *See* Compl. ¶¶25-42, 55-79. Moreover, Plaintiffs allege they "relay[ed] sensitive details regarding the exact nature of the domestic abuse" they experienced, *id.* ¶63, the reasons they contacted the Hotline, *id.* ¶¶69, 75, their location, income, age, race, and other personal information, *id.* ¶¶61, 69, 75. And that Genesys paired this information with identifying information, including IP addresses and granular geolocation data. *Id.* ¶¶52-54. Nor were Plaintiffs ever told a party *other than* the Hotline was listening in or recording their communications, by phone or otherwise. *Id.* ¶¶64, 71, 77. As the Supreme Court of California explained, "California consumers are accustomed to being informed at the outset of a telephone call whenever a business entity intends to record the call," and "in the absence of such an advisement, a California consumer reasonably would anticipate that such a telephone call is not being recorded." *Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914, 930 n.10 (Cal. 2006). In short, everything about the nature and context of Plaintiffs' conversations with the Hotline supported a reasonable belief they were confidential.

*Third*, Plaintiffs C.D. and E.F. alleges that her telephonic communications were via their cell phones. Compl. ¶¶67, 74. Genesys argues (at 22-23), however, that section 632 covers only "landline telephone[s]." Yet the statute does not say "*landline* telephone"—it says "telephone." Cal. Penal Code

§632(a). And it only "excludes communications carried on by means of one kind of device: radios." *Brinkley v. Monterey Fin. Servs., LLC*, 340 F. Supp. 3d 1036, 1042 (S.D. Cal. 2018). Because "[a] cellular radio telephone is not a 'radio' under the usual and ordinary meaning of that word … Section 632 unambiguously applies to communications carried on by means of a cellular [] telephone." *Id.* (collecting cases); *see also Nader v. Cap. One Bank (USA), N.A.*, 2013 WL 11070244, at *2 n.4 (C.D. Cal. June 11, 2013) ("[Defendant's] claim that 'radio' includes a cellular phone is meritless."); *Kahn v. Outrigger Enters., Inc.*, 2013 WL 12136379, at *5 (C.D. Cal. Oct. 29, 2013) ("[T]he usual and ordinary meaning of the term 'telephone' in section 632 incorporates cellular phones."); *Flanagan*, 41 P.3d at 578 (applying section 632 to claims involving cellular phone calls).

Genesys' contrary authorities were wrongly decided, go against the great weight of precedent, and the Court should not follow them. *See Pepper v. Charitable Res. Found., Inc.*, 2014 WL 12961327, at *2 (C.D. Cal. Oct. 14, 2014); *McEwan v. OSP Grp., L.P.*, 2015 WL 13374016, at *3 (S.D. Cal. July 2, 2015). The *McEwan* and *Pepper* courts both reasoned that the statute was ambiguous because it excluded "radio[s]," and cell phones use radio technology. On this basis, both courts relied on legislative history (largely predating the invention of cell phones) to find that the statute only applied to landlines. But as *Brinkley* and other courts have observed, there is no ambiguity—a cell phone is a "telephone" under the "usual and ordinary meaning of that word." 340 F. Supp. 3d at 1042; *see also Kahn*, 2013 WL 12136379, at *5. Because a cell phone is a telephone and not a radio, Plaintiffs' cell phone calls support a violation of section 632.

Genesys also challenges Plaintiffs' section 632 claims on bases already covered: that Plaintiffs consented to Genesys's interception; that the information was not intercepted "in transit"; and that Genesys was merely an "extension" of the Hotline. Those arguments all fail for the reasons already stated. *Supra* I.A-C.

**C. Plaintiffs plead a violation of Section 632.7.**

"Under Section 632.7(a), 'Every person who, without the consent of all parties to a communication, intercepts or receives and intentionally records ... a communication transmitted between two cellular radio telephones [or] a cellular radio telephone and a landline telephone ... shall

be punished.'" *Brinkley*, 340 F. Supp. 3d at 1039. Unlike section 632, "[t]his prohibition applies to all communications, not just confidential communications." *Smith v. LoanMe, Inc.*, 483 P.3d 869, 874 (Cal. 2021). Here, Plaintiff C.D. alleges she contacted the Hotline "via a phone call using her cellular phone." *Id.* ¶67. Plaintiff E.F. states she contacted the Hotline "by cell phone." *Id.* ¶74. These allegations plausibly give rise to an inference Plaintiffs communicated with the Hotline via phone call.

Genesys' arguments to the contrary mischaracterize the Complaint. Genesys asserts (at 23) that "Plaintiffs limit[ed] their § 632.7 claim to the call feature offered through the Hotline's website." But the allegation Genesys cites simply states "Genesys … intercepted and recorded Plaintiffs'… calls via cellular phone to the Hotline." *See* Compl. §143. Likewise, Genesys claims (at 24) that "Plaintiffs concede their calls are received by a cloud-based platform … not a phone." But Plaintiffs made no such concession, and in fact described the Hotline's call center as a "*phone* answering tree" and described Genesys' software as "*embedded* in" the "Hotline's … 'phone tree[].'" Compl. ¶¶35, 117 (emphasis added).

