TIFFANY CHEUNG (CA SBN 211497)
TCheung@mofo.com
CAMILLE FRAMROZE (CA SBN 332075)
CFramroze@mofo.com
EMILY TSURUE YAMASHIRO MCKENNA (CA SBN 357101)
EMcKenna@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105, USA
Telephone: 415.268.7000
Facsimile: 415.268.7522

ELISABETH HUTCHINSON [*Pro Hac Vice*]
EHutchinson@mofo.com
MORRISON & FOERSTER LLP
4200 Republic Plaza, 370 Seventeenth Street
Denver, Colorado 80202-5638
Telephone: 303.592.1500
Facsimile: 303.592.1510

Attorneys for Defendant
GENESYS CLOUD SERVICES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PLAINTIFF A.B., PLAINTIFF C.D., AND PLAINTIFF E.F., INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiffs,

v.

GENESYS CLOUD SERVICES, INC.,

Defendant.

Case No. 3:25-cv-03276-EMC

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

CLASS ACTION

Judge: Hon. Edward M. Chen
Date: October 16, 2025
Time: 1:30 p.m.
Courtroom: 5, 17th Floor

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 3

A. The Hotline's Consent Defeats Plaintiffs' ECPA Claim .......... 3

B. Plaintiffs Were on Notice that the Hotline Utilizes Third-Party Software .......... 5

C. Plaintiffs' ECPA and CIPA §§ 631 and 632 Claims Fail Because Genesys Is Not a Third-Party Eavesdropper .......... 6

1. ECPA and CIPA § 631 .......... 6

2. CIPA § 632 .......... 8

D. Plaintiffs Do Not Allege Any "In Transit" Interceptions .......... 9

E. Plaintiffs Fail to State a Claim Under CIPA § 632 .......... 11

1. Plaintiffs' Communications are not Covered Under CIPA § 632 .......... 12

2. CIPA § 632 Does Not Protect Communications Made Via Cell Phone .......... 14

F. Plaintiffs' § 632.7 Claim Fails Because They do not Allege that Genesys Intercepted and Recorded Communications between Two Phones .......... 15

G. Plaintiffs Do Not Allege Any "Interceptions" in California .......... 16

III. CONCLUSION .......... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Community.com, Inc.*,
No. 2:21-cv-02416-SB-JPR, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) .......................... 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................................................................................... 8, 11

*Brackett v. Am. Airlines Grp. Inc.*,
No. 21-cv-02681-HSG, 2022 WL 282529 (N.D. Cal. Jan. 31, 2022) .................................. 17

*Boulton v. Community.com, Inc.*,
No. 23-3145, 2025 WL 314813 (9th Cir. Jan. 28, 2025) ......................................... 11, 12, 14

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ............................................................................. 4

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ............................................................................... 13

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) .............................................................................. 11

*Crowley v. CyberSource Corp.*,
166 F. Supp. 2d 1263 (N.D. Cal. 2001) ............................................................................ 11

*Doe I v. Wal-Mart Stores, Inc.*,
572 F.3d 677 (9th Cir. 2009)............................................................................................... 8

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-cv-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024).......................... 3, 7, 8

*Ewing v. Empire Cap. Funding Grp., Inc.*,
No. 17cv2507-LAB (MDD), 2019 WL 157660 (S.D. Cal. Jan. 10, 2019)............................ 15

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ......................................................................................... 12, 14, 15

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ................................................................................ 7

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023) ................................................................................ 4

*Hammerling v. Google LLC*,
No. No. 21-cv-09004-CRB, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ......................... 16

*Hataishi v. First American Home Buyers Protection Corp.*,
223 Cal. App. 4th 1454 (2014)........................................................................................ 14, 15

*Heiting v. Taro Pharms. USA, Inc.*,
No. 2:23- cv-08002-SPG-E, 2024 WL 3738055 (C.D. Cal. July 31, 2024 ........................... 10

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) ................................................................................. 10

*Konop v. Hawaiian Airlines*,
302 F.3d 868 (9th Cir. 2002)................................................................................... 9, 10, 11

*Licea v. Vitacost.com, Inc.*,
683 F. Supp. 1118 (S.D. Cal. 2023) ........................................................................................ 7

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) .................................................................................... 9

*Martin v. Sephora USA, Inc.*,
No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636 (E.D. Cal. Mar. 30, 2023)........................ 9

*McEwan v. OSP Grp., L.P.*,
No. 14-cv-2823-BEN (WVG), 2015 WL 13374016 (S.D. Cal. July 2, 2015)....................... 14

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ............................................................................... 3, 5

*M.G. v. Therapymatch, Inc.*, No. 23-cv-04422-AMO, 2024 WL 4219992 (N.D.
Cal. Sept. 16, 2024) ............................................................................................................. 13

*Moledina v. Marriott Int'l, Inc.*,
635 F. Supp. 3d 941 (C.D. Cal. 2022)..................................................................................... 6

*Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
No. 12-cv-01685-BAS(JLB), 2016 WL 4886933 (S.D. Cal. Sept. 15, 2016) .......................... 5

*People v. Nakai*,
183 Cal. App. 4th 499 (2010)................................................................................................ 12

*Pepper v. Charitable Res. Found., Inc.*,
No. 2:14-cv-02573-SVW-FFM, 2014 WL 12961327 (C.D. Cal. Oct. 14, 2014)............. 14, 15

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (N.D. Cal. 2024) .................................................................................... 4

