**CONSOVOY MCCARTHY PLLC**
Bryan Weir (Cal. Bar No. 310964)
Brandon Haase (*pro hac vice*)
1600 Wilson Blvd., Ste. 700
Arlington, VA, 22209
T: (703) 243-9423
F: (703) 243-8696
bryan@consovoymccarthy.com
brandon@consovoymccarthy.com

**BENBROOK LAW GROUP, PC**
Bradley Benbrook (Cal. Bar No. 177786)
Steve Duvernay (Cal. Bar No. 250957)
701 University Avenue, Ste. 106
Sacramento, CA 95825
T: (916) 447-4900
F: (916) 447-4904
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PLAINTIFF A.B., PLAINTIFF C.D., and PLAINTIFF E.F., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GENESYS CLOUD SERVICES, INC.,<br><br>Defendant. | Case No.: 3:25-cv-03276-EMC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND DIRECTION OF NOTICE UNDER RULE 23(e) CLASS ACTION**<br><br>Judge: Hon. Edward M. Chen<br>Date: August 27, 2026<br>Time: 1:30 p.m.<br>Courtroom: 5, 17th Floor |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on August 27, 2026, at 1:30 PM, or as soon thereafter as the matter may be heard, in Courtroom 5 of the United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, CA 94102, Plaintiffs A.B., C.D., and E.F. ("Plaintiffs") will respectfully move this Court to: (i) grant preliminary approval of the proposed Settlement Agreement ("Settlement Agreement" or "Settlement"); (ii) determine that the Court, at the final approval stage, will likely certify the Settlement Class as defined in the Settlement Agreement; (iii) provisionally certify the proposed Settlement Class, designate Plaintiffs A.B., C.D., and E.F. as the Class Representatives, and appoint Bryan Weir and Brandon T. Haase of Consovoy McCarthy PLLC as Class Counsel; (iv) appoint Eisner Advisory Group, LLC ("EisnerAmper") as Settlement Administrator and direct that it carry out the duties and responsibilities of the Settlement Administrator specified in the Settlement Agreement; (v) establish procedures for giving Notice to members of the Settlement Class; (vi) approve the Parties' proposed Notice Plan outlined in this Motion; (vii) mandate procedures and deadlines for exclusion requests and objections; and (viii) set a date, time and place for a final approval hearing and certain other dates in connection with final approval of the Settlement Agreement.

This Motion is based on the Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Bryan Weir in Support of Preliminary Settlement Approval, with supporting exhibits; the Declaration of Brandon Schwartz of EisnerAmper with supporting exhibits; the argument of counsel, all papers and records on file in this matter; and such other matters as the Court may consider.

## STATEMENT OF ISSUES TO BE DECIDED

Pursuant to Federal Rule of Civil Procedure 23(e), this Motion raises the following issues:

1. Whether the proposed Settlement Agreement entered by the Parties should be preliminarily approved;

2. Whether the Settlement Class as defined in the Agreement is likely to be certified at the final approval stage;

3. Whether the Settlement Class as defined in the Agreement should be provisionally certified;

4. Whether Plaintiffs will adequately represent the proposed Settlement Class and thereby merit appointment as Representatives of the proposed Settlement Class;

5. Whether Consovoy McCarthy PLLC will adequately represent the proposed Settlement Class and thereby merits appointment as Class Counsel for the proposed Settlement Class;

6. Whether the Parties' proposed Notice Plan outlined herein is the best notice practicable under the circumstances; and

7. Whether the Court should appoint EisnerAmper as Settlement Administrator and direct it to carry out the duties and responsibilities of the Settlement Administrator specified in the Agreement.

Dated: July 17. 2026

By: /s/ *Bryan Weir*
Bryan Weir (Cal. Bar No. 310964)
Brandon Haase (*pro hac vice*)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA, 22209
T: (703) 243-9423
F: (703) 243-8696
bryan@consovoymccarthy.com

*Attorneys for Plaintiffs and the Proposed Class*

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... II
MEMORANDUM OF POINTS AND AUTHORITIES ..... 1
I. INTRODUCTION ..... 1
II. BACKGROUND ..... 2
A. The Parties ..... 2
B. The Electronic Communications Privacy Act ..... 2
C. The California Invasion Of Privacy Act ..... 2
*1. Section 631(a)* ..... 2
*2. Section 632* ..... 3
*3. Section 632.7* ..... 3
D. Plaintiffs' Allegations ..... 3
E. Procedural History ..... 4
III. SUMMARY OF THE SETTLEMENT AGREEMENT ..... 4
A. The proposed Settlement Class ..... 4
B. Monetary Relief ..... 5
C. Release ..... 6
D. Proposed Attorneys' Fees, Expenses, and Service Awards ..... 6
E. Notice and Settlement Administration ..... 7
IV. ARGUMENT ..... 10
A. The Court Should Certify the proposed Settlement Class for Settlement Under Rule 23(b)(3) ..... 10
*1. The proposed Settlement Class satisfies Rule 23(a)(1)'s numerosity requirement.* ..... 11
*2. The proposed Settlement Class satisfies Rule 23(a)(2)'s commonality requirement.* ..... 11
*3. The proposed Settlement Class satisfies Rule 23(a)(3)'s typicality requirement.* ..... 11
*4. The proposed Settlement Class satisfies Rule 23(a)(4)'s adequacy requirement.* ..... 12
*5. The proposed Settlement Class satisfies Rule 23(b)(3)'s predominance and superiority requirements.* ..... 13
B. The Settlement is Fair, Reasonable, and Adequate. ..... 14
*1. Plaintiffs and their counsel have adequately represented the Proposed Class.* ..... 14
*2. The Settlement Agreement was negotiated at arm's length.* ..... 14
*3. The Settlement Agreement provides adequate relief to the class.* ..... 15
*4. The Settlement Agreement treats all members of the proposed Settlement Class equally.* 18
C. The Court Should Direct Notice to the Class. ..... 19
D. The Court Should Set Settlement Deadlines and Schedule A Final Approval Hearing. ..... 19
V. CONCLUSION ..... 20

