**CONSOVOY MCCARTHY PLLC**
Bryan Weir (Cal. Bar No. 310964)
Brandon Haase (*pro hac vice*)
1600 Wilson Blvd., Ste. 700
Arlington, VA, 22209
T: (703) 243-9423
F: (703) 243-8696
bryan@consovoymccarthy.com
brandon@consovoymccarthy.com

**BENBROOK LAW GROUP, PC**
Bradley Benbrook (Cal. Bar No. 177786)
Steve Duvernay (Cal. Bar No. 250957)
701 University Avenue, Ste. 106
Sacramento, CA 95825
T: (916) 447-4900
F: (916) 447-4904
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PLAINTIFF A.B., PLAINTIFF C.D., and PLAINTIFF E.F., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GENESYS CLOUD SERVICES, INC.,<br><br>Defendant. | Case No.: 3:25-cv-03276-EMC<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF PURSUANT TO ECF NO. 70**<br><br>**CLASS ACTION**<br><br>Judge: Edward M. Chen<br>Date: August 27, 2026<br>Time: 1:30 p.m.<br>Courtroom: 5, 17th Floor |

**PLAINTIFFS' SUPPLEMENTAL BRIEF**

Pursuant to the Court's August 18, 2026 Order, Plaintiffs submit this supplemental brief to address two issues: (1) whether the National Domestic Violence Hotline is a "Released Party" under the proposed settlement agreement, and (2) whether the Parties considered a digital notice campaign through social media. *See* ECF No. 70. Plaintiffs appreciate the opportunity to address these issues in writing ahead of the hearing.

***Release.*** The National Domestic Violence Hotline is not intended to be a "Released Party" under the proposed settlement. The definition of "Released Party" in the agreement tracks standard release language that is typical in class action settlements but is not intended to release third parties like the Hotline.

***Digital advertising through social media.*** Plaintiffs' counsel thoroughly vetted notice plans from multiple settlement administrators that included advertising on social media and concluded such a plan wasn't viable for several reasons, most importantly for reasons related to survivors' safety. As the Court is aware, the settlement class members are individuals who have contacted the Hotline, a resource for survivors of domestic abuse that ensures survivors' confidentiality for their own protection. Supplemental Declaration of Bryan Weir ¶2. Class members, in other words, are likely survivors of domestic abuse themselves who wish to remain anonymous for their own safety. *Cf.* ECF No. 12 (granting plaintiffs anonymity in this lawsuit). That reality poses a problem unique to this class: how can class members receive notice while avoiding the risk that their abusers learn they contacted the Hotline? If abusers learn that class members contacted the Hotline, class members' privacy and safety could be at increased risk.

Following the mediation, Plaintiffs' counsel explored how to solve that problem via digital advertising on social media and other platforms, such as Google Ads. Weir Supp. Decl. ¶3. From prior experience, Plaintiffs' counsel was familiar with how digital advertising can reach unintended recipients' phones, browsers, and other devices. *Id*. Digital advertising isn't perfect, and ads are often served to unintended web users. For example, ads are often served to those living in the same household, even if only one device in the household meets the criteria for targeting. Plaintiffs' counsel was concerned, as a result, that class members' abusers would receive ads on their devices and learn (or suspect) that their partners had contacted the Hotline. *Id*.

Because of that concern, Plaintiffs' counsel interviewed three different settlement administrators on whether they could target class members with digital advertising while also ensuring their potential abusers did not receive the ads. *Id.* ¶4. Each gave similar answers that made clear that assurance wasn't possible. *Id.* The reasoning was twofold:

*First*, all major digital advertisers engage in the practice of using cross-device and household-level targeting. *Id.* ¶5. When different devices connect to shared signals like home IP addresses and logged-in account data, digital advertisers match those devices as being in the same household and target them with similar ads. *Id.* This practice is intentional on the advertisers' part: people in the same household are often interested in similar things. But the practice is potentially dangerous in this context: both the class member and the abuser, if in the same household, would receive ads notifying them of the settlement. That outcome could lead to abusers learning that class members had contacted the Hotline. *Id.* Plaintiffs' counsel investigated whether cross-device and household-level targeting could be turned off for a digital notice campaign in this case. *Id.* ¶6. The settlement administrators stated that it couldn't be; the practice is embedded in the major companies' algorithms for reaching intended audiences. *Id.* ¶6.

*Second*, all major advertising platforms prohibit targeting advertising to sensitive audiences. *Id.* ¶7. That prohibition specifically extends to targeting users likely to be victims of domestic abuse. *Id.* That prohibition also extends to targeting users who have suffered from trauma or mental health conditions, among other things. Nor do the major platforms permit retargeting in this context, *i.e.*, the practice of targeting ads to people who previously visited a website. *Id.* ¶8. So the settlement administrators could not target users based on prior visits to the Hotline's website. *Id.* Those limitations only exacerbate the problem that a digital advertising campaign could not reliably target class members with advertising while ensuring their abusers did not also receive that advertising. *Id.* ¶10.

The only remaining digital notice option was a blanket digital advertising campaign that would indiscriminately reach class members *and* their abusers in the same household. *Id.* ¶11. A blanket campaign raised additional concerns, including a chilling effect on survivors who are considering contacting the Hotline. *Id.* The Hotline is an important resource for survivors of domestic abuse, so the parties did not want to discourage anyone from contacting the Hotline. Because digital advertising is imperfect, a campaign that displayed ads to those *considering* contacting the Hotline could discourage them from doing so. *Id.* For example, an ad that states: "Have you contacted the

Hotline? If so, you may be a class member in a lawsuit" could lead those victims of domestic abuse to believe the Hotline was not a reliable resource. *Id.*

These unavoidable (and undesirable) outcomes led the parties to conclude that a digital notice campaign through social media was not the best notice practicable under the circumstances. *Id.* ¶12. The parties ultimately landed on the digital notice method they have proposed: a banner on the Hotline's website with a disciplined message that (1) notifies potential class members of the settlement while (2) avoiding the suggestion that the Hotline is an unreliable resource for victims of domestic abuse. *Id.* Potential class members are the most likely to visit the Hotline to see that banner, making this method the most reliable notice method while preserving class member safety. *Id.* The banner will lead class members to the settlement website, inform them of the settlement's terms, and provide instructions on how to make a claim. *Id.* ¶¶13-14.

The Hotline is moving the Court for leave to participate as *amicus* on this issue. Attached to the Hotline's motion is a declaration that further explains—based on the Hotline's experience serving domestic abuse survivors—the safety risks that social media advertising would pose to class members.

***

Plaintiffs look forward to addressing these and any other issues the Court wishes to discuss at the hearing on Thursday.

Dated: August 24. 2026

By: /s/ *Bryan Weir*
Bryan Weir (Cal. Bar No. 310964)
Brandon Haase (*pro hac vice*)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA, 22209
T: (703) 243-9423
F: (703) 243-8696
bryan@consovoymccarthy.com

Bradley Benbrook (Cal. Bar No. 177786)
Steve Duvernay (Cal. Bar No. 250957)
BENBROOK LAW GROUP, PC
701 University Avenue, Ste. 106
Sacramento, CA 95825
T: (916) 447-4900
F: (916) 447-4904
brad@benbrooklawgroup.com
steve@benbrooklawgroup.com

*Attorneys for Plaintiffs and the Proposed Class*