Benjamin M. Sadun (Bar No. 287533)
DECHERT LLP
US Bank Tower
633 West 5th Street, Suite 4900
Los Angeles, CA 90071-2032
Telephone: (213) 808-5700
Facsimile: (213) 808-5760
benjamin.sadun@dechert.com

Lydia Lichlyter Speight (*pro hac vice* forthcoming)
DECHERT LLP
100 Oliver St, 40th Floor
Boston, MA 02110
Telephone: (617) 728-7100
Facsimile: (617) 275-8374
lydia.speight@dechert.com

*Attorneys for Non-Party National Domestic Violence Hotline*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| PLAINTIFF A.B., PLAINTIFF C.D., AND PLAINTIFF E.F., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GENESYS CLOUD SERVICES, INC.,<br><br>Defendant. | Case No.: 3:25-cv-03276-EMC<br><br>Honorable Edward M. Chen<br><br>**UNOPPOSED MOTION BY NON-PARTY NATIONAL DOMESTIC VIOLENCE HOTLINE AND NOTICE OF MOTION FOR LEAVE TO PARTICIPATE AS *AMICUS CURIAE*** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT non-party National Domestic Violence Hotline (the "Hotline") will and hereby does move for leave to participate in the August 27, 2026 Settlement Hearing as *amicus curiae* pursuant to the Court's inherent authority for the limited purpose of addressing issues pertaining to social media advertising.

This Motion is based on the reasons outlined in the memorandum below and the supporting Declaration of Katie Ray-Jones, Chief Executive Officer of the Hotline. The Hotline has met and conferred with both Plaintiffs and Defendant Genesys Cloud Services, Inc., neither of whom oppose this Motion.

## I. INTRODUCTION

The Hotline, a 501(c)(3) non-profit organization, is not a party to this action and has not been accused of any wrongdoing. It is, however, the operator of the confidential service whose users make up the entirety of the Class. The Court's Order for Supplemental Briefing and/or Evidence re Class Settlement Approval (Dkt. No. 70) asks Plaintiffs to address whether the notice plan should be expanded to include social media. While not a party to the lawsuit, the Hotline possesses specialized knowledge and expertise directly relevant to this question.

In short, the Court should not order social media notice because it could expose domestic abuse survivors to retaliation by their abusers. The Class consists primarily of domestic abuse survivors. As the accompanying declaration explains, abusers often monitor the phones, accounts, and online activity of their victims, and social-media advertisements can appear to have been targeted because of something the recipient did. An abuser who sees social media notice on a victim's phone may conclude that the victim contacted the Hotline. That conclusion may be wrong. It may be right. But either way, the retaliation could be real—and violent. The Court should not require a form of notice that creates that risk.

The Hotline's interests in this case are narrow, and its request is correspondingly modest. The Hotline takes no position on preliminary approval of the settlement. It seeks only the opportunity to be heard on the narrow question posed by the Court concerning social media notice.

## II. BACKGROUND

Founded in 1996, the Hotline is the only 24-hour, 7-days-a-week, 365-days-a-year national hotline serving survivors of domestic violence, dating violence, and related forms of relationship abuse. The Hotline's operations are recognized and funded under 42 U.S.C. § 10413, which requires the Hotline to maintain the confidentiality of caller information and prohibits requiring the Hotline to take any action that its operators fear would impact a survivor's safety. *See* 42 U.S.C. § 10413(d)(7), (e)(2)(H).

## III. ARGUMENT

### a. The Court Should Grant the Hotline Leave to Appear as *Amicus Curiae*

District courts possess inherent authority to permit participation by *amicus curiae*. Courts in this District and throughout the Ninth Circuit routinely exercise this authority to accept briefing and evidence from non-parties with a genuine interest in questions of notice adequacy. *See, e.g.*, *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1046 (9th Cir. 2019) (crediting arguments submitted by *amicus curiae* International Entertainment Adult Union regarding the adequacy of a proposed class notice plan).

The Hotline's participation as amicus would assist the Court in evaluating the proposed notice plan. The Hotline can provide information from its own experience regarding the safety risks that social media notice would pose to Class Members. Granting leave for the Hotline to appear as amicus imposes no burden on the existing parties or the Court's schedule. The Hotline does not seek discovery, does not seek to delay the hearing, and submits its position through this motion and the accompanying declaration, both of which are ready for the Court's consideration in advance of the scheduled hearing date.

### b. Social Media Notice Poses a Uniquely Heightened Risk of Harm in this Case

As detailed in the attached Declaration of Katie Ray-Jones, technology-facilitated surveillance is common in cases of intimate-partner abuse. Decl. of K. Ray-Jones, ¶ 9. Perpetrators of domestic violence and abuse often access the devices and accounts of their victims, in particular social media accounts, to monitor their victims' communications and online activity. *Id.* Because of this, the Hotline provides resources and information on its website about online safety and privacy, including warning users that external sites such as social media may track their activity. *Id.* at ¶ 7.