Genesys' authorities are inapposite, because none of them involved "phone calls." *See Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 972 (C.D. Cal. 2023) (online chat feature); *Garcia*, 2023 WL 4535531, at *1 (same); *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1040 (S.D. Cal. 2024) (same); *Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 943 (S.D. Cal. 2024) (same); *Augustine v. Lenovo*, 2023 WL 4938050, at *1 (S.D. Cal. Aug. 2, 2023) (web browsing); *Boulton*, 2025 WL 314813, at *2 (plaintiff alleged her text was received by a "social media platform"). Unlike the plaintiffs in these cases, Plaintiffs do not assert their online chats with Genesys support a violation of section 632.7. That is a key distinction, as Genesys' own authorities recognize. *See Byars*, 656 F. Supp. 3d at 1070 (contrasting claims involving online chats from those based on "telephone calls" between "telephonic device[s]").

Nor can Genesys point to any authority holding that a "phone call" to a "phone tree" is not received by a "phone." Genesys' argument "essentially ask[s] the court to hold that [Plaintiffs] needed to have ruled out a remote possibility"—*i.e.*, that the Hotline's "phone tree" was not a phone—in

order to plausibly allege an element. *Id.* This court should decline to do so because Plaintiffs plausibly alleged their "phone calls" to Genesys' "phone tree" involved "phones."[6]

Here again, Genesys also challenges Plaintiffs' §632 claims on bases already covered: that Plaintiffs consented to Genesys's interception; that the information was not intercepted "in transit"; and that Genesys was merely an "extension" of the Hotline. Those arguments all fail for the reasons already stated. *Supra* I.A-C.

**D. Plaintiffs allege their communications were intercepted in California.**

Finally, Genesys claims (at 25) that Plaintiffs do not "allege that the purported interception occurred in California." Not so. Plaintiffs allege that Genesys "tapped Plaintiffs' and Class members' communications with the Hotline … in California," Compl. ¶116. And Plaintiffs further allege they are residents of California, *id.* ¶¶9-11, and that Genesys is headquartered in California, *id.* ¶12. *Cf. Doe*, 2024 WL 1589982, at *13 (focusing on the plaintiffs' residences). Nothing more is required is required to allege CIPA violations at this stage of the litigation. *See Meta Platforms, Inc.*, 690 F. Supp. 3d at 1079; *Hammerling v. Google LLC*, 2022 WL 17365255, at *11 (N.D. Cal. Dec. 1, 2022), *aff'd*, 2024 WL 937247 (9th Cir. Mar. 5, 2024). Genesys appears to ask (at 25) the Court to decide now whether CIPA is "extra-territorial" because "Plaintiffs do not limit their CIPA claims to alleged communications in the state." But given they have alleged interception in California, there is no need for the Court to pass on that question. The fact that "classes" may not be "limited to residents' communications occurring in the State" is not at issue yet. In any event, CIPA section 631, for example, requires only that the communication "be[] sent from, or received at any place within [California]." Cal. Penal Code §631; *see also Kearney*, 137 P.3d at 936 (holding that CIPA applied

---

[6] In addition, courts in this district have also recognized 632.7 would apply to claims involving phone systems that integrate or use the internet, like "Voice Over Internet Protocol (VoIP)" phone systems, reasoning that "VoIP telephone calls are similar to traditional telephony in almost every meaningful respect as it relates to an individual's right to privacy." *Byars*, 656 F. Supp. 3d at 1070; *see also McCabe v. Six Continents Hotels, Inc.*, 2014 WL 465750, at *4 (N.D. Cal. Feb. 3, 2014); *Roberts v. Wyndham Int'l, Inc.*, 2012 WL 6001459, at *4 (N.D. Cal. Nov. 30, 2012). So, even assuming for the sake of argument the Hotline's phone tree involves some component of internet technology, 632.7 would still apply to the extent the Hotline is using some kind of "telephone."

to out-of-state calls "made to or received from California"); *LoanMe*, 483 P.3d at 880 ("[S]ection 632 applied prospectively to phone calls between the Georgia branch of a national brokerage firm and the firm's California clients.").

## CONCLUSION

Genesys read, recorded, and used the information it derived from Plaintiffs' and Class members' communications with the Hotline and other businesses. It never obtained consent for any of these activities. This Court should reject Defendant's attempt to avoid liability and deny the Motion to Dismiss.

Dated: August 7, 2025

By: /s/ *Bryan Weir*
Bryan Weir (Cal. Bar No. 310964)
Brandon Haase (*pro hac vice*)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA, 22209
T: (703) 243-9423
F: (703) 243-8696
bryan@consovoymccarthy.com

Bradley Benbrook (Cal. Bar No. 177786)
Steve Duvernay (Cal. Bar No. 250957)
BENBROOK LAW GROUP, PC
701 University Avenue, Ste. 106
Sacramento, CA 95825
T: (916) 447-4900
F: (916) 447-4904
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

*Attorney for Plaintiffs and the Proposed Class*