*Ramos v. Gap, Inc.*,
No. 23-cv-04715-HSG, 2024 WL 4351868 (N.D. Cal. Sept. 30, 2024)............................. 1, 7

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ............................................................................................................. 6

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ..... 4

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ..... 11

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) ..... 6, 7

*R.C. v. Sussex Publishers*, No. 24-cv-02609-JSC, 2025 WL 948060 (N.D. Cal. Mar. 28, 2025) ..... 13

*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-cv-00667-JST, 2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ..... 5

*Sussman v. ABC, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ..... 4

*Torres v. Nutrisystem, Inc.*,
289 F.R.D. 587 (C.D. Cal. 2013) ..... 6

*Turner v. Nuance Commc'ns, Inc.*,
735 F. Supp. 3d 1169 (N.D. Cal. 2024) ..... 8

*Valenzuela v. Keurig Green Mt., Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ..... 11

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. Aug. 14, 2023) ..... 15

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ..... 3

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) ..... 13

*Zarif v. Hwareh.com, Inc.*,
No. 23-cv-0565-BAS-DEB, 2025 WL 486317 (S.D. Cal. Feb. 13, 2025) ..... 16

**Statutes**

Cal. Pen. Code § 632(a), (c) ..... 12

CIPA
§ 631 ..... *passim*
§ 632 ..... *passim*
§ 632.5 ..... 14, 15
§ 632.6 ..... 14, 15
§ 632.7 ..... 3, 14, 15, 16

## I. INTRODUCTION

Plaintiffs' opposition reflects a fundamental misunderstanding of the software-as-a-service (SaaS) industry in a misguided attempt to shoehorn modern technology into inapplicable mid-century wiretap statutes. Many courts in this Circuit have recognized that wiretap statutes are not applicable to third-party software providers and therefore dismiss such claims on the pleadings. Just last month, in *Ramos v. Gap, Inc.*, another court in this District granted the defendants' motion to dismiss and held—as other courts have concluded—that internet-based communications fall outside CIPA § 631(a) and third-party service providers are parties to the communication. Here, the Court should reach the same conclusion, as Plaintiffs' repeated and conclusory allegations do not satisfy the required pleading standard—indeed, they are unsupported by factual allegations and contradicted by the very websites on which their Complaint relies. Simply put, Genesys did not capture or record any of the Hotline's communications while users interacted with the Hotline.

Importantly, Plaintiffs fail to plead: (1) facts to overcome the Hotline's consent; (2) that Genesys is not an extension of the Hotline; (3) that Genesys intercepted their communications in transit; (4) that their communications were not Internet-based and recorded; (5) that either Plaintiffs or the Hotline used landline services; (6) that phones were used on both sides of their communications; and (7) that any interception occurred in California. Plaintiffs thus seek to avoid dismissal by incorrectly arguing that the Court should ignore the complete versions of materials that Plaintiffs themselves cite in the Complaint or have been routinely judicially noticed by California federal courts.[1] Finally, Plaintiffs' attempt to plead the crime-tort exception fails because Plaintiffs do not plead any facts showing independent tortious conduct. All of Plaintiffs' claims under ECPA and CIPA should be dismissed.

**No ECPA claim.** Plaintiffs concede that the Hotline was a party to their communications (*see* ECF No. 39 ("Opp.") at 8), and that the consent of any party to the communication is a

[1] As explained in the concurrently filed Reply in Support of Request for Judicial Notice (ECF No. 44), the Court may properly consider the Exhibits because they are incorporated by reference into Plaintiffs' Complaint or are otherwise subject to judicial notice.

complete defense to an ECPA claim (*see id*. at 5). The Hotline's choice to use Genesys' software to facilitate its communications makes Genesys a consensual party to every Hotline communication. Based on Plaintiffs' admission, the Hotline's consent to any purported interception defeats Plaintiffs' ECPA claim as a matter of law. Plaintiffs' attempt to plead the crime-tort exception fails on its face because Plaintiffs have not pleaded any independent crime or tort in which Genesys could have engaged in furtherance of any intentional act, nor can Plaintiffs point to any cases that have held that the act of interception itself, without more, can be regarded as a criminal or tortious act.

**No "Eavesdropping" Claims under CIPA or ECPA.** Plaintiffs' attempt to paint Genesys as an "eavesdropper" with nothing more than the fact that it provides critical infrastructure to the Hotline also fails. Genesys' software is merely a tool that the Hotline uses to record its own communications. Because Genesys, as the SaaS provider, acts only at the Hotline's behest, Genesys is an extension of the Hotline. Genesys' provision of ***software*** to enable the Hotline to communicate with individuals does not show that Genesys as a ***company*** accessed or used the Hotline's data for its own purposes.

**No "In-Transit" Interception under CIPA § 631 or ECPA.** Plaintiffs fail to adequately plead that any of their communications were intercepted in transit. Nor could they. Any purported access to Plaintiffs' communications by Genesys could have occurred only after those communications arrived at their intended destination—on the software platform that hosts the Hotline's communications with victims and survivors of domestic abuse. Plaintiffs' conclusory allegations fail to plead an in-transit interception.

**No CIPA § 632 Claim.** Plaintiffs' communications are inherently recorded; to assume otherwise is unreasonable—again, two of the technologies are ***written*** communications and the third concerns ***automated prompts*** to route a phone call to the proper representative. These are the exact types of communications that are always "recorded" and therefore fall outside the scope of the statute, as the Ninth Circuit has recognized. Plaintiffs' communications therefore are not and could not be "confidential" as defined by the statute. Moreover, CIPA § 632's legislative history shows that its protections cover only landline telephones; because Plaintiffs do not allege

that they used landline phones, Plaintiffs' communications are not covered by the statute.