# TABLE OF AUTHORITIES

## CASES

*Abdullah v. U.S. Sec. Assocs., Inc.*,
731 F.3d 952 (9th Cir. 2013) .......... 13

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 15

*Brinkley v. Monterey Fin. Servs., LLC*,
340 F. Supp. 3d 1036 (S.D. Cal. 2018) .......... 4

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) .......... 12

*Ching v. Siemens Indus., Inc.*,
2014 WL 2926210 (N.D. Cal. June 27, 2014) .......... 20

*Flanagan v. Flanagan*,
41 P.3d 575, 577 (Cal. 2002) .......... 3

*G. F. v. Contra Costa County*,
2015 WL 4606078 (N.D. Cal. July 30, 2015) .......... 17

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......... 13, 15

*Heerde v. Learfield Commc'ns, LLC*,
741 F.Supp.3d 849 (C.D. Cal. 2024) .......... 3

*Hesse v. Sprint Corp.*,
598 F.3d 581 (9th Cir. 2010) .......... 19

*Hilsley v. Ocean Spray Cranberries, Inc.*,
2020 WL 520616 (S.D. Cal. Jan. 31, 2020) .......... 16, 18, 21

*In re Anthem, Inc. Data Breach Litig.*,
2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) .......... 10, 11

*In re Emulex Corp. Sec. Litig.*,
210 F.R.D. 717 (C.D. Cal. 2002) .......... 15

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 2

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) .......... 16

*In re Hyundai and Kia Fuel Economy Litig.*,
926 F.3d 539 (9th Cir. 2019) .......... 11

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
609 F. Supp. 3d 942 (N.D. Cal. 2022) .......... 12, 15

*In re MacBook Keyboard Litig.*,
2023 WL 3688452 (N.D. Cal. May 25, 2023) .......... 21

*In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Cal. 2022) .......... 2, 3

*Ko v. Natura Pet Prods., Inc.*, 2012 WL 3945541 (N.D. Cal. Sep. 10, 2012) .......... 11

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) .......... 13

*Montera v. Premier Nutrition Corp.*, 2025 WL 751542 (N.D. Cal. Mar. 10, 2025) .......... 18

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .......... 20

*Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014) .......... 13

*Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 13, 2019) .......... 3

*Smith v. LoanMe, Inc.*, 483 P.3d 869 (Cal. 2021) .......... 4

*Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933 (N.D. Cal. 2024) .......... 3

*Staton v. Boeing, Co.*, 327 F.3d 938 (9th Cir. 2003) .......... 12, 14

*Wakefield v. ViSalus, Inc.*, 51 F.4th 1109 (9th Cir. 2022) .......... 18

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) .......... 15

**STATUTES**

18 U.S.C. § 2510 .......... 1

18 U.S.C. § 2511 .......... 2

18 U.S.C. § 2520 .......... 16

28 U.S.C. § 1715 .......... 9, 20

Cal. Penal Code § 630 .......... 1

Cal. Penal Code § 631 .......... 2

Cal. Penal Code § 632 .......... 3, 17

Cal. Penal Code § 632.7 .......... 3

Cal. Penal Code § 637.2 .......... 16

**OTHER AUTHORITIES**

Northern District of California's Procedural Guidance for Class Action Settlements .......... passim

**RULES**

Fed. R. Civ. P. 23 .......... passim

**TREATISES**

4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:50 (6th ed. June 2025 update) .......... 15

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This motion seeks preliminary approval of a class-action settlement resolving Plaintiffs' claims against Defendant Genesys Cloud Services, Inc. (together, the "Parties"), under Federal Rule of Civil Procedure 23(b)(3). In their Complaint, Plaintiffs alleged violations of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510, *et seq*. and the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630, *et seq.* arising out of the alleged capture of communications with the National Domestic Violence Hotline (the "Hotline"). ECF No. 1 ("Compl."). After more than eight months of litigation, the Parties' counsel engaged in mediation on December 15, 2025, and reached an agreement that is exceptional in light of the risks that Plaintiffs and the putative class would have faced before trial, at trial, and on appeal. The Settlement is fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e)(2) and delivers substantial relief to the Settlement Class.

The Settlement Agreement, attached as Exhibit A to the Declaration of Bryan Weir ("Weir Decl."), provides monetary relief to the members of the proposed Settlement Class (as defined below). Under the Settlement, Genesys will create a $2,500,000 non-reversionary fund from which Settlement Class Members can make a claim for a *pro rata* share not to exceed $1,250. Based on the estimated claims rate of 3%, individual claimants can expect to receive an estimated payment of $392.68. The Settlement Agreement also authorizes Plaintiffs' counsel to seek attorneys' fees not to exceed 25% of the Settlement Fund, reimbursement of costs and expenses, and Service Awards of $5,000 for each Class Representative. The Agreement also provides a *Cy Pres* Award to the Hotline of $500,000.

This Settlement provides significant relief to the Plaintiffs and the Class, satisfies the requirements of Federal Rule of Civil Procedure 23, and merits preliminary approval. Plaintiffs respectfully request that the Court enter an order in the form of the attached Proposed Preliminary Approval Order.