Due to the way social media is used to facilitate patterns of abuse, there is a significant risk that any notice sent via social media to Class Members would be seen by current or former abusers. Whether such notice is in fact targeted to the particular recipient or not, the perception that social media advertisements are targeted means that an abuser may well believe that someone receiving notice solicited help from the Hotline. *Id.* at ¶¶ 10–11. Sadly, retaliation for contacting a domestic abuse resource is a common occurrence. *Id.* at ¶ 5. There is therefore good reason to fear that providing social media notice would place Class Members at significant risk of physical harm.

This risk of retaliation is not limited to Class Members. If an abuser sees that someone receives notice via social media that references prior contact with the Hotline, the abuser may well still believe that there was an attempt to contact the Hotline. Even if that belief is completely incorrect and the recipient of the notice is not in fact a Class Member, it may still result in retaliation and harm to victims of domestic violence. *Id.* at ¶ 11.

In addition to the risk of retaliation from abusers, social media notice would risk deterring survivors from contacting the Hotline in the future. Due to the perception that social media advertisements are targeted based on personal characteristics, a Class Member who receives notice via social media is likely to believe that this is because the Hotline shared their personal information, even though this would be untrue. *Id.* at ¶ 12. Confidentiality is absolutely crucial for many survivors to feel comfortable contacting the Hotline; they know that their lives and safety may be in even more danger if their abuser learns that they have reached out. Social media notice may well increase a survivor's fear that their communication with the Hotline was being disclosed and dissuade them from making contact. *Id.*

**c. Social Media Notice Is Not Required by Rule 23(c)(2)(B)**

Rule 23(c)(2)(B) calls upon courts to order "the best notice that is practicable *under the circumstances*." Fed. R. Civ. P. 23(c)(2)(B) (emphasis added). Context-specific "circumstances" are to be considered. For example, courts routinely narrow notice plans to limit costs, even where more notice would reach additional class members. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 317-18 (1950) (declining to require further investigation to locate unknown beneficiaries because of "the practical difficulties and costs"). It would be perverse if courts were permitted to consider cost, but not concerns for physical safety.

**d. If Social Media Notice Is Included, the Hotline Does Not Consent to the Use of Its Website for Notice**

The Hotline agreed to host a notice on its website as part of the notice plan under the Settlement Agreement because of its recognition of the safety risks discussed in this Motion. The Hotline's ability to accomplish its mission of assisting survivors depends on its confidentiality practices and its relationship of trust with domestic abuse survivors. If the Hotline were to post a banner that amplifies or coordinates with parallel social media notice referencing this litigation, it could suggest to users that the Hotline supports—

or worse, is complicit in—a social media notice effort that the Hotline sincerely believes endangers survivors. Accordingly, should the Court order notice through social media, the Hotline will not consent to a banner also being placed on its website. *See Martin v. Wilks*, 490 U.S. 755, 761-62 (1989) (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)) ("[O]ne is not bound by a judgment *in personam* in a litigation in which he is not designated as a party[.]"). Just as "parties who choose to resolve litigation through settlement . . . may not impose duties or obligations on a third party, without that party's agreement . . . a court may not enter a consent decree that imposes obligations on a party that did not consent to the decree." *Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 529–30 (1986).

Moreover, compelling the Hotline, a non-party, to publish a notice over its objection also violates the First Amendment. The First Amendment prohibits the government from telling people what they must say, and protects the right "to refrain from speaking" as the complement of the right to speak. *Wooley v. Maynard*, 430 U.S. 705, 714 (1977) (internal quotation marks omitted); *see also Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241, 256 (1974). The Hotline does not object to the existing notice plan, which calls for a banner on the Hotline's website. However, it objects to being compelled to publish that notice if the premise for its consent has changed.

## IV. CONCLUSION

For the sake of survivors, the Hotline asks the Court not to order social media notice. The Hotline also asks for leave to participate at the August 27, 2026 Settlement Hearing as *amicus curiae* to outline the issues in this brief and the attached declaration.

Respectfully,

Signed by:
Benjamin Sadun
E641F31FEE874AF...

Benjamin M. Sadun
DECHERT LLP
US Bank Tower
633 West 5th Street, Suite 4900
Los Angeles, CA 90071-2032

Telephone: (213) 808-5700
Facsimile: (213) 808-5760
benjamin.sadun@dechert.com

Lydia Lichlyter Speight (*pro hac vice* forthcoming)
DECHERT LLP
100 Oliver St, 40th Floor
Boston, MA 02110
Telephone: (617) 728-7100
Facsimile: (617) 275-8374
lydia.speight@dechert.com

*Attorneys for Non-Party National Domestic Violence Hotline*