**No CIPA § 632.7 Claim.** Plaintiffs' allegations that their communications "involved phones" are not enough to give rise to liability under § 632.7. Because, as Plaintiffs allege, the Hotline's calls are conducted through an Internet-based software, Plaintiffs cannot plead phones were used on ***both sides*** of their communications, and their § 632.7 claim must be dismissed.

**No Extraterritorial Application of CIPA.** Finally, Plaintiffs cannot unilaterally extend a California statute outside the state's borders. Plaintiffs fail to plead that their communications were ***intercepted*** in California. Because they cannot plead facts to overcome the strong presumption against the extraterritorial application of CIPA, Plaintiffs C.D.'s and E.F.'s claims, along with the putative California and Hotline classes' claims, must be dismissed.

The Complaint should be dismissed with prejudice in its entirety.

## II. ARGUMENT

### A. The Hotline's Consent Defeats Plaintiffs' ECPA Claim

As Plaintiffs acknowledge, the consent of either party to a communication is a complete defense to an ECPA claim. (*See* Opp. at 5 (citing *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 796 (N.D. Cal. 2022)).) *See also In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014) ("Since [ECPA] concerns the *unauthorized* interception of electronic communication, the consent of one party is a complete defense to a[n ECPA] claim."). Here, the Hotline affirmatively chose to use Genesys' software to facilitate its communications, making Genesys a consensual party to every communication. The Hotline's consent to any purported interception therefore compels dismissal of Plaintiffs' ECPA claim as a matter of law. Plaintiffs' only retort is the crime-tort exception, but Plaintiffs' argument fails on its face.

Plaintiffs' attempt to plead the crime-tort exception fails because the act of recording cannot ***itself*** be the "criminal or tortious act" that precludes application of the party-to-the-communication defense. *See, e.g.*, *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-cv-02865-EMC, 2024 WL 1589982, at *9 (N.D. Cal. Apr. 11, 2024) ("Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere . . . . [T]he 'criminal or tortious purpose must be separate and independent from the act of the recording [*i.e.*, the act of

interception].'") (citations omitted); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021) ("Alleged interceptions fall within the tort or crime exception only where 'the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously,' . . . [and] cannot apply where the interceptor's 'purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money.'") (citations omitted).

Plaintiffs argue the crime-tort exception precludes the application of the party-to-the-communication defense because Plaintiffs' communications were "intercepted for the purpose of committing [a] criminal or tortious act" in violation of California law. (*See* Opp. at 5.) The crime-tort exception, however, requires a specific showing that defendant intended to use recordings to commit a ***separate*** crime or tort; it is not enough to allege the act of interception itself is criminal or tortious. *See Sussman v. ABC, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (affirming summary judgment for defendants where plaintiffs did not argue recording "was made for the purpose of committing some other subsequent crime or tort"); *see also R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (N.D. Cal. 2024) ("To make use of the criminal/tortious intent exception, a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent of* the intentional act of recording or interception itself.").

Indeed, all of the cases Plaintiffs cite involved intent to commit a ***separate*** crime or tort that does not exist here. (Opp. at 5.) *See* Amended Complaint, *Marden v. LMND Med. Grp., Inc.*, No. 23-CV-03288-RFL (N.D. Cal. Dec. 8, 2023) ¶¶ 36-37, 150-66, ECF No. 34 (complaint alleged violations of the Health Insurance Portability and Accountability Act ("HIPAA")); *R.C.*, 733 F. Supp. 3d at 901-02 (finding exception applied where "Plaintiffs h[ad] stated a claim for invasion of privacy"); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (finding consent was not a defense where "Plaintiffs [had] adequately alleged that Google's association of their data with preexisting user profiles violated state law, including [California Computer Data Access and Fraud Act], intrusion upon seclusion, and invasion of privacy"); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 719-20 (D. Minn. 2023) (finding that plaintiffs

"list[ed] the various laws they allege[d]" the defendant violated, including "HIPAA, Minnesota's Unauthorized Computer Access statute, Minnesota's Patient's Bill of Rights, [the Minnesota Human Rights Act], Minnesota Unfair Deceptive Trade Practices Act, and Invasion of Privacy").

Here, however, Plaintiffs argue only that the purported interception itself is criminal or tortious. They do not, and indeed cannot, allege that Genesys committed a separate crime or tort. Genesys was merely assisting the Hotline to provide victims with the resources they need. Plaintiffs thus fail to adequately plead the crime-tort exception and their ECPA claim fails. *See In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 797 ("Multiple courts in this district have found that the crime-tort exception to [ECPA] is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously.").

**B. Plaintiffs Were on Notice that the Hotline Utilizes Third-Party Software**

Plaintiffs acknowledge that consent can be implied from the overall "surrounding circumstances" (Opp. at 7), and that the Hotline's partnership with Genesys was publicized by well-read sources such as Forbes (*id*. at 6). That the Hotline uses third-party software to facilitate its communications is not only well-published, but also obvious based on the nature of the communications: web chats, calls to a "phone tree," and text messages.