## II. BACKGROUND

### A. The Parties

Plaintiffs are California residents who contacted the Hotline via online chat, phone call, and text message during the relevant period. Compl. ¶¶ 59-79. Genesys is a California-headquartered company whose communications services allow businesses and organizations (including the Hotline) to manage phone calls, text messages, and online chat interactions with their end users. *Id.* ¶¶ 12, 17.

### B. The Electronic Communications Privacy Act

The ECPA "prohibits the unauthorized 'interception' of an 'electronic communication.'" *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606-07 (9th Cir. 2020) (subsequent history omitted) (quoting 18 U.S.C. § 2511(1)(a)-(e)). The "paramount objective of the Electronic Communications Privacy Act, which amended the Wiretap Act, is to protect effectively the privacy of communications." *Id*. at 608 (cleaned up) (citations omitted). "Congress's intent [was] to prevent the acquisition of the contents of a message by an unauthorized third-party or 'an unseen auditor.'" *Id.* (citation omitted). To prevail, a plaintiff must show the defendant "(1) intentionally (2) intercepted (3) the contents of (4) plaintiffs' electronic communications (5) using a device." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 794-95 (N.D. Cal. 2022) ("*Meta Healthcare Litig.*").

### C. The California Invasion of Privacy Act

"The California Invasion of Privacy Act ('CIPA') mirrors the federal Wiretap Act, but with a few important exceptions," *Meta Healthcare Litig.*, 647 F. Supp. 3d at 797, including that it requires the consent of *all* parties to the communication, *see* Cal. Penal Code § 631(a). "The purpose of [CIPA] was to protect the right of privacy by, among other things, requiring that all parties consent to a recording of their conversation." *Id.* at 797 (quoting *Flanagan v. Flanagan*, 41 P.3d 575, 577 (Cal. 2002)). Three provisions of CIPA are relevant here.

#### 1. Section 631(a)

Section 631(a) contains four separate clauses that comprise distinct avenues of relief. *Heerde v. Learfield Commc'ns, LLC*, 741 F.Supp.3d 849, 858 (C.D. Cal. 2024). As relevant here, the second clause of Section 631(a) prohibits a person from "willfully and without consent of all parties to the

communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit," *id.*, and the third clause of Section 631(a) makes it unlawful when "a person 'uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information … obtained'" in violation of the second clause. *Id.* (citation omitted).

**2. Section 632**

CIPA Section 632 prohibits "us[ing] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication" "without the consent of all parties" to the communication. Cal. Penal Code § 632(a). Thus, "[t]o state a claim under § 632, Plaintiff must show there was (1) an electronic recording of (2) a confidential communication and (3) all parties did not consent." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 943 (N.D. Cal. 2024). The statute applies to recordings made with "any electronic amplifying or recording device." *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 13, 2019).

**3. Section 632.7**

"Under Section 632.7(a), 'Every person who, without the consent of all parties to a communication, intercepts or receives and intentionally records ... a communication transmitted between two cellular radio telephones [or] a cellular radio telephone and a landline telephone ... shall be punished.'" *Brinkley v. Monterey Fin. Servs., LLC*, 340 F. Supp. 3d 1036, 1039 (S.D. Cal. 2018). Unlike Section 632, "[t]his prohibition applies to all communications, not just confidential communications." *Smith v. LoanMe, Inc.*, 483 P.3d 869, 874 (Cal. 2021).

**D. Plaintiffs' Allegations**

On April 11, 2025, Plaintiffs filed this action. *See* Compl. Plaintiffs alleged that Genesys violated the ECPA by intentionally intercepting the content of Plaintiffs' and Class Members' communications with the Hotline via text message, phone call, and online chat, and used those communications to provide products and services to third parties and improve its products and services. Compl. ¶¶ 92-106. Plaintiffs also alleged that Genesys violated CIPA Sections 631, 632, and

632.7 by intercepting and recording the contents of Class Members' communications with the Hotline via text message, online chat, and phone call without appropriate consent, and used those communications to improve its products and services. *Id.* ¶¶ 124-25, 132-37, 143-44.

Genesys denies all allegations in the lawsuit and any wrongdoing and maintains that its practices are consistent with applicable law. The Hotline is not a party to the lawsuit, and there are no allegations that the Hotline did anything wrong.

### E. Procedural History

Genesys moved to dismiss the Complaint on July 3, 2025, ECF No. 23, and the parties argued the motion before the Court on October 16, 2025, *see* ECF No. 49. While Genesys' motion to dismiss was still pending, the Court ordered the Parties to meet and confer to agree upon a mediator and a date for mediation, to be completed within 120 days. ECF No. 41. Pursuant to that same order, the Parties engaged in discovery to prepare for mediation. *See* Weir Decl. ¶ 4.

On December 15, 2025, the Parties participated in an all-day mediation facilitated by Shirish Gupta, an experienced mediator with JAMS, after exchanging mediation briefs beforehand. *See* ECF No. 55. The Parties reached an agreement in principle following that mediation, agreeing on material terms. The Parties finalized the written Settlement Agreement in June 2026 and signed the written Settlement Agreement on July 12, 2026, after almost seven months of negotiations and securing a claims administrator through a competitive bidding process. Weir Decl. ¶ 5.

## III. SUMMARY OF THE SETTLEMENT AGREEMENT

### A. The proposed Settlement Class

The Settlement Class is defined as:

> All natural persons who, while residents of and present in California, communicated with the National Domestic Violence Hotline through any channel, from April 11, 2023, to the date of final judgment in the Action. Excluded from the Settlement Class are (i) Genesys; (ii) Genesys' parents, subsidiaries, affiliates, officers, directors, investors, and employees; (iii) any entity in which Genesys has a controlling interest; and (iv) any judge presiding over this Action, their staff, and the members of the judge's immediate family.