Plaintiffs allege their calls were placed to a "call center" through a "phone answering tree." (*Id*. at 20.) A "'reasonable user' of a service" such as the Hotline's would understand that calls placed through a call center are typically routed through a software program and that the Hotline did not itself develop the communications technology it is using. Callers are therefore consenting to the use of a third-party software when they use the Hotline's services. (*See id*. at 7 (citing *St. Aubin v. Carbon Health Techs., Inc*., No. 24-cv-00667-JST, 2024 WL 4369675, at *8 (N.D. Cal. Oct. 1, 2024)).) This, in combination with the Hotline's public and repeated announcements about its partnership with Genesys (*see* ECF No. 23 ("Mot.") at 4), put Plaintiffs on adequate notice that the Hotline uses Genesys' software to facilitate its communications. Plaintiffs thus implicitly consented to any purported interception based on the overall "surrounding circumstances." *Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc*., No. 12-cv-01685-BAS(JLB), 2016 WL 4886933, at *3 (S.D. Cal. Sept. 15, 2016) (citations

omitted); *see also Moledina v. Marriott Int'l, Inc.*, 635 F. Supp. 3d 941, 953 (C.D. Cal. 2022) (finding the "surrounding circumstances" indicated Plaintiff implicitly consented to being recorded); *Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587, 594 (C.D. Cal. 2013) ("[C]allers who never heard [a] [d]isclosure, but actually ***expected*** the calls to be recorded, may have implicitly consented to the recording by the very act of making the call.") (emphasis added).

In arguing otherwise, Plaintiffs seek to avoid the clear implications of their consent by arguing the Court may not take judicial notice of anything that contradicts the allegations in the Complaint. (*See* Opp. at 6.) While well-pled allegations in the Complaint must be taken as true, Plaintiffs are not entitled to cherry-pick only those portions of the Hotline's and Genesys' websites favorable to them and hope that this Court will ignore the rest. Plaintiffs' tactic is revealed by their opposition to judicial notice of all of Genesys' Exhibits except Genesys' privacy policies, the only Exhibit a portion of which Plaintiffs contort to make it seem favorable to them. (*See* ECF No. 40 ("RJN Opp.") at 3 n.1.) When the Court properly considers the ***entirety*** of Plaintiffs' Complaint, including documents incorporated by reference or otherwise subject to judicial notice, Plaintiffs' implied consent to any purported interception justifies dismissal of their ECPA and CIPA § 631 claims.

### C. Plaintiffs' ECPA and CIPA §§ 631 and 632 Claims Fail Because Genesys Is Not a Third-Party Eavesdropper

Plaintiffs' ECPA and CIPA §§ 631 and 632 claims independently fail because Genesys, as an extension of the Hotline, cannot be a third-party "eavesdropper" on their communications.

#### 1. ECPA and CIPA § 631

As many federal courts have held, where software like Genesys' is a tool used by the Hotline (a party to the communication), the party exception applies because the third party is merely acting as an extension of the defendant. While a third party listening at the door to hear a conversation may be an impermissible eavesdropper, *Ribas v. Clark*, 38 Cal. 3d 355, 361-63 (1985), a party to a conversation *is* allowed to record a conversation without the other party's knowledge if it uses a tool to do so, like a tape recorder. *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 898-99 (1975). And where, as here, a party to a communication uses third-party software to

record its electronic conversation, *Rogers'* reasoning bars Plaintiffs' claim. *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021); *see also Ramos v. Gap, Inc.*, No. 23-cv-04715-HSG, 2024 WL 4351868, at *2 (N.D. Cal. Sept. 30, 2024) (dismissing § 631 claim based on Gap's use of tracking software on its website).

Plaintiffs argue that *Graham* and its progeny are based on a mistaken reading of § 631. (Opp. at 12.) But *Graham's* reasoning has been adopted by numerous federal courts to dismiss nearly identical wiretap claims, where, like Genesys here, the alleged third-party software providers acted only in service of website owners. *See, e.g.*, *Licea v. Vitacost.com, Inc.*, 683 F. Supp. 1118, 1123 (S.D. Cal. 2023) ("This Court agrees with those decisions holding that a website owner that engages a vendor to record website-based communications *for the website owner's own purposes* is not thereby aiding and abetting eavesdropping by a third party in violation of Section 631(a).") (collecting cases) (emphasis added). Plaintiffs ignore that ***this Court*** has given credence to *Graham's* reasoning in deciding similar wiretap claims. In *Kaiser*, relying on *Graham's* reasoning, this Court confirmed that a third-party software provider is not an eavesdropper where the software provider merely acts as a tape recorder and the act of recording does not pose a "materially enhanced risk to individual privacy." 2024 WL 1589982, at *17-18.

Faced with Genesys' clear service-provider role, Plaintiffs allege that Genesys is "capable of" using the Hotline's data for its own purposes and therefore does not act solely at the Hotline's behest. (Opp. at 14.) Technical capability cannot be the standard by which conclusory claims are able to survive the pleading stage; to hold otherwise would allow any conclusory claim to survive against any SaaS provider and force that provider to bear the burden of discovery on a nationwide basis to defend itself in meritless litigation.

This is especially true in this case. To support their argument, Plaintiffs rely on cherry-picked quotes from Genesys' Cloud Privacy Policy, which do not speak to the use of ***the Hotline's*** data, let alone the contents of communications with the Hotline.[2] Plaintiffs acknowledge this. But they claim they have raised a sufficient "inference" of actual use based on

---

[2] Plaintiffs do not oppose Genesys' Request for Judicial Notice with respect to the Genesys Cloud Privacy Policy. (RJN Opp. at 3 n.1.)

alleged technical capability. (*See* Opp. at 13.) Again, that cannot be the standard. Plaintiffs are not entitled to assert any attenuated, speculative inference with the hope that the Court will accept that unwarranted inference at the pleading stage. (*See id*. at 14); *see Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) ("We take a plaintiff's allegations in the complaint as true, but we are 'not required to indulge unwarranted inferences.'") (citation omitted).