Settlement Agreement § 1, ¶ T.

The Settlement Class differs from the class definitions alleged in the Complaint because it eliminates the proposed national and California classes consisting of individuals who allegedly had any communications intercepted by the alleged use of Genesys' communications software, not just communications with the Hotline. This narrowed definition is appropriate because it fully and adequately addresses and resolves the claims of the Plaintiffs in this case. *See* Northern District of California's Procedural Guidance for Class Action Settlements, § 1.1 ("N.D. Proc. Guidance").

While the Parties cannot obtain the precise number of Settlement Class Members and cannot obtain a precise estimate of the number of Settlement Class Members without extensive and costly third-party discovery, Plaintiffs believe that approximately 100,000 unique California visitors have communicated with the Hotline from April 11, 2023 through the present. Weir Decl. ¶ 13.

**B. Monetary Relief**

Under the Settlement Agreement, Genesys will fund a non-reversionary cash settlement fund ("Settlement Fund") in the amount of $2,500,000 to cover claims submitted by Settlement Class Members, as well as the costs of settlement administration, Service Awards, a *Cy Pres* Award to the Hotline, and attorneys' fees, costs, and expenses that the Court may approve. Settlement Class Members can receive a *pro rata* cash payment not to exceed $1,250 per claimant, which will be determined by the number of claimants who submit Valid Claims. Settlement Agreement § 3.1.

The Settlement Fund will be allocated as follows: first, the costs of Notice and settlement administration; second, any Attorneys' Fee and Expense Payment and any Service Awards approved by the Court will be deducted; third, a *Cy Pres* Award of $500,000 will be distributed to the Hotline; and fourth, the remaining amount will be distributed on a *pro rata* basis to Settlement Class Members who timely submit Valid Claims. *Id.* §§ 3.2.14.1-4. If there are remaining funds after the first distribution, any residual funds will be redistributed on a *pro rata* basis (if feasible) to Settlement Class Members, § 3.2.14.5, or otherwise distributed to the Hotline as an additional *cy pres* award, to benefit domestic violence survivors in California. *Id.* § 3.2.14.6. The Hotline's designation as a *cy pres* awardee is not in exchange for any consideration on behalf of the Hotline. N.D. Proc. Guidance § 8.

While the $2,500,000 Settlement Fund yields an estimated $14.74 per *potential* class member, *actual* claimants may recover more. Based on the estimated claims rate of 3%, Schwartz Decl. ¶ 10, and after deducting attorneys' fees, reimbursement of costs and expenses, administration costs, and Service Awards from the Settlement Fund, individual claimants can expect to receive an estimated payment of $392.68. This recovery is comparable to other data privacy settlements, Weir Decl., Ex. F, and represents a significant recovery relative to the expected value of both ECPA and CIPA claims when accounting for the litigation risks described above.

**C. Release**

In exchange for the relief described above, Genesys and each of the "Released Parties," as defined in the Settlement Agreement, will be released from all claims "pursuant to any theory of recovery… that have been or could have been asserted in the Action" as of the Effective Date of the Settlement. Settlement Agreement § 10.2. Plaintiffs and the Settlement Class will also provide a California Civil Code Section 1542 waiver. *Id.* § 10.3.

Pursuant to Rule 23(e)(3), Plaintiffs are not aware of any other case affected by the Settlement. *See* N.D. Proc. Guidance § 1.4.

**D. Proposed Attorneys' Fees, Expenses, and Service Awards**

Class Counsel will file a motion for an award of reasonable attorneys' fees and expenses, and service awards for the Class Representatives, at least twenty-one (21) days prior to the Exclusion and Objection Deadlines. Plaintiffs may seek, and Genesys will not oppose, an award of attorneys' fees not exceeding 25% of the Settlement Fund. Settlement Agreement § 8.1. Settlement Class Members will be notified through the Notice of Plaintiffs' intent to seek attorneys' fees, expenses, service awards and the amounts sought for each.

As of the date of this filing, Settlement Class Counsel has expended approximately $85,000 on case expenses. Weir Decl. ¶ 15. Settlement Class Counsel has expended approximately 500 hours litigating this Action, resulting in a lodestar of approximately $360,000. Weir Decl. ¶ 14. Given Class Counsel's hourly rates, a requested fee of 25% of the Settlement Fund after expenses ($625,000) represents a multiplier of approximately 1.8, which does not include additional hours expended over

the next few months. N.D. Proc. Guidance § 6. That is well within the range approved by courts in the Ninth Circuit. Weir Decl., Ex. F. A full analysis of the reasonableness of the fee award will be provided with the forthcoming Motion for Attorneys' Fee and Expense Payment and Service Awards.

Plaintiffs may also move for, and Genesys will not oppose, Service Awards not to exceed $5,000 per Class Representative. Settlement Agreement § 8.2. These awards are also well within the range of a presumptively reasonable service award for similar claims. *See* Weir Decl., Ex. F. Plaintiffs' Service Award requests are supported by their active participation in this litigation: each Plaintiff provided information regarding their use of and communications with the Hotline, met with counsel on multiple occasions, and collected and produced documents in response to Genesys' discovery requests. Weir Decl. ¶¶ 9-10. These Service Awards will not undermine the adequacy of the named Plaintiffs as Class Representatives as they are a small fraction of the Settlement Fund and do not create any incentive to act contrary to the interests of the Class. N.D. Proc. Guidance § 7. The Settlement is not conditioned upon the Court's approval of any service award, attorneys' fees, or expenses.