Moreover, Plaintiffs' argument that Genesys' alleged ability to use customer data "materially enhance[s] risk to [] individual[] privacy" is contradicted by the policy on which they base their arguments. (*See* Opp. at 12.) The Cloud Privacy Policy makes clear that, to the extent data may identify customers, such data is anonymized and maintained through a privacy program that respects and protects customer data. (*See* ECF No. 23-3 ("Cheung Decl.") Ex. B.) Accordingly, there is no "materially enhanced risk to [any] individual's privacy" to suggest any reason to allow these meritless claims to proceed. (*See* Opp. at 12 (quoting *Kaiser*, 2024 WL 1589982, at *17).)

Without supporting factual allegations, Plaintiffs ask this Court to draw unwarranted inferences about the hypothetical use of their data based on cherry-picked quotes from Genesys' Cloud Privacy Policy. (*See, e.g.*, Opp. at 14.) But when read in context, the Cloud Privacy Policy gives no indication that Genesys ever used the Hotline's data, let alone in a way that could identify the end user. Plaintiffs' conclusory allegations that Genesys is capable of using (*id*. at 12) and therefore does use (*id*. at 13-14), the Hotline's data for its own purposes are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). As a software provider merely facilitating the Hotline's communications, Genesys is an extension of the Hotline and cannot be liable under ECPA and CIPA § 631.

**2. CIPA § 632**

Because a party to a communication "cannot 'eavesdrop' on [its] own conversation[,]" for the same reason their ECPA and CIPA § 631 claims fail, Plaintiffs' claims under the "eavesdropping" prong of § 632 must be dismissed. *See Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1182-83 (N.D. Cal. 2024) (applying § 631 party-to-the-communication analysis to a § 632 claim).

### D. Plaintiffs Do Not Allege Any "In Transit" Interceptions

Plaintiffs first argue that Genesys does not dispute that Genesys read or learned the "content[s]" of Plaintiffs' communications. (Opp. at 11.) That is incorrect. As Genesys made clear in its motion to dismiss, ***Genesys does not access Plaintiffs' communications***. (*See, e.g.*, Mot. at 2.) Next, in arguing that they have adequately pled an "in transit" interception, Plaintiffs rely solely on conclusory allegations. (Opp. at 7-10.) Courts interpret § 631(a) to "distinguish messages that have already arrived or are immediately being sent, as opposed to those 'in transit.'" *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 689 (N.D. Cal. 2021). Because of the very nature by which Plaintiffs' written electronic communications function, their communications could only be accessed *after* they arrived at their destination server. Genesys therefore could not have accessed Plaintiffs' communications while they were "in transit." *See Martin v. Sephora USA, Inc.*, No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636, at *11 (E.D. Cal. Mar. 30, 2023) (dismissing wiretap claims where plaintiff alleged the defendant "embedded code in its chat feature [on its website] that creates transcripts of the chat, i.e., *effectively completing the communication*; and the [alleged eavesdropper] stores these transcripts") (emphasis added).

Plaintiffs seek to change the legal standard, asserting that the relevant inquiry is whether their communications were capable of being accessed before they reached the Hotline, their intended recipient. (*See* Opp. at 8.) But Plaintiffs' theory that Genesys "intercepted" their communications because Genesys purportedly had access to their *stored* communications was expressly rejected by the Ninth Circuit in *Konop v. Hawaiian Airlines*, 302 F.3d 868 (9th Cir. 2002).

In *Konop*, the Ninth Circuit held there was no interception when defendant acquired the content from electronic storage. *Id.* at 878. As the court explained, there can be no "interception" if the communications are retrieved from the location where they are stored, even if the communications are "not yet retrieved by the intended recipients." *Id.* at 876. "Email and other electronic communications are stored at various junctures in various computers between the time the sender types the message and the recipient reads it." *Id.* at 878 n.6. But the Ninth Circuit held that Congress did not intend to include this "en route" storage of electronic communications

within the definition of "in transit." *Id.* In crafting this definition, "Congress understood that electronic storage was an inherent part of electronic communication[,]" but it nonetheless "chose to afford stored electronic communications less protection than other forms of communication." *Id.* As courts have recognized, this narrower definition of "intercept" means that electronic communications such as Plaintiffs' are not protected under ECPA. *See Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1037 (S.D. Cal. 2024) (dismissing CIPA claim and noting that "[t]he *Konop* Court acknowledged that this definition of interception considerably curtailed the availability of certain claims regarding email and other text-based electronic communications").