**E. Notice and Settlement Administration**

After a competitive bidding process, the Parties selected EisnerAmper to serve as Settlement Administrator to provide Notice to the Settlement Class and all other services necessary to administer the Settlement. Weir Decl. ¶ 16-18. Three claim administration companies made proposals designed to reach the Settlement Class. After evaluating the opening bids, counsel narrowed the bids to two companies, and after further negotiations agreed that EisnerAmper's proposal provided the best and most cost-effective plan to reach the greatest number of Class Members and achieve the highest potential claims rate for this case, while also preserving the confidentiality of the proposed Class Members who are likely to be survivors of domestic violence. *Id.* ¶¶ 17-18; *see also* Schwartz Decl. ¶¶ 13-15.

The Declaration of Brandon Schwartz describes EisnerAmper's credentials and its acceptance of responsibility and maintenance of insurance in case of errors, as well as the robust data privacy practices in place to ensure the security of claimant data. Schwartz Decl. ¶¶ 3-6, 20-22. EisnerAmper

has administered multiple data privacy settlements, including CIPA and ECPA cases, *id.,* Ex. B, and Consovoy McCarthy has worked with EisnerAmper on three separate matters over the past two years involving the confidential settlement administration of arbitration claims. Weir Decl. ¶ 19; N.D. Proc. Guidance § 2.1-2.

The Settlement Agreement and Declaration of Brandon Schwartz describe the Notice Plan. To summarize, EisnerAmper will implement the Notice Plan within 45 days after entry of an order directing Class Notice. Settlement Agreement § 1, ¶ K. The Notice Plan includes Publication Notice via a digital banner on the home page of the Hotline's website (www.thehotline.org) for a period of 60 days. *Id.* § 7.2.3. The digital banner (attached as Exhibit D to the Declaration of Bryan Weir) will provide a hyperlink directly to a settlement website, allowing visitors easy access to relevant information and documents. *Id.* The digital banner will be displayed to desktop and mobile website users reasonably believed to be in California and will appear at the bottom of the Hotline's homepage (and will persist at the bottom of the page) every time a user visits that page during the 60-day Notice period. *Id*. The Notice Plan also includes Publication Notice in newspapers serving (1) population centers in California and (2) areas with high rates of domestic violence. *Id.*; Schwartz Decl. ¶ 15. The Newspaper Publication Notice is attached as Exhibit E to the Declaration of Bryan Weir.

EisnerAmper will also set up a Settlement Website and toll-free telephone number and will provide clear and informative notices that include all the information required under the Northern District's Procedural Guidance for Class Action Settlements Nos. 3 to 5. *See* Schwartz Decl. ¶ 16-18; Weir Decl. Ex. C (Detailed Notice). EisnerAmper will also serve the notice required by the Class Action Fairness Act, 28 U.S.C. § 1715. Settlement Agreement § 4.2. No other notices to government entities are required or have been provided. This Notice Plan is the best notice practicable under the unique circumstances of this case. Schwartz Decl. ¶ 23.

Class Counsel also considered additional methods of notice recommended by the Northern District's Procedural Guidance. As to identification of potential class members through third-party data sources, the Parties are not currently aware that such a source exists. As to text messages, EisnerAmper's proposal did not include SMS notice both because phone numbers are not maintained

for website visitors and because SMS notice to this Class would pose substantial health and safety risks for Class Members because they are likely to be survivors of domestic violence.

As to a settlement website that estimates individual claim amounts, individual claim amounts cannot be estimated until the claims deadline has passed and the total number of approved claims is known because the Settlement provides equal *pro rata* payments to all qualified claimants. As to distributions via direct deposit, the Settlement Agreement provides for electronic payments, offering class members who submit online Claim Forms the option of receiving payment via PayPal, Venmo, Zelle, or other substantially similar forms of electronic payment, or paper check. Settlement Agreement § 3.1.1.

The expected claims rate for this Settlement is approximately 3%, based on EisnerAmper's experience. This estimate is informed by the unique and sensitive nature of this matter, which involves individuals who contacted a domestic violence hotline, a population that may face heightened privacy concerns, safety considerations, or other personal circumstances that could affect their willingness or ability to submit a claim. Schwartz Decl. ¶ 10; N.D. Proc. Guidance § 1.6.

EisnerAmper anticipates the cost of administration will be approximately $96,954 if 3% of the proposed Class Members submit claims. Schwartz Decl. ¶ 11. The anticipated cost of administration is 3.86% of the value of the Settlement Fund and is therefore reasonable. *See In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *8 (N.D. Cal. Aug. 17, 2018) (approving administration costs amounting to "20% of the $115 million Settlement Fund."); *Ko v. Natura Pet Prods., Inc.*, 2012 WL 3945541, at *7 (N.D. Cal. Sep. 10, 2012) (approving $400,000 in administration costs for a $2,150,000 settlement fund, amounting to 18.6% of the fund). EisnerAmper's settlement administration costs will be paid directly from the Settlement Fund. Settlement Agreement § 7.4; *see In re Anthem*, 2018 WL 3960068, at *8 ("the Ninth Circuit has repeatedly held that district courts do not abuse their discretion by including the costs of providing notice to the class (or other administrative costs and litigation expenses) as part of the percentage fund valuation."); N.D. Proc. Guidance § 2.2.

## IV. ARGUMENT

At the preliminary approval stage, the Court must determine that it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Specifically, in evaluating a proposed settlement, the Court should consider whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate … ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). Through this analysis, courts are guided by a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019).