Plaintiffs next argue that their communications were intercepted "in transit" because Genesys' software enables "real-time monitoring." (Opp. at 7; ECF No. 1 ("Compl.") ¶¶ 49-50.) Plaintiffs again misconstrue and cherry-pick quotes from Genesys' website. When read in context, the selected quote makes clear that any "real-time monitoring" is conducted by Genesys' *customers* and not by Genesys itself. (Declaration of Tiffany Cheung in Support of Reply in Support of Motion to Dismiss, Ex. M, Genesys, *Quality assurance and monitoring*, https://www.genesys.com/capabilities/quality-assurance-and-monitoring/ (last visited August 28, 2025) (explaining that Genesys' software allows managers to monitor agents' conversations in real-time).)[3] Moreover, Plaintiffs' lone case cite finding an "in transit" interception of electronic communications is an outlier. (*See* Opp. at 9 (citing *Heiting v. Taro Pharms. USA, Inc.*, No. 2:23-cv-08002-SPG-E, 2024 WL 3738055, at *3 (C.D. Cal. July 31, 2024)).) The majority of courts to decide claims similar to those at issue here hold that once a communication has arrived at the destination platform, the communication cannot have been intercepted "in transit." *See Adler v. Community.com, Inc.*, No. 2:21-cv-02416-SB-JPR, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021) (no interception of text messages where "the device paired with that number 'received the information, effectively completing the communication'") (citation omitted), *aff'd sub nom.*

---

[3] Plaintiffs extensively refer to Genesys' page to allege that Genesys is capable of "real-time monitoring." (*See, e.g.*, Compl. ¶¶ 50, 135.) For the reasons detailed in Genesys' Request for Judicial Notice (ECF No. 24), Reply in Support of Request for Judicial Notice (ECF No. 44), and Supplemental Request for Judicial Notice (ECF No. 45), the Court may properly consider this webpage as incorporated by reference into Plaintiffs' Complaint.

*Boulton v. Community.com, Inc.*, No. 23-3145, 2025 WL 314813, at *1 (9th Cir. Jan. 28, 2025); *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001) (no interception where communication could only have been accessed from the "server on which the e-mail was received"); *Konop*, 302 F.3d at 876 (no interception where websites "transmit electronic documents to servers, where the documents are stored"); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1077 (N.D. Cal. 2015) (once a communication "has been received by the destination server, a communication becomes 'stored' and contemporaneous interception is no longer possible"). Plaintiffs argue that the timing of any purported "interception" is not appropriate for consideration at the motion to dismiss stage. (*See* Opp. at 16-23.) But where the Ninth Circuit has held that, as a matter of law, there can be no "interception" of *stored* electronic communications, *Konop*, 302 F.3d at 878, Plaintiffs' "interception" claims should be dismissed.

Finally, Plaintiffs' attempt to distinguish *Boulton* is ineffective and misguided. (*See* Opp. at 10.) Plaintiffs argue *Boulton's* reasoning does not apply because, unlike the plaintiff in *Boulton*, Genesys engaged in "real-time monitoring." (*See id*. (citing *Boulton*, 2025 WL 314813, at *1).) But Plaintiffs' "real-time monitoring" allegations merely parrot the statute's requirements. Plaintiffs thus invite this Court to credit implausible, conclusory allegations that contradict the reality that a ***written*** electronic communication can only be accessed after it is delivered to its destination. *Iqbal*, 556 U.S. at 663; *see also Valenzuela v. Keurig Green Mt., Inc.*, 674 F. Supp. 3d 751, 754, 758 (N.D. Cal. 2023) (Plaintiff's allegations that embedded code secretly intercepted communications did "little more than restate the pleading requirement of real time interception"). Without pleading specific facts to support their conclusory allegtions that their communications were intercepted "in transit," Plaintiffs' claims cannot survive a motion to dismiss. *See Rodriguez v. Google LLC* ("*Rodriguez II*"), No. 20-cv-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit.").

### E. Plaintiffs Fail to State a Claim Under CIPA § 632

Plaintiffs fail to state a claim under CIPA § 632(a) because: (1) their communications

were not "confidential" within the meaning of CIPA § 632; (2) CIPA § 632 covers only landline telephone communications; and (3) Plaintiffs fail to plead their communications occurred between two phones.

**1. Plaintiffs' Communications are not Covered Under CIPA § 632**

Section 632 protects only "confidential" communications. Cal. Pen. Code § 632(a), (c). Regardless of Plaintiffs' *subjective* intent about the confidentiality of their communications (*see* Opp. at 17-18), the communications are not "confidential" as defined by the statute. To be "confidential" under § 632, the parties must have an "objectively reasonable expectation that the conversation is not being overheard **or recorded**." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 777 (2002) (emphasis added). Plaintiffs acknowledge the possibility that the Hotline may have recorded their communications, defeating any argument as to an objectively reasonable expectation of privacy in those communications. (*See* Opp. at 17.)[4]

Moreover, by their very nature, Plaintiffs' communications were inherently recorded upon receipt of the communication. *See, e.g.*, *People v. Nakai*, 183 Cal. App. 4th 499, 515 (2010) (explaining, in the evidence context, that "no person with knowledge or awareness of the technology as it pertains to [the] use of email and text messaging . . . could have any possible expectation of privacy"). Plaintiffs' communications, whether through text message, online chat, or in response to automated prompts, were not "confidential" within the meaning of § 632.

Because text messages are inherently "a recorded medium," Plaintiffs could have no reasonable expectation of privacy in their text exchanges with the Hotline. *See Boulton*, 2025 WL 314813, at *2 ("[B]ecause texts are a recorded medium, and because Boulton admitted . . . her text . . . would by nature be recorded, her text was not a 'confidential communication' protected by § 632[.]"). Nor could Plaintiffs reasonably expect their online chats were not

[4] Plaintiffs allege that even if they suspected the Hotline was recording their communications, they had no reason to think Genesys was also recording their conversations. (*See* Opp. at 17.) This allegation is baseless. As explained in Genesys' motion to dismiss, Genesys does not record customer conversations; *customers* do. (*See* MTD at 4 n.4 (citing Cheung Decl. Ex. F, Genesys Cloud Resource Center, *About call recording*, https://help.mypurecloud.com/articles/about-call-recording/ (last visited July 3, 2025), ECF No. 23-7.)

recorded; because Internet-based communications can be quickly and easily disseminated, numerous California courts have held that Internet-based communications are not "confidential" within the meaning of § 632. *See, e.g.*, *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) ("California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of section 632, because such communications can easily be shared by, for instance, the recipient(s) of the communications.").