The Court should provisionally certify the proposed Settlement Class and preliminarily approve the Parties' Settlement Agreement under Federal Rule of Civil Procedure 23 and the Northern District of California's Procedural Guidance for Class Action Settlements. When the parties to a putative class action reach a settlement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing, Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Here, class certification for settlement purposes is proper, and the Parties' proposed Settlement is fair.

### A. The Court Should Certify the proposed Settlement Class for Settlement Under Rule 23(b)(3).

"Parties seeking class certification must satisfy each of the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and at least one of the requirements of Rule 23(b)." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017) (abrogated on other grounds). In this case, all four requirements of Rule 23(a) are satisfied, as are the requirements of Rule 23(b)(3), and the Court should provisionally certify the proposed Settlement Class for settlement purposes.

#### 1. The proposed Settlement Class satisfies Rule 23(a)(1)'s numerosity requirement.

"[C]ourts within the Ninth Circuit generally agree that numerosity is satisfied if the class includes forty or more members," and "[t]he party seeking certification 'do[es] not need to state the exact number of potential class members.'" *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F. Supp. 3d 942, 959 (N.D. Cal. 2022) (citation omitted). Here, while the exact number of Settlement Class Members is not known, the number of Settlement Class Members is estimated to be about 100,000. Weir Decl. ¶ 13.

#### 2. The proposed Settlement Class satisfies Rule 23(a)(2)'s commonality requirement.

Commonality requires a showing that "there are questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). This requirement is satisfied when "the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (citation omitted). "[C]ommonality only requires a single significant question of law or fact." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012).

Here, the commonality requirement is satisfied. Common issues of law and fact exist, including but not limited to: (1) whether Genesys' provision of communication services to the Hotline constituted unlawful interception and use of the Settlement Class's communications with the Hotline; (2) whether Genesys intercepted the contents of electronic communications between Class Members and the Hotline; (3) whether Genesys recorded Plaintiffs' and Class Members' communications; (4) whether Genesys obtained appropriate consent for the alleged recording and use; and (5) whether Genesys' software is a device within the meaning of the ECPA and CIPA.

#### 3. The proposed Settlement Class satisfies Rule 23(a)(3)'s typicality requirement.

The typicality requirement is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct'" *Id.* (citation omitted).

The typicality requirement is satisfied because the named Plaintiffs allege they suffered the same injuries as the other Settlement Class Members arising from the same course of conduct. Plaintiffs allege that Genesys violated the ECPA and CIPA by intercepting and using Plaintiffs' confidential communications with the Hotline without appropriate consent. The same allegations support absent Class Members' claims, and so Plaintiffs' claims are typical of the claims of the Settlement Class.

**4. The proposed Settlement Class satisfies Rule 23(a)(4)'s adequacy requirement.**

Adequacy requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether the representation meets this standard, we ask two questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957.

The adequacy requirement is satisfied. First, Plaintiffs and proposed Class Counsel have no conflicts of interest with the Class. Weir Decl. ¶ 2. Plaintiffs and Settlement Class Members have a strong interest in obtaining relief from Genesys' alleged course of conduct. *Id.* ¶¶ 2-3.

Second, Plaintiffs and their counsel have vigorously prosecuted this action and will continue to do so through final approval. Plaintiffs and proposed Class Counsel brought their claims, investigated the technology at issue, engaged in discovery, briefed and argued Genesys' motion to

dismiss, and engaged in mediation and extensive negotiations following mediation. *Id.* ¶¶ 3-5, 9-10. Plaintiffs played a critical role in this litigation by providing background information, meeting at length with proposed Class Counsel, and collecting and producing documents in response to Genesys' requests for the production of documents. *Id.* ¶¶ 9-10. Plaintiffs' counsel have experience litigating class actions, including privacy-related class actions like this one. *Id.* ¶¶ 11-12; *see In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002) ("In evaluating the adequacy of attorneys representing the class, a court may examine the attorneys' professional qualifications, skill, experience, and resources.").

**5. The proposed Settlement Class satisfies Rule 23(b)(3)'s predominance and superiority requirements.**

Under Rule 23(b)(3), Plaintiffs must prove "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Predominance under Rule 23(b)(3) asks whether a putative class is 'sufficiently cohesive to warrant adjudication by representation.'" *JUUL Labs*, 609 F. Supp. 3d at 967 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). "Predominant questions make up 'a significant aspect of the case' and clearly justify 'handling the dispute on a representative rather than on an individual basis.'" *Id.* (quoting *Hanlon*, 150 F.3d at 1022).

Predominance is readily satisfied because Plaintiffs allege that every Settlement Class Member was subjected to the same conduct—alleged invasions of their privacy by Genesys' alleged interception, collection, and use of their communications with the Hotline without appropriate consent. Plaintiffs allege this conduct uniformly injured Plaintiffs' and the Settlement Class Members' legally protected interests. Thus, the overarching questions at issue in this case are common questions that can be resolved for all members of the Settlement Class in a single adjudication.

A class action must also be "the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010) (quotation marks and citation omitted). Class-wide adjudication is the superior method here because

the cost of individual litigation would dwarf any single Class Member's potential recovery. Indeed, it would be inefficient and impractical to require each of the approximately 100,000 Settlement Class Members to pursue individual claims involving complex questions of statutory interpretation and data privacy technology.

**B. The Settlement is Fair, Reasonable, and Adequate.**

The Ninth Circuit maintains a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). In deciding whether to preliminarily approve a settlement, the Court must determine whether the proposed settlement is "fair, reasonable, and adequate" under Rule 23(e). *See* Fed. R. Civ. P. 23(e)(2). The proposed Settlement satisfies the Rule 23(e)(2) criteria.