Plaintiffs' reliance on *M.G. v. Therapymatch, Inc.* and *R.C. v. Sussex Publishers* is unavailing. (*See* Opp. at 17-18.) Unlike in those cases, where plaintiffs believed they were communicating directly with providers, here, the Hotline's chat function explicitly discloses that the end user is communicating with a "Chat bot." (*Compare* Mot. Section II (screenshot of chat box)) *with Therapymatch, Inc.*, No. 23-cv-04422-AMO, 2024 WL 4219992, at *1 (N.D. Cal. Sept. 16, 2024); *Sussex Publishers*, No. 24-cv-02609-JSC, 2025 WL 948060, at *1 (N.D. Cal. Mar. 28, 2025). Where, like here, Plaintiffs are informed they are communicating with a "chat bot," Plaintiffs cannot reasonably expect those communications are not recorded. Plaintiffs' reliance on *Yockey* is also misplaced; the technology at issue there involved a so-called "Sneak Peek" feature, which allegedly allows agents to view the contents of a consumer's message as the consumer was typing. *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 948 (N.D. Cal. 2024). Here, there is no such allegation of contemporaneous access to Plaintiffs' written communications as they were typing. *See id.*

Finally, Plaintiffs could not have a reasonable expectation of privacy in their communications in response to any automated prompts in a phone recording. The purpose of the Hotline's automated prompts is to capture information so that calls can be appropriately routed. The Hotline's phone tree could not function unless users' responses were recorded; to assume otherwise is unreasonable. (*See, e.g.*, Compl. ¶¶ 67, 117.)[5] Because of the nature of electronic

---

[5] Plaintiffs attempt to avoid dismissal of their claims related to the Hotline's AI chatbot, "Ruth," by arguing the Court may not take notice of the Hotline's website. (*See* Opp. at 17 n.5.) Because the Court may properly consider the Hotline's website (*see* ECF No. 24), Plaintiffs' claims related to the Hotline's AI chat function must be dismissed. (*See* MTD Section II (screenshot of "Ruth" chat box).)

communications, Plaintiffs' communications were inherently recorded upon receipt. There can be no objectively reasonable expectation of privacy in Plaintiffs' (1) text messages, an inherently "recorded medium," *see Boulton*, 2025 WL 314813, at *2; (2) internet messages with a disclosed "Chat bot" (*see* Mot. at 6 (screenshot of chat box)); or (3) communications made in response to "automated prompts" (*see* Compl. ¶ 69).

Because ***none*** of Plaintiffs' communications at issue were "confidential" within the meaning of the statute, their CIPA § 632 claim fails.

**2. CIPA § 632 Does Not Protect Communications Made Via Cell Phone**

Section 632 covers only oral, in-person communications, or those carried out over a "telephone." The California Legislature amended §§ 632.5 and 632.6 to explicitly cover cell phone communications; at the same time, the Legislature chose ***not*** to amend § 632. For this reason, California courts have concluded that the Legislature did not intend § 632 to cover cell phone communications. *See, e.g.*, *McEwan v. OSP Grp., L.P.*, No. 14-cv-2823-BEN (WVG), 2015 WL 13374016, at *4 (S.D. Cal. July 2, 2015). Plaintiffs argue these cases were wrongly decided and that CIPA's legislative history predates the invention of cell phones, thereby implying the Legislature did not contemplate developing cell phone technology. (Opp. at 19.) But the amendments to CIPA in 1992, explicitly covering cell phone communications, clearly post-date the invention of cell phones. Contrary to Plaintiffs' assertions, the California Legislature *did* contemplate the "privacy issues raised by the increased use of cellular and cordless telephones." *Flanagan*, 27 Cal. 4th at 775. It simply chose not to expand § 632 to cover cell phones and to instead provide protection for cell phone communications elsewhere under CIPA, such as in §§ 632.5, 632.6, and 632.7, among other provisions. *See McEwan*, 2015 WL 13374016, at *4 ("The Legislature had opportunity to amend section 632 at the time it added sections 632.5, 632.6, and 632.7, but it did not.").

California state appellate court precedent also supports this interpretation of § 632. *See Pepper v. Charitable Res. Found., Inc.*, No. 2:14-cv-02573-SVW-FFM, 2014 WL 12961327, at *2 (C.D. Cal. Oct. 14, 2014) (citing state court precedent in concluding § 632 applies only to landline telephones). In *Hataishi v. First American Home Buyers Protection Corp.*, the

California Court of Appeal affirmed denial of class certification in a case well past the advent of cell phones. The court reasoned that because § 632 "does ***not*** apply to cellular or cordless telephones," individual questions surrounding the type of phone used would defeat commonality. 223 Cal. App. 4th 1454, 1461 (2014) (emphasis added). Further, in *Flanagan*, the California Supreme Court explained that the Legislature specifically enacted §§ 632.5, 632.6, and 632.7 in response to the unique privacy concerns posed by cell phones as opposed to landline phones. 27 Cal. 4th at 776; *see also Pepper*, 2014 WL 12961327, at *3 ("The California Court's careful distinction [in *Flanagan*] between cellular and landline telephone calls suggests that it would hold that § 632 is limited to calls involving only landline telephones.").