**1. Plaintiffs and their counsel have adequately represented the Proposed Class.**

Where "adequacy under Rule 23(a)(4) has been satisfied … the adequacy factor under Rule 23(e)(2)(A) is also met." *Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *5 (S.D. Cal. Jan. 31, 2020). As discussed above, Plaintiffs and proposed Class Counsel have adequately represented the class in connection with Rule 23(a)(4), and so this factor is met. *See supra* § IV.A.4.

**2. The Settlement Agreement was negotiated at arm's length.**

Federal Rule of Civil Procedure 23(e)(2)(B) directs courts to consider whether "the proposal was negotiated at arm's length." "[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *G. F. v. Contra Costa County*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015); *see also* 4 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 13:50 (6th ed. June 2025 update) (evidence of "a truly adversarial bargaining process" includes "the presence of a neutral third party mediator."); Fed. R. Civ. P. 23(e)(2)(B) advisory committee's note to 2018 amendment (noting that "the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests").

This Settlement was the product of a highly adversarial bargaining process that arose only after written and documentary discovery and extensive negotiations. Moreover, the Parties began settlement discussions at the behest of the Court. *See* ECF No. 41. By that time, the Parties thoroughly understood the merits of their claims and defenses and the risks both sides faced through all stages of litigation, including at trial and on appeal.

The proposed Settlement was negotiated over the course of a full-day mediation on December 15, 2025, under the supervision of experienced JAMS Mediator Shirish Gupta. Weir Decl. ¶ 5. After reaching a settlement in principle, the key terms of which were memorialized by Mr. Gupta in writing, the Parties then negotiated the final Settlement Agreement for approximately seven months, executing the Settlement Agreement on July 12, 2026. *Id.*

**3. The Settlement Agreement provides adequate relief to the class.**

Under Federal Rule of Civil Procedure 23(e)(2)(C), courts consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief . . . ; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Of these factors, "[t]he amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement." *Hilsley*, 2020 WL 520616, at *6. Here, the relief provided compares favorably to other CIPA and ECPA settlements. *See* Weir Decl., Ex. F.

The Settlement Amount represents a discount from the statutory maximum. CIPA provides for statutory damages of $5,000 for each violation or treble damages, whichever is greater, Cal. Penal Code § 637.2, and the ECPA provides for statutory damages of $10,000 per violation, 18 U.S.C. § 2520(c). Assuming there are 100,000 Settlement Class Members, Genesys' theoretical maximum liability could be as much as approximately $1 billion under the ECPA or $500 million under CIPA. Even so, the discount from the theoretical maximum recovery is justified. First, statutory damages of $1 billion could raise due process concerns and carry the risk of invalidation on appeal. *See* *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022) (vacating award of $925 million in

statutory damages); *Montera v. Premier Nutrition Corp.*, 2025 WL 751542, at *7 (N.D. Cal.) (awarding reduced statutory damages of $8.3 million after finding full amount of $83 million in statutory damages was "grossly punitive and thus wholly disproportionate to the legislative goals"). Second, Plaintiffs faced significant risks at every stage of the litigation, including (among other things) the risk of an adverse ruling on Genesys' pending motion to dismiss, class certification, summary judgment, and at trial. N.D. Proc. Guidance § 1.3.

In exchange for the substantial relief provided by the Settlement Fund, Class Members will release all claims "pursuant to any theory of recovery… that have been or could have been asserted in the Action" as of the Effective Date of the Settlement. Settlement Agreement § 10.2. Although the released claims are broader than the ECPA and CIPA claims asserted in the Complaint, the release is appropriate because "federal district courts properly release[] claims not alleged in the underlying complaint where those claims depend[] on the same set of facts as the claims that gave rise to the settlement," as they do here. *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (collecting cases); N.D. Proc. Guidance § 1.2.

All other factors also weigh in favor of preliminary approval.

a. *The costs, risks, and delay of trial and appeal.*

With Genesys' motion to dismiss still pending, unresolved legal and factual questions posed a meaningful risk to Plaintiffs' claims, most notably the following questions. *First* is whether Plaintiffs were on notice that Genesys was allegedly intercepting their communications with the Hotline, and therefore whether Plaintiffs consented to that purported interception. *Compare* ECF No. 23 at 5-6 ("Motion to Dismiss"), *with* ECF No. 39 at 6-7 ("Opposition").

*Second* is whether, if Plaintiffs' communications were intercepted at all, their communications were intercepted "in transit" as required by ECPA and CIPA. *Compare* Motion to Dismiss at 16-19, *with* Opposition at 7-10. And even if Plaintiffs prevailed on this issue at the motion-to-dismiss stage, proving "in transit" interception would require an extensive, technically complex analysis of Genesys' software by experts at summary judgment and trial.

*Third* is whether Plaintiffs' communications with the Hotline were "confidential" to support liability under Section 632 of CIPA. *Compare* Motion to Dismiss at 19-22, *with* Opposition at 17-18. That section of CIPA expressly excludes any communication where "the parties to the communication may *reasonably* expect that the communication may be overheard or recorded." Cal. Penal Code § 632(a) (emphasis added). Given the nature of the internet, over which many of the alleged communications occurred, Genesys argued that a reasonable website visitor would understand that communications occurring over the internet may be recorded. *See* Motion to Dismiss at 20-21.