Any of Plaintiffs' calls made using cell phones do not fall within the orbit of § 632(a), and their claims must therefore be dismissed. *See also Ewing v. Empire Cap. Funding Grp., Inc.*, No. 17cv2507-LAB (MDD), 2019 WL 157660, at *2 (S.D. Cal. Jan. 10, 2019).

### F. Plaintiffs' § 632.7 Claim Fails Because They do not Allege that Genesys Intercepted and Recorded Communications between Two Phones

Plaintiffs do not, and indeed cannot, refute CIPA § 632.7's requirement that phones be used on ***both sides*** of their communications. *See Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 983 (C.D. Cal. Aug. 14, 2023) ("Every type of communication listed in the statute is between two phones. To the extent [§ 632.7's] meaning was unclear, the California Supreme Court recently clarified that § 632.7 prohibits intrusions upon 'a communication transmitted between a cellular or cordless telephone *and another telephone.*'") (citation omitted). According to Plaintiffs, because their "phone calls to Genesys . . . involved phones[,]" this is somehow sufficient to meet the strict statutory requirements. (*See* Opp. at 21 (cleaned up).) But merely alleging that ***Plaintiffs*** initiated their communications with the Hotline via phone is not enough to plead all elements of § 632.7. (*See id*. at 20.) Instead, Plaintiffs must also allege their calls involved a telephone on ***both*** sides of the communication. Because, as Plaintiffs admit, the Hotline's calls are conducted through ***software*** "embedded in the Hotline's . . . phone tree[,]" Plaintiffs cannot allege that the Hotline received their calls using a telephone. (*Id*. at 20 (cleaned up).)

Plaintiffs argue that limiting § 632.7's scope in this way requires Plaintiffs to "have ruled out a remote possibility" that "the Hotline's 'phone tree' was not a phone[.]" (*See id*. at 20.) But Plaintiffs have already conceded that their calls were received by "software . . . embedded . . . on the Hotline's" website, which is not covered by section 632.7. (*See* Compl. ¶ 117.) Because Plaintiffs do not, and cannot, allege that phones were used on *both* sides of their communications, their § 632.7 claim must be dismissed.

### G. Plaintiffs Do Not Allege Any "Interceptions" in California

To support the extraterritorial application of CIPA, Plaintiffs assert that they are California residents (*id*. ¶¶ 9-11), that Genesys is headquartered in California (*id*. ¶ 12), and that Genesys intercepted Plaintiffs' communications with the Hotline and with *other companies* using Genesys's technology that are located in California (*id*. ¶ 116;[6] *see also* Opp. at 21). According to Plaintiffs, "[n]othing more is required[.]" (Opp. at 21.) This is also incorrect. California residency is not enough, nor is it enough that Genesys and other companies that use Genesys' technology are located in California. Instead, to impose liability under CIPA, Plaintiffs must allege the "data in question was intercepted in California." *Hammerling v. Google LLC*, No. No. 21-cv-09004-CRB, 2022 WL 17365255, at *11 (N.D. Cal. Dec. 1, 2022). But the Complaint is devoid of allegations detailing where Plaintiffs C.D. and E.F. were located when they contacted the Hotline. *See Zarif v. Hwareh.com, Inc.*, No. 23-cv-0565-BAS-DEB, 2025 WL 486317, at *11 (S.D. Cal. Feb. 13, 2025) (CIPA claim survived dismissal where plaintiff alleged her "communications originated 'from her home in [California].' Thus, Plaintiff sufficiently alleges that her communications were 'being *sent from* . . . any place within this state.'") (emphasis in original). Nor do Plaintiffs allege whether any purported interception occurred in California. (*See generally* Compl.) The allegations are therefore insufficient to displace the "strong

[6] In their Opposition, Plaintiffs selectively omit portions of this quote from their Complaint. The Complaint refers to the location of companies that use Genesys' technology, not the location where the alleged interception occurred, or where the Plaintiffs were located at the time. (*Compare* Compl. ¶ 116 ("Genesys tapped Plaintiffs' and Class members' communications with the Hotline ***and other companies that use Genesys's technology in California*** while they were in transit" (emphasis added)) *with* Opp. at 21 ("Plaintiffs allege that Genesys 'tapped Plaintiffs' and Class members' communications with the Hotline . . . in California[.]") (citing Compl. ¶ 116).)

presumption against the extra-territorial application of California law." *Brackett v. Am. Airlines Grp. Inc.*, No. 21-cv-02681-HSG, 2022 WL 282529, at *2 (N.D. Cal. Jan. 31, 2022). Plaintiffs C.D. and E.F.'s CIPA claims, as well as those brought on behalf of the putative California and Hotline classes, must be dismissed.

## III. CONCLUSION

For the foregoing reasons and those set forth in Genesys' motion to dismiss, Genesys respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety.

Dated: August 28, 2025

MORRISON & FOERSTER LLP

By: /s/ *Tiffany Cheung*
Tiffany Cheung
Elisabeth Hutchinson
Camille Framroze
Emily Tsurue Yamashiro McKenna

*Attorneys for Defendant*
GENESYS CLOUD SERVICES, INC.

MOFO-359996008