Genesys raised these and other arguments in its motion to dismiss. *See id.* Even if Plaintiffs prevailed against those arguments, many of the issues would remain unresolved for summary judgment, where the Court would no longer take Plaintiffs' allegations as true. Those unresolved questions would require additional, contested fact development for the summary judgment and trial stages of the case. In addition, preliminary approval is also appropriate where "significant procedural hurdles remain," as is the case here. *Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014). On top of the motion-to-dismiss, summary judgment, and trial stages, Plaintiffs risked an adverse ruling at class certification. Plaintiffs also faced the substantial risk of a motion for a new trial or of an appeal if they had prevailed through trial. *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (courts properly consider "the significance of immediate recovery by way of the compromise" compared to "the mere possibility of relief in the future, after protracted and expensive litigation").

b. *The effectiveness of any proposed method of distributing relief to the proposed Settlement Class.*

Federal Rule of Civil Procedure 23(e)(2)(C)(ii) requires the Court to assess the effectiveness of the proposed distribution method. The advisory committee's note to the 2018 amendment instructs that "[a] claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."

The claims process in this case will not be unduly demanding. Potential Settlement Class Members will be able to submit a simple online Claim Form to receive a cash award. Settlement Agreement § 3.1. The Claim Form will ask each potential Settlement Class Member to provide basic information such as their name and contact information; elect a form of payment such as Venmo, PayPal, Zelle, prepaid digital MasterCard, or paper check; and to attest that they satisfy the eligibility requirements to be a Settlement Class Member during the Class Period and were a resident of and present in California during the relevant time period. *Id.* The Claim Form is attached as Exhibit B to the Declaration of Bryan Weir.

c. *The terms of any proposed award of attorney fees.*

Proposed Class Counsel will apply to the Court for an award of attorneys' fees in an amount not exceeding 25% of the Settlement Fund. Settlement Agreement § 8.1. That is "within the usual range of '20-30%' in common fund cases" like this one. *In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *14 (N.D. Cal. May 25, 2023). At any rate, the Court need not "determine attorney's fees at the preliminary approval stage[.]" *Hilsley*, 2020 WL 520616, at *7, and will have an opportunity to assess the reasonableness of proposed Class Counsel's requested fee award after they file their forthcoming Motion for Attorneys' Fee and Expense Payment and Service Awards. In line with the Northern District of California's guidance, proposed Class Counsel will apply to the Court for an award of attorneys' fees not exceeding 25% of the Settlement Fund.

d. *Any agreement required to be identified.*

Other than the Settlement Agreement, no other agreement exists.

**4. The Settlement Agreement treats all members of the proposed Settlement Class equally.**

Federal Rule of Civil Procedure 23(e)(2)(D) requires the Court to consider whether the settlement agreement "treats class members equitably relative to each other." The proposed Settlement satisfies this standard. Every Settlement Class Member who submits a Valid Claim by the claims deadline will receive an identical *pro rata* share of the Settlement Fund and no Class Member

or subgroup will receive preferential treatment other than the Service Awards for the lead Class Plaintiffs already identified.

### C. The Court Should Direct Notice to the Class.

Federal Rule of Civil Procedure 23(c)(2) requires the Court to "direct to Class Members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The Notice Plan, *supra* III.E, complies with Rule 23. *See* Schwartz Decl. ¶ 12-18.

### D. The Court Should Set Settlement Deadlines and Schedule A Final Approval Hearing.

In connection with preliminary approval, the Court must set a final approval hearing date, dates for Notice, and deadlines for objecting to the Settlement and filing papers in support of the Settlement. Assuming the Court grants preliminary approval, the resulting schedule would be as follows:

| EVENT | PROPOSED DEADLINE |
|---|---|
| CAFA Notice Pursuant to 28 U.S.C. § 1715(b) | Timely Notice After Filing of This Motion |
| Notice Date | 45 days after issuance of Preliminary Approval Order. Settlement Agreement, Definitions, § 1, ¶ K. |
| Motion for Attorneys' Fee and Expense Payment and Service Awards | 69 days after entry of Preliminary Approval Order. Settlement Agreement § 5.5. |
| Exclusion or Objection Deadline | 90 days after entry of Preliminary Approval Order. Settlement Agreement §§ 5.2 and 6.3. |
| Claim Form Deadline | 105 days after entry of the Preliminary Approval Order. Settlement Agreement § 3.3. |
| Responses to Objections | 111 days after entry of Preliminary Approval Order. Settlement Agreement § 5.6. |
| Final Approval Motion | 119 days after entry of Preliminary Approval Order, or as soon as convenient for the Court. |
| Final Approval Hearing | 133 days after entry of the Preliminary Approval Order, or as soon as convenient for the Court. |

## V. CONCLUSION

For all these reasons, Plaintiffs and proposed Class Counsel respectfully ask the Court to grant preliminary approval of the Settlement, provisionally certify the Settlement Class, appoint Plaintiffs as the Class Representatives and Consovoy McCarthy, PLLC as Class Counsel, approve the proposed Notice Plan, and enter the Proposed Preliminary Approval Order in the requested form.

Dated: July 17. 2026

By: /s/ *Bryan Weir*
Bryan Weir (Cal. Bar No. 310964)
Brandon Haase (*pro hac vice*)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA, 22209
T: (703) 243-9423
F: (703) 243-8696
bryan@consovoymccarthy.com

Bradley Benbrook (Cal. Bar No. 177786)
Steve Duvernay (Cal. Bar No. 250957)
BENBROOK LAW GROUP, PC
701 University Avenue, Ste. 106
Sacramento, CA 95825
T: (916) 447-4900
F: (916) 447-4904
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com
*Attorneys for Plaintiffs and the Proposed